No. 24-10710-G

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

---

THE GLYNN ENVIRONMENTAL COALITION, INC., et al.,
*Plaintiff-Appellants*,

v.

SEA ISLAND ACQUISITION, LLC
*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA, BRUNSWICK DIVISION
Civil Action No: 2:19-CV-00050-JRH-BWC

---

**BRIEF FOR THE APPELLANT CITIZENS**

---

John A. Brunini
Laura D. Heusel
BUTLER SNOW LLP
1020 Highland Colony Pkwy., Suite 1400
Ridgeland, MS 39157
Telephone: (601) 985-4447
john.brunini@butlersnow.com
Telephone: (601) 985-4520
laura.heusel@butlersnow.com

P. Thomas DiStanislao
BUTLER SNOW LLP
919 East Main St., Suite 600
Richmond, VA 23219
Telephone: (804) 762-6041
thomas.distanislao@butlersnow.com

E. Righton J. Lewis
BUTLER SNOW LLP
1170 Peachtree St. NE, Suite 1900
Atlanta, Georgia 30309
Telephone: (678) 515-5064
righton.lewis@butlersnow.com

Adam M. Langley
BUTLER SNOW LLP
6075 Poplar Ave., Suite 500
Memphis, TN 38119
Telephone: (901) 680-7200
adam.langley@butlersnow.com

*Counsel for Appellants The Glynn
Environmental Coalition, Inc.,
Center for a Sustainable Coast, Inc.,
and Jane Fraser*

### CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Under Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1 and 28-1(b), counsel for The Glynn Environmental Coalition, Inc., Center for a Sustainable Coast, Inc., and Jane Fraser, individually and in her capacity as a member of The Glynn Environmental Coalition, Inc., Center for a Sustainable Coast, Inc., states that the following individuals have an interest in the outcome of this case or appeal:

1.    Anderson, J. Yates - Vice President, Development and Services, Sea Island Acquisition, LLC

2.    Bailey, Alan – President, Center for a Sustainable Coast

3.    Brison-Kitts, Bonyetta – Vice President, The Glynn Environmental Coalition, Inc.

4.    Brunini, John - Counsel for Plaintiffs/Appellants

5.    Butler Snow LLP - Counsel for Plaintiffs/Appellees

6.    Carpenter, Scott - Vice President, Sea Island Acquisition, LLC

7.    Center for a Sustainable Coast, Inc. - Plaintiff/Appellant

8.    Cheesbro, Benjamin W. - United States Magistrate Judge

9.    DiStanislao, Phillip Thomas – Counsel for Appellants

10.    Durham, James B. - Counsel for Defendant/Appellee

11.  Fraser, Jane - Plaintiff/Appellant

12.  Frazier, Sam – Board Member, The Glynn Environmental Coalition, Inc.

13.  Furnish, David J. - Vice President, Sales and Marketing, Sea Island Acquisition, LLC

14.  Glenn, J. Lewis - Vice President, Real Estate, Sea Island Acquisition, LLC

15.  Goering, Kent - Secretary, The Glynn Environmental Coalition, Inc.

16.  Hall, J. Randal - Chief Judge, United States District Court for the Southern District of Georgia

17.  Heusel, Laura - Counsel for Plaintiffs/Appellants

18.  Hickey, Clifford - Vice President and Assistant Secretary, Sea Island Acquisition, LLC

19.  Hurley, Dorset - Vice President, Center for a Sustainable Coast, Inc.

20.  Kyler, David - Executive Director, Center for a Sustainable Coast, Inc.

21.  Langley, Adam - Counsel for Plaintiffs/Appellants

22.  Lewis, Righton - Counsel for Plaintiffs/Appellants

23.  McHugh, William - Vice President and General Counsel, Sea Island Acquisition, LLC

24.  Pierson, Gary - Chairman, Sea Island Acquisition, LLC

25.    Pitts, J. Dillon – Counsel for Appellants

26.    Roberts, Ron - Chief Financial Officer and Secretary, Sea Island Acquisition, LLC

27.    Robinson, Tony - President, The Glynn Environmental Coalition, Inc.

28.    Schweisberg, Matt - Expert for Plaintiffs/Appellants

29.    Sea Island Acquisition, LLC - Defendant/Appellee

30.    Sea Island Resort Holdings, LLC - Managing Member

31.    Singh, Vijay P. - Vice President, Operations, Sea Island Acquisition, LLC

32.    Steilen, Scott - President and Chief Executive Officer, Sea Island Acquisition, LLC

33.    Strother, Frankie W. - Vice President, Membership and Activities, Sea Island Acquisition, LLC

34.    The Glynn Environmental Coalition, Inc. - Plaintiff/Appellant

35.    Thompson, Rachael - Executive Director, The Glynn Environmental Coalition, Inc.

36.    Vaughan, Parra E. - Vice President, Chief Marketing Officer, Sea Island Acquisition, LLC

37.    Wainwright, Helen A. - Vice President, Human Resources, Sea Island Acquisition, LLC

38.     Willis, Steve – Board Member, Center for a Sustainable Coast, Inc.

No publicly traded company or corporation has an interest in the outcome of the case or appeal.

## STATEMENT ON ORAL ARGUMENT

Appellants Glynn Environmental Coalition, Inc., Center for a Sustainable Coast, Inc., and Jane Fraser respectfully request oral argument under Fed. R. App. P. 34 and 11th Cir. R. 28–1(c). This appeal presents an important issue about the strict limitations on courts against weighing disputed facts and making independent assessments—here, whether .49 acres of wetlands qualify as waters of the United States under the Clean Water Act—on a motion to dismiss.

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ..1

STATEMENT ON ORAL ARGUMENT ............................................................................ i

TABLE OF CONTENTS ........................................................................................ ii

TABLE OF AUTHORITIES ..................................................................................... iii

JURISDICTIONAL STATEMENT .................................................................................1

THE ISSUES PRESENTED FOR REVIEW ........................................................................1

STATEMENT OF THE CASE ...................................................................................2

    I.    THE CLEAN WATER ACT ..............................................................2

    II.    STATEMENT OF THE FACTS .........................................................5

    III.    PROCEDURAL HISTORY ............................................................9

STANDARD OF REVIEW ....................................................................................13

SUMMARY OF THE ARGUMENT .............................................................................14

ARGUMENT ...............................................................................................15

    I.    The District Court Erred in Finding the Subject Wetland Was Not Part of the Waters of the United States—A Disputed Question of Fact That Cannot Be Resolved on a Motion to Dismiss. ....................15

    II.    The District Court Further Erred by Either Rejecting or Construing the Citizens' Factual Allegations Against Them in Granting the Motion to Dismiss. ..............................................................18

    III.    Sea Island Acquisition Was Estopped From Challenging the Factual Determination That the Wetland Was Jurisdictional Under the CWA. ...............................................................21

CONCLUSION .............................................................................................22

CERTIFICATE OF COMPLIANCE .............................................................................25

CERTIFICATE OF SERVICE .................................................................................26

<u>TABLE OF AUTHORITIES</u>

## Cases

*Avoyelles Sportsmen's League, Inc. v. Marsh*, 715 F.2d 897 (5th Cir. 1983).........17

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)............................................14

*Erikson v. Pardus*, 551 U.S. 89 (2007)....................................................................15

*Flint Riverkeeper, Inc. v. S. Mills, Inc.*, 261 F. Supp. 3d 1345 (M.D. Ga. 2017)....16

*Glynn Envtl. Coal., Inc. v. Sea Island Acquisition, LLC*, 26 F.4th 1235 (11th Cir. 2022)........................................................................................................ 1, 5, 10

*Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49 (1987) ...........................................................................................................22

*Hill v. White*, 321 F.3d 1334 (11th Cir. 2003) ........................................................15

*Johnson v. 3M*, 563 F. Supp. 3d 1253 (N.D. Ga. 2021) ..........................................16

*Miyahira v. Vitacost.com, Inc.*, 715 F.3d 1257, 1265 (11th Cir. 2013)...................14

*Nat'l Assoc. of Home Builders v. E.P.A.*, 786 F.3d 34 (D.C. Cir. 2015)................22

*Omar ex rel. Cannon v. Lindsey*, 334 F.3d 1246 (11th Cir. 2003)..........................15

*S. River Watershed All., Inc. v. Dekalb Cnty., Ga.*, 69 F.4th 809 (11th Cir. 2023).13

*Sackett v. Environmental Protection Agency*, 598 U.S. 651 (2023)..... 10, 11, 12, 20

*Twin City Fire Ins. Co. v. Hartman, Simons & Wood, LLP*, 609 F. App'x 972 (11th Cir. 2015) ........................................................................................... 18, 20

*United States v. Lucas*, 516 F.3d 316, 324 (5th Cir. 2008) .....................................16

*United States v. Lucero*, 849 F. App'x 631 (9th Cir. 2021) ....................................16

*United States v. Robison*, 505 F.3d 1208 (11th Cir. 2007)......................................15

*United States v. Wilson*, 133 F.3d 251 (4th Cir. 1997)............................................16

*Williamson v. Tucker*, 645 F.2d 404 (5th Cir. 1981) ...............................................17

**Statutes**

28 U.S.C. § 1291 ...................................................................................................1

28 U.S.C. § 1331 ...................................................................................................1

28 U.S.C. § 2201 ...................................................................................................1

33 U.S.C. § 1251 ...............................................................................................1, 2

33 U.S.C. § 1311 ...................................................................................................2

33 U.S.C. § 1341 ...................................................................................................3

33 U.S.C. § 1344 ...............................................................................................2, 4

33 U.S.C. § 1362 ...................................................................................................2

33 U.S.C. § 1365 ...........................................................................................1, 4, 5

**Other Authorities**

77 Federal Register 10184, 10279 (Feb. 21, 2012) ...................................................4

**Rules**

11th Cir. R. 28–1 ...................................................................................................i

11th Cir. R. 32-4 ...................................................................................................25

Fed. R. App. P. 32 ...................................................................................................25

Fed. R. App. P. 34 ...................................................................................................i

Fed. R. Civ. P. 12 .................................................................................2, 9, 13, 18

**Regulations**

33 C.F.R. § 323.3 ...................................................................................................2

33 C.F.R. § 325.1 ...................................................................................................3

## JURISDICTIONAL STATEMENT

This appeal involves federal questions arising under the Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq*., more commonly known as the Clean Water Act ("CWA" or Act). The U.S. District Court for the Southern District of Georgia had jurisdiction over this suit under 28 U.S.C. §§ 1331 and 2201, as well as under 33 U.S.C. § 1365(a)(1). It entered its order of dismissal on March 1, 2024. (Doc. 64.) Appellants timely filed their notice of appeal on March 6, 2024. (Doc. 66.) This Court has jurisdiction under 28 U.S.C. § 1291.

## THE ISSUES PRESENTED FOR REVIEW

This case is about 0.49 acres of wetland owned by Sea Island Acquisition, LLC at Dunbar Creek in Glynn County, Georgia ("Subject Wetland"). The Glynn Environmental Coalition ("GEC"), Center for a Sustainable Coast ("CSC"), and Jane Fraser, individually and as a member of both groups (collectively, "Citizens"), sued Sea Island Acquisition under the CWA's citizen-suit provision, alleging it made material misrepresentations to the U.S. Army Corps of Engineers ("Corps") to secure a permit to fill the Subject Wetland. *See* 33 U.S.C. § 1365(a).

The last time this Court vacated the District Court's dismissal of the Citizens' claims, it "accept[ed] as true" the factual assertion in their Amended Complaint that the Subject Wetland is "a wetland under the [CWA]." *Glynn Envtl. Coal., Inc. v. Sea Island Acquisition, LLC*, 26 F.4th 1235, 1237 (11th Cir. 2022). On remand, the

District Court rejected that allegation and weighed the Citizens' averments against them before dismissing their claims yet again, this time under Federal Rule of Civil Procedure 12(b)(6).

The issues for review are:

1.      Whether a district court errs in drawing inferences in a defendant-polluter's favor and rejecting a plaintiff's factual allegations that property includes "navigable waters" under the CWA in dismissing claims under Federal Rule of Civil Procedure 12(b)(6).

2.      Whether a permittee, after accepting a wetland jurisdictional determination and receiving its derivative benefits, waives its right to challenge that jurisdictional determination in later proceedings.

## STATEMENT OF THE CASE

## I.    THE CLEAN WATER ACT

The CWA's primary mechanism for "restor[ing] and maintain[ing] the . . . integrity of the Nation's waters" is § 301, which forbids the unpermitted "discharge of any pollutant by any person." 33 U.S.C. §§ 1251(a), 1311 ("§ 301").[1] Nonexempt discharges of fill material to regulated waters—including wetlands adjacent to traditional navigable waters—require a permit from the Corps. 33 U.S.C. § 1344 ("§ 404"); *see also* 33 C.F.R. § 323.3(a) (authorizing the Corps to issue § 404 permits "for the discharge of dredged or fill material into waters of the United States"). But the Corps cannot issue a permit under either path until the State in which the

---

[1] Congress defined "pollutant" broadly to include things like dredged soil, rock, sand, and agricultural waste. 33 U.S.C. § 1362(6).

discharge would originate—here, Georgia—has issued a § 401 Water Quality Certification ("§ 401 WQC"). 33 U.S.C. § 1341 ("§ 401").

After securing State certification, an applicant has two paths to secure § 404 authorization for a fill project. The first is through an individual permit. The Corps' evaluation of each individual application involves a thorough review of the potential environmental and socioeconomic effects of the proposed activity. (Amended Complaint Doc. 24 at ¶¶ 95–96). To that end, applications must include: (1) "a complete description of the proposed activity, including necessary drawings, sketches, or plans"; (2) "the location, purpose and need for the proposed activity"; (3) "scheduling of the activity"; (4) "the names and addresses of adjoining property owners"; (5) "the location and dimensions of adjacent structures"; and (6) "a list of authorizations required by other federal, interstate, or local agencies for the work, including all approvals received or denials already made." 33 C.F.R. § 325.1.

The Corps also must conduct a public-interest review process before issuing an individual permit, which includes a required public notice-and-comment period. (Doc. 24 at ¶ 96.) After that, the Corps publishes a decision document describing its findings and the environmental impacts of the proposed project. (*Id.* at ¶ 103.) The Corps can add any special conditions for the specific applicant to minimize adverse effects on the environment. (*Id.*)

The second path is through general permits, which "eliminate[] individual review and allow[] certain activities to proceed with little or no delay." (Doc. 24 at ¶ 98.) In other words, they are cheaper, quicker, and available without public input. That said, general permits are reserved for narrow categories of activities that "cause only minimal adverse environmental effects." 33 U.S.C. § 1344(e)(1). Further, the Corps can issue general permits for no more than a five-year period. 33 U.S.C. § 1344(e)(2).

There are fifty-three nationwide general permits ("NWP"). The Citizens allege Sea Island Acquisition made material misrepresentations to the Corps when it applied to fill the Subject Wetland under NWP 39, which allows certain discharges into navigable waters for the sole purpose of "construct[ing] or expand[ing] commercial and institutional building foundations and building pads and attendant features that are necessary for the use and maintenance of the structures." Reissuance of Nationwide Permits, 77 Fed. Reg. 10184, 10279 (Feb. 21, 2012). The Georgia Environmental Protection Department issued a § 401 WQC for all nationwide permits, including NWP 39. (Doc. 24 at ¶ 85.)

The Citizens bring their claims under § 505, which allows "any citizen" to sue "any person . . . who is alleged to be in violation of . . . an effluent standard or limitation under [the Act]." 33 U.S.C. § 1365(a)(1). "Effluent standard or limitation"

means, among other things, "an unlawful act" or "limitation" under § 301—which cross-references § 404—and a § 401 certification. 33 U.S.C. § 1365(f).

With the stage now set, the Citizens turn to their factual allegations against Sea Island Acquisition.

## II.    STATEMENT OF THE FACTS

Though this case is over five-years old, it is still in its preliminary stages because the District Court has stayed all discovery in the case. As a result, the Court must "accept as true the allegations" in the Citizens' Amended Complaint and "draw all reasonable inferences in [their] favor." *Glynn Envtl. Coal., Inc.*, 26 F.4th at 1240.

Through that important lens, the Citizens' factual allegations date back to January 10, 2013, when Sea Island Acquisition submitted its NWP 39 application to fill the Subject Wetland. (Doc. 24 at ¶ 2.) At the time, the property had a "High Water Table" and surface "Saturation." (Doc. 24-8 at 48.) The Subject Wetland is in the same "basin that includes Dunbar Creek"—a traditional navigable waterway— and qualifies as "waters of the State of Georgia and waters of the United States" under the CWA. (Doc. 24 at ¶ 40.)

The Subject Wetland was a habitat for various bird species, including egrets, herons, cranes, gulls, osprey, and pelicans. (Doc. 24-13 ¶ 6(b).) It had hydric soil and hydrophytic vegetation, including live oak, water oak, loblolly pine, saw palmetto, cabbage palm, Virginia palm, and Greenbriar. (Doc 24-8 at 49–50; Doc.

24-13 ¶ 6(a).) And it was adjacent to a salt marsh directly connected by surface and ground water to Dunbar Creek. (Doc. 24-13 ¶ 6(f).) The only thing separating the Subject Wetland and the salt marsh was a private road—Salt Marsh Drive. The private road constructed by Sea Island Acquisition's predecessor maintained the Subject Wetland's connection and tidal flow to the salt marsh "via culverts and pipes." (*Id.* ¶ 6(g).)

Despite this rich environment, Sea Island Acquisition told the Corps that it wanted to fill the Subject Wetland to build a new office building and parking lot near its hotel on St. Simons Island. (Doc. 24-8 at 1; *id.* at 29 (survey of proposed construction).) That representation was Sea Island Acquisition's sole basis for seeking authorization under NWP 39, rather than going through the more stringent individual permit process. (Doc. 24 at ¶ 5; Doc. 24-8 at 1.)

Before submitting its application, Sea Island Acquisition performed its own (required) site assessment and delineation. After concluding the Subject Wetland was part of freshwater and tidal wetlands on its property under the Corps' jurisdiction, Sea Island Acquisition determined that it was "required" to purchase 3.48 mitigation credits to balance out its fill work. (Doc. 24-8 at 1–3.) Sea Island Acquisition also found that it would need to build "[r]etaining walls" before filling the Subject Wetland "to reduce [the project's] overall footprint." (*Id.* at 5.)

Based on its assessment, Sea Island Acquisition asked the Corps as part of its permit request to perform an expanded preliminary jurisdictional determination ("Preliminary JD") for the Subject Wetland to assess whether it qualified as "waters of the United States" under the CWA. (*Id.* at 35.) A Preliminary JD allows applicants "to move ahead expeditiously to obtain a Corps permit authorization where the party determines that it is in his or her best interest." (*Id.*) The Corps completed its work on February 20, 2013, and found the Subject Wetland likely fell under the CWA's jurisdiction. (*Id.* at 36-37; *see also* Doc. 24-1 at 1–3.)

The Corps authorized the proposed project under NWP 39 based on Sea Island Acquisition's representations. (Doc. 24-8 at 1–3.) But the primary condition for allowing the fill work was Sea Island Acquisition's affirmance it would be "conducted in accordance with the information submitted." (*Id.* at 2.) The Corps noted the NWP 39 was "valid for a period of two years," (*id.*), which was later extended to March 18, 2017. (*Id.* at 2–3, Doc. 24-2 at 1; Doc. 24 at ¶ 167.)

Sea Island Acquisition accepted the Corps' findings in the Preliminary JD and affirmed:

(1) It "ha[d] elected to seek a permit authorization based on a preliminary JD, which does not make an official determination of jurisdictional waters";

(2) It "ha[d] the option to request an approved JD before accepting the terms and conditions of the permit authorization, and that basing a permit authorization on an approved JD could possibly result in less compensatory mitigation being required or different special conditions";

(3) It "ha[d] the right to request an individual permit rather than accepting the terms and conditions of the NWP or other general permit authorization";

(4) It could "accept a permit authorization and thereby agree to comply with all the terms and conditions of that permit, including whatever mitigation requirements the Corps has determined to be necessary";

(5) That "undertaking any activity in reliance upon the subject permit authorization without requesting an approved JD *constitutes the applicant's acceptance of the use of the preliminary JD*"; and

(6) That "accepting a permit authorization (e.g., signing a proffered individual permit) or undertaking any activity in reliance on any form of Corps permit authorization based on a preliminary JD *constitutes agreement that all wetlands and other water bodies on the site affected in any way by that activity are jurisdictional waters of the United States*, and precludes any challenge to such jurisdiction in any administrative or judicial compliance or enforcement action, or in any administrative appeal *or in any Federal court*."

(Doc. 24-8 at 36–37 (emphases added).) In other words, Sea Island Acquisition agreed that the Preliminary JD's jurisdictional assessment was irrevocable.

That said, while Sea Island Acquisition was telling the Corps that it wanted to fill the Subject Wetland to construct an office building (the sole basis for authorization under NWP 39), it was separately representing to the local building authorities in Glynn County in its § 401 WQC submission that it wanted to fill the Subject Wetland to put in "PERMANENT SODDING" and improve the landscaping at its hotel. (Doc. 24 at ¶¶ 114-140; Doc. 24-9.) Landscaping does not fall under NWP 39's limited scope. (*See* Doc. 24 at 2, ¶ 6, 16.)

Sea Island Acquisition cleared and filled the Subject Wetland between February 20, 2013 and March 27, 2013. (Doc. 24 at ¶ 119). And rather than

constructing an office building, Sea Island Acquisition landscaped the Subject Wetland with permanent sodding. (*Id.* at ¶¶ 120-122, 125–128.) In an October 14, 2014, letter, the Corps acknowledged "that the [Sea Island Acquisition] provided some erroneous information" when applying for NWP 39. (Doc. 24-4 at 1.) And a May 2017 Corps' *Memorandum for Record re Department of the Army File SAS-2013-00045* later confirmed that Sea Island Acquisition had not built the required commercial structure on the Subject Wetland. (Doc. 24-2 at 1, ¶ 3.)

Nothing has changed.

## III.  PROCEDURAL HISTORY

The Citizens sued Sea Island Acquisition under § 505, alleging ongoing violations of § 301 because it impermissibly filled the Subject Wetland under § 404 without complying with NWP 39 or the § 401 WQC. (Doc. 24 at ¶¶ 10–24.) In short, they claimed that because Sea Island Acquisition's authorization to fill the Subject Wetland expired before it constructed any commercial building on it, the continued presence of the fill material violated the CWA. (*Id.* at ¶ 9.) Alternatively, the Citizens asserted Sea Island Acquisition's permit was void *ab initio* because it obtained NWP 39 authorization through fraud. (*Id.* at ¶¶ 10–24.).

Sea Island Acquisition moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and (6). At no point in its initial briefing did Sea Island Acquisition argue the Subject Wetland did not fall under the CWA's jurisdiction.

Nor could it given its affirmative agreement by accepting the permit that it would not challenge that determination in Federal court. (*See* Doc. 24-8 at 35-37.) The District Court granted the motion on jurisdictional grounds, concluding the Citizens lacked standing. (Doc. 6-1 at 9). A panel of this Court unanimously vacated that order and remanded for further proceedings. *Glynn Envtl. Coal., Inc.*, 26 F.4th at 1243.

Back at the District Court, Sea Island Acquisition renewed its 12(b)(6) motion to dismiss. (Doc. 45). While that was pending, the Supreme Court issued its decision in *Sackett v. Environmental Protection Agency*, 598 U.S. 651 (2023), where it clarified the definition of "navigable waters" for petitioners challenging the CWA's jurisdiction.[2] Even though Sea Island Acquisition had affirmed a decade earlier (unlike the Sacketts) that the Subject Wetland was, in fact, part of the waters of the United States, the District Court ordered the parties to file briefs "specifically address[ing] the *Sackett* decision's impact on this case." (Doc. 61 at 2).

The District Court then granted Sea Island Acquisition's motion and again dismissed the Citizens' claims, this time with prejudice. (Doc. 64.) At the outset, the

---

[2] In short, the Supreme Court held certain wetlands qualify as "waters of the United States" when: (1) the adjacent body of water qualifies "(i.e., a relatively permanent body of water connected to traditional interstate navigable waters)"; and (2) the wetland in question "has a continuous surface connection with that water, making it difficult to determine where the 'water' ends and the 'wetland' begins." *Sackett*, 598 U.S. at 678–79. The Supreme Court further clarified that a property owner cannot gerrymander a non-jurisdictional wetland by constructing a barrier that removes the continuous surface connection. *Id.* at 678 n.16.

Court recognized that when both the Corps authorized the fill in 2013 and the Citizens sued Sea Island Acquisition in 2019, "the Corps asserted jurisdiction over" the Subject Wetland. (Doc. 64 at 3.) But the District Court nevertheless questioned that jurisdictional determination under *Sackett*—something Sea Island Acquisition agreed a decade before it would or could not do.

The District Court began its analysis by finding *Sackett* impacted the Citizens' claims. (*Id.* at 6.) According to the District Court, regardless of the state of the law when they sued Sea Island Acquisition, if the Subject Wetland no longer qualified as a "navigable water," "then any purported filling" in 2013 "did not run afoul of the CWA." (*Id.* at 7.) The District Court then reasoned that *Sackett*'s holding in the context of a jurisdictional challenge applied retroactively here where, until 2022, neither the parties, District Court, nor this Court had ever questioned whether the Subject Wetland fell under the CWA's purview. (*Id.* at 7–9.)

Next, the District Court resolved the factual question of whether the Subject Wetland is still a "wetland" under *Sackett* based on allegations in the Amended Complaint filed four years earlier. The Citizens argued they had pleaded more than enough facts to survive a motion to dismiss because they had alleged: (1) the Subject Wetland qualifies as part of the waters of the United States in part because its basin includes Dunbar Creek, which is a traditional navigable water under the CWA; (2) water from the Subject Wetland flows by both surface runoff and groundwater to the

11

salt marsh adjacent to Dunbar Creek; and (3) their expert opined there is a direct connection between the Subject Wetland and the salt marsh through storm drains running under the road between them. (*Id.* at 10–11.) The District Court rejected all three points.

For the first, the District Court concluded the assertion that the Subject Wetland was part of the waters of the United States was "a legal conclusion, not a factual allegation," even though the Corps had made that exact factual determination in 2013. (*Id.* at 11.) The District Court also reasoned that "the fact that the Subject [Wetland] and Dunbar Creek are in the same basin *does not necessarily establish* there is a 'continuous surface connection' between them." (*Id.* (emphasis added).)

As for the second and third arguments, the District Court found "[n]either [the Citizens'] allegations nor [their] expert's affidavit *establish* the Subject [Wetland]" is a navigable water under *Sackett*. (*Id.* at 11–12 (emphasis added).) Citing some of the aerial photographs Sea Island Acquisition included in its application to the Corps, the District Court concluded there was "a 'clear demarcation' between the Subject [Wetland] and Dunbar Creek." (*Id.* at 12.) The District Court explained these pictures showed "a salt marsh; upland; the road leading from [the main road] to [Sea Island Acquisition's] hotel; a median; [and] the road from [Sea Island Acquisition's] hotel to [the main road]" between the Subject Wetland and Dunbar Creek. (*Id.*)

Even with those "demarcations" the Citizens attached an affidavit from their expert to the Amended Complaint where he opined there was "[p]rior tidal exchange between Dunbar Creek and the Subject Wetland, before it was filled, [which] would have supplied nutrients to the salt marsh and Dunbar Creek." (Doc. 24-16 ¶ 6(i).). The District Court discounted this allegation, stating "nothing in or attached to the amended complaint indicates Dunbar Creek ever has a surface connection with the Subject [Wetland], even when the tides change." (*Id.* at 13.)

In conclusion, the District Court reasoned that "[b]ecause *Sackett* applies retroactively to this case, and because the amended complaint does not satisfy the test promulgated in *Sackett*, the amended complaint does not sufficiently allege the Subject [Wetland] is a 'wetland,' thus it is not 'waters of the United States' and does not invoke the CWA's protections." (*Id.* at 14.)

## STANDARD OF REVIEW

This Court "review[s] de novo the district court's grant of a motion to dismiss under [Rule 12(b)(6)], accepting the factual allegations in the complaint as true and construing them in the light most favorable to the plaintiff." *S. River Watershed All., Inc. v. Dekalb Cnty., Ga.*, 69 F.4th 809, 818 (11th Cir. 2023) (internal quotation marks and citation omitted).

<u>SUMMARY OF THE ARGUMENT</u>

Parties invoke Rule 12(b)(6)'s well-worn standard with such frequency that it is often cast aside as a rote formality. But this case shows it is anything but.

To survive Sea Island Acquisition's motion, the Citizens only needed to plead sufficient factual allegations showing their claims were plausible on their face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The plausibility standard 'calls for enough facts to raise a reasonable expectation that discovery will reveal evidence' of the [Citizens' allegations]." *Miyahira v. Vitacost.com, Inc.*, 715 F.3d 1257, 1265 (11th Cir. 2013) (quoting *Twombly*, 550 U.S. at 556).

"[P]lausibility" is a far cry from "probability," especially at the pleading stage. *Twombly*, 355 U.S. at 556. Indeed, even if the District Court believed it were "improbable" the Citizens could prove their factual allegations (they can) and their odds of recovery were "remote and unlikely" (they aren't), that assumption would not warrant dismissal under Rule 12(b)(6). *Id.*

Yet here we are. Again. The Court should reverse the District Court's order of dismissal for at least three reasons. First, regardless of whether *Sackett* applies here, the District Court impermissibly resolved factual disputes about whether the Subject Wetlands fall under the CWA's protection. Second, instead of "accept[ing] as true all of the factual allegations" in the 189-page Amended Complaint and construing them in the light most favorable to the Citizens, *Erikson v. Pardus*, 551

14

U.S. 89, 94 (2007); *see also Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003), the District Court rejected their factual allegations out of hand and drew every inference against them. Third, the District Court improperly reopened the jurisdictional question after Sea Island Acquisition acquiesced to the prior jurisdictional determination.

This Court should vacate the dismissal order and remand with instructions to allow this case to proceed to discovery.

<u>ARGUMENT</u>

I.    **The District Court Erred in Finding the Subject Wetland Was Not Part of the Waters of the United States—A Disputed Question of Fact That Cannot Be Resolved on a Motion to Dismiss.**

Courts cannot resolve questions of fact at the motion-to-dismiss stage, "because such resolution would depend either on facts not yet in evidence or on construing factual ambiguities in the complaint in [Sea Island Acquisition]'s favor, which would be inappropriate." *Omar ex rel. Cannon v. Lindsey*, 334 F.3d 1246 (11th Cir. 2003). But that is exactly what the District Court did here when it dismissed all of the Citizens' claims based on its unilateral resolution of a single (recently) disputed question: whether the Subject Wetland qualifies as part of the waters of the United States.

This Court has made clear that is a question of fact, not law. *See, e.g.*, *United States v. Robison*, 505 F.3d 1208, 1215, 1224 n.21 (11th Cir. 2007) (remanding when

15

the Supreme Court issued an intervening decision changing the scope of what qualified as "navigable waters," while "express[ing] no opinion" about whether the land at issue "actually satisfy[ied] [that] test" because "that [was] a question for the jury in the first instance"). Therefore, "[w]hether a waterbody" qualifies as "navigable waters" under the CWA "cannot be determined on a motion to dismiss." *Johnson v. 3M*, 563 F. Supp. 3d 1253, 1295 n.10 (N.D. Ga. 2021), *aff'd sub nom.* 55 F.4th 1304 (11th Cir. 2022); *cf. Flint Riverkeeper, Inc. v. S. Mills, Inc.*, 261 F. Supp. 3d 1345, 1347 (M.D. Ga. 2017) (assessing whether something qualifies as "navigable waters" requires "a full review of the facts, not simply a conclusion based on the law" (internal quotation marks and citation omitted)).

Other circuits agree with this approach, observing this assessment is reserved for the factfinder—i.e., the court at summary judgment or the jury—*not* in ruling on a motion to dismiss under Rule 12(b)(6). *See, e.g.*, *United States v. Lucero*, 849 F. App'x 631, 633 (9th Cir. 2021) (memorandum) (affirming where the district court "specifically instructed the jury about the definition of waters of the United States and told them it was *their* responsibility to determine whether the fill sites fell within that definition"); *United States v. Lucas*, 516 F.3d 316 (5th Cir. 2008) (affirming where the district court left it to the jury to decide "the wetlands were waters of the United States adjacent to navigable wetlands" and the evidence supported the jury's finding on that point); *United States v. Wilson*, 133 F.3d 251, 258 (4th Cir. 1997)

16

("[R]esolving the factual question about the wetland-status of the parcels *at the time the fill was added* was clearly for the jury, and [the Court would] not undertake to resolve that dispute." (emphasis added)).

But here the District Court resolved that question based on a *post hac* eyeball test of decades-old aerial photos, shirking the Corps' extensive administrative record reaching the opposite conclusion. Indeed, the determination of whether property qualifies as waters of the United States, even after *Sackett*, is extensive and requires on-the-ground assessment and evaluation. *See, e.g.*, *Avoyelles Sportsmen's League, Inc. v. Marsh*, 715 F.2d 897, 906 (5th Cir. 1983) (noting the determination "requires an analysis of the types of vegetation, soil and water conditions that would indicate the existence of wetlands, . . . the kind of scientific decision normally accorded significant deference by the courts.").

Simply put, courts *cannot* rely on their own factual conclusions in evaluating complaints. And the District Court certainly could not resolve disputed allegations *against* the Citizens under Rule 12(b)(6). *See Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981) ("[I]n addition to having all [of the plaintiff's] allegations taken as true, the trial court cannot grant [a motion to dismiss converted into one for summary judgment] unless there is no genuine issue of material fact."). Whether the Subject Wetland is a jurisdictional water of the United States—and whether Sea Island Acquisition waived its right to challenge that determination by accepting the

§ 404 permit under the Preliminary JD—are questions of fact to which the Citizens are entitled to take discovery.

## II. The District Court Further Erred by Either Rejecting or Construing the Citizens' Factual Allegations Against Them in Granting the Motion to Dismiss.

It is well-settled that "[i]n ruling on a motion to dismiss under Rule 12(b)(6), a court must construe a complaint in the light most favorable to the plaintiff, *not the other way around*." *Twin City Fire Ins. Co. v. Hartman, Simons & Wood, LLP*, 609 F. App'x 972, 977 (11th Cir. 2015) (emphasis added). And there is no basis for a court to reject factual allegations outright.

The District Court exceeded its authority under Rule 12(b)(6) in this regard and committed reversible error in at least five ways. First, the District Court improperly characterized the Citizens' assertion that the Subject Wetland was part of the waters of the United States as a "legal conclusion, not a factual allegation." (Doc. 64 at 11.) As discussed in the previous section, courts across the country, including this one, have consistently reached the opposite conclusion.

What's more, the District Court neglected to recognize that the Corps had reached this factual conclusion in 2013, more than ten years before the decision below. Not only did Sea Island Acquisition never challenge that determination, it *assented to it* and agreed not to dispute it as a condition for procuring its § 404 permit. As a result, at the time the Amended Complaint was filed, the fact that the

Subject Wetland fell under the CWA's purview was undeniably a statement of fact. The District Court erred in holding otherwise.

Second, the District Court improperly drew inferences *against* the Citizens by holding "the fact that the Subject [Wetland] and Dunbar Creek are in the same basin *does not necessarily establish* there is a 'continuous surface connection' between them." (*Id.* (emphasis added).) That the District Court could "not necessarily" reach that conclusion implicitly means the inverse was not established either. As a result, it was bound to draw that inference in the Citizens' favor, rather than ruling as a matter of law that the Subject Wetland was *not* adjacent to the Creek.

Third, the District Court inappropriately found "[n]either [the Citizens'] allegations nor [their] expert's affidavit *establish* the Subject [Wetland]" is a navigable water under *Sackett*. (*Id.* at 11–12.) But the Citizens were "under no obligation" to *establish* that the Subject Wetland fell under the CWA's jurisdiction. They merely had to allege facts that it was "plausible." And they did. The Citizens pleaded—and included extensive documentation—facts showing the Subject Wetland had a "High Water Table" and surface "Saturation" along with hydric soil and hydrophytic vegetation—all necessary components for making the jurisdictional determination. (Doc. 24-8 at 8, 48.) The Citizens also asserted the Subject Wetland was adjacent to a salt marsh directly connected by surface and ground water to Dunbar Creek. (Doc. 24- 13 ¶ 6(f).)

To that end, the Citizens were not required to "anticipate" Sea Island Acquisition's newly minted defense—which it had agreed more than ten years earlier it would not raise—"and to include factual allegations in response." *Twin City Fire*, 609 F. App'x at 977. The Amended Complaint's "silence" on considerations announced in *Sackett* "did not give the district court license to assume" facts against the Citizens. *Id.*

Fourth, the District Court made its own, independent findings of fact when it determined "there is a 'clear demarcation' between the Subject Wetland and Dunbar Creek." (Doc. 64 at 12.) Specifically, the District Court concluded "from east to west there is: a salt marsh; upland; [Salt Marsh Drive]; a median; [Salt Marsh Drive]; and, finally, the Subject Property." (*Id.*) As for the salt marsh, the Citizens alleged—and the Corps confirmed in its report—that it qualified as part of the waters of the United States under the CWA. As a result, it was not a "demarcation" at all.

Turning to the road, the Supreme Court in *Sackett* emphasized that not every manmade "demarcation" will prevent property from qualifying as jurisdictional wetlands. 598 U.S. at 678 n.16. The Court reasoned that "[a]lthough a barrier separating a wetland from a water of the United States would ordinarily remove that wetland from federal jurisdiction, a landowner cannot carve out wetlands from federal jurisdiction by illegally constructing a barrier on wetlands otherwise covered by the CWA." *Sackett*, 598 U.S. at 678 n.16. Here, the District Court assumed that

the road separating the salt marsh from the Subject Wetland was built legally after obtaining the necessary permits. There is nothing in the Amended Complaint suggesting that. And there is no ground to deny the Citizens their opportunity to conduct discovery on that point—especially at the motion-to-dismiss stage. Moreover, the District Court determined without discovery that the connection under the road between the salt marsh and the Subject Wetland was not a continuous surface connection. This finding was contrary to Plaintiffs' expert's finding, which was given no inference or deference.

Fifth, the District Court improperly concluded that "nothing in or attached to the amended complaint indicates Dunbar Creek ever has a surface connection with the Subject [Wetland], even when the tides change." (Doc. 64 at 13.) Even though the Citizens' expert *said the exact opposite* in his affidavit attached to the Amended Complaint when he observed that "[p]rior tidal exchange between Dunbar Creek and the Subject Wetland, before it was filled, would have supplied nutrients to the salt marsh and Dunbar Creek." (Doc. 24-13 ¶ 6(i).)

The District Court's order cannot stand.

## III. Sea Island Acquisition Was Estopped From Challenging the Factual Determination That the Wetland Was Jurisdictional Under the CWA.

By accepting the Preliminary JD, Sea Island Acquisition has waived and is estopped from challenging the Corps' determination that the Subject Wetland is a jurisdictional water of the United States. Unlike the Sacketts, Sea Island Acquisition

did not utilize its administrative remedies to challenge the wetland determination. Rather, as discussed above, it acquiesced to the determination and thus waived any ability to subsequently challenge it. *Nat'l Assoc. of Home Builders v. E.P.A.*, 786 F.3d 34, 37 (D.C. Cir. 2015) (finding that Preliminary JDs are issued to property owners "wishing to voluntarily waive or set aside questions regarding CWA Jurisdiction"). With Sea Island Acquisition having waived any challenge to the Preliminary JD, the District Court erred by not estopping Sea Island Acquisition from doing so here and instead reopening the jurisdictional determination more than a decade later.

## CONCLUSION

The CWA "confers jurisdiction over citizen suits when the citizen-plaintiffs make a good-faith allegation of continuous or intermittent violation." *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 64 (1987). They have done just that.

As the Supreme Court recognized, if Sea Island Acquisition asserts that the Citizens' jurisdictional allegations are "in fact untrue, then [it] should have moved for summary judgment." *Id.* at 66 (internal quotation marks and citation omitted). But it didn't. And the Citizens have a right to "offer[] evidence to support the[ir] allegations." *Id.*

For these reasons this Court should vacate the District Court's order and remand this case to allow the Citizens to seek discovery, evidence their claims, and remedy the injuries to the Subject Wetland and Dunbar Creek inflicted by Sea Island Acquisition's disregard for the CWA.

Respectfully submitted this 16th day of May, 2024.

**BUTLER SNOW LLP**

/s/ E. Righton J. Lewis
E. Righton J. Lewis
Georgia Bar No. 215211
1170 Peachtree Street NE, Suite 1900
Atlanta, Georgia 30309
Telephone: (678) 515-5064
Fax: (678) 515-5001
righton.lewis@butlersnow.com

Adam M. Langley
6075 Poplar Ave., Suite 500
Memphis, Tennessee 38119
Telephone: (901) 680-7200
Fax: (901) 680-7201
adam.langley@butlersnow.com

John A. Brunini (*Admitted Pro Hac Vice*)
Laura D. Heusel (*Admitted Pro Hac Vice*)
Mississippi Bar No. 100065
1020 Highland Colony Parkway, Suite 1400
Ridgeland, Mississippi 39158
Telephone: (601) 985-4447
john.brunini@butlersnow.com
Telephone: (601) 985-4520
laura.heusel@butlersnow.com

P. Thomas DiStanislao
Virginia Bar No. 90677

919 East Main St., Suite 600
Richmond, Virginia 23219
Telephone: (804) 762-6041
Fax: (804) 762-6031
thomas.distanislao@butlersnow.com

*Attorneys for Plaintiffs/Appellants The Glynn
Environmental Coalition, Inc., Center for a
Sustainable Coast, Inc., and Jane Fraser*

### CERTIFICATE OF COMPLIANCE

Under Fed. R. App. P. 32(g), this document complies with the type-volume requirements of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by 11th Cir. R. 32-4, this brief contains 5283 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Times New Roman font size 14, which includes serifs.

/s/ E. Righton J. Lewis
E. Righton J. Lewis
Georgia Bar No. 215211

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on May 16, 2024, I electronically filed the forgoing with the Clerk of the Court using the CM/ECF System. Counsel for all parties are registered CM/ECF users and will be served with the foregoing document by the Court's CM/ECF System.

/s/ E. Righton J. Lewis
E. Righton J. Lewis
Georgia Bar No. 215211

*Attorney for Plaintiffs/Appellants The Glynn Environmental Coalition, Inc., Center for a Sustainable Coast, Inc., and Jane Fraser*