No. 24-10710-G

# United States Court of Appeals for the Eleventh Circuit

THE GLYNN ENVIRONMENTAL COALITION, INC. *et al.*,

*Plaintiffs-Appellants,*

*v.*

SEA ISLAND ACQUISITION, LLC,

*Defendant-Appellee.*

On Appeal from the United States District Court
for the Southern District of Georgia
No. 2:19-CV-0050-JRH

## BRIEF OF APPELLEE

James B. Durham
Matthew B Balcer
HALL BOOTH SMITH, P.C.
3528 Darien Highway
Suite 300
Brunswick, GA 31525
(912) 554-0093
jdurham@hallboothsmith.com
mbalcer@hallboothsmith.com

Lewis B. Jones
John L. Fortuna
JONES FORTUNA LP
111-A New Street
Decatur, GA 30030
(404) 282-4725
ljones@jonesfortuna.com
jfortuna@jonesfortuna.com

*(Counsel continued on next page)*

*Counsel for Appellee Sea Island Acquisition, LLC*

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

Austin Atkinson
HALL BOOTH SMITH, P.C.
191 Peachtree Street NE
Suite 2900
Atlanta, GA 30303
404-954-5000
aatkinson@hallboothsmith.com

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

## CERTIFICATE OF INTERESTED PERSONS AND DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1(a)(3), Appellee Sea Island Acquisition, LLC hereby provides notice that Appellants' Certificate of Interested Persons is correct and complete except for the following changes and omissions of names. Appellee certifies that the following individuals and entities may have an interest in the outcome of this case or appeal.

1.   Anderson, J. Yates, Vice President, Development and Services of Sea Island Company, LLC, f/k/a Sea Island Acquisition, LLC

2.   Atkinson, Austin A. – Counsel for Defendant/Appellee

3.   Balcer, Mathew B. – Counsel for Defendant/Appellee

4.   Carpenter, Scott T., Vice President of Sea Island Company, LLC, f/k/a Sea Island Acquisition, LLC

5.   Fortuna, John L. – Counsel for Defendant/Appellee

6.   Furnish, David J., Vice President, Sales and Marketing of Sea Island Company, LLC, f/k/a Sea Island Acquisition, LLC

7.   Glenn, J. Lewis, Vice President, Real Estate of Sea Island Company, LLC, f/k/a Sea Island Acquisition, LLC

8.   Hall Booth Smith, P.C. – Counsel for Defendant/Appellee

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

9.    Hall, J. Randal – Judge, United States District Court for the Southern District of Georgia

10.   Hickey, Clifford, Vice President and Assistant Secretary of Sea Island Company, LLC, f/k/a Sea Island Acquisition, LLC

11.   Jones, Lewis B. – Counsel for Defendant/Appellee

12.   Jones Fortuna LP – Counsel for Defendant/Appellee

13.   Lanier, Louise, Vice President, Human Resources of Sea Island Company, LLC, f/k/a Sea Island Acquisition, LLC

14.   McHugh, William, Vice President and General Counsel of Sea Island Company, LLC, f/k/a Sea Island Acquisition, LLC

15.   Roberts, Ron, Chief Financial Officer and Secretary of of Sea Island Company, LLC, f/k/a Sea Island Acquisition, LLC

16.   Sea Island Company, LLC. Sea Island Acquisition, LLC has changed its name to Sea Island Company, LLC

17.   Singh, Vijay P., Vice President, Operations of Sea Island Company, LLC, f/k/a Sea Island Acquisition, LLC

18.   Steilen, Scott, President and Chief Executive Officer of Sea Island Company, LLC, f/k/a Sea Island Acquisition, LLC

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

19. Vaughan, Parra E., Vice President, Chief Marketing Officer of Sea Island Company, LLC, f/k/a Sea Island Acquisition, LLC

20. Pierson, Gary, Strother, Frankie W., and Wainwright, Helen A. are no longer with Sea Island Company, LLC, f/k/a Sea Island Acquisition, LLC

The undersigned further certifies that Sea Island Resort Holdings, LLC is the 100% equity holder of Appellee Sea Island Company, LLC f/k/a as Sea Island Acquisition, LLC and that no publicly held corporation owns 10% or more of its stock.

Respectfully submitted, this 17th day of July, 2024.

**HALL BOOTH SMITH, P.C.**

3528 Darien Highway, Suite 300
Brunswick, Georgia 31525
(912) 554-0093
(912) 554-1973 facsimile
jdurham@hallboothsmith.com
mbalcer@hallboothsmith.com
aatkinson@hallboothsmith.com

*/s/ James B. Durham*
JAMES B. DURHAM
AUSTIN A. ATKINSON
MATTHEW B. BALCER

**FORTUNA JONES LP**

111 New Street, Suite A
Decatur, GA 30030
(404) 282-4725
jfortuna@jonesfortuna.com
ljones@jonesfortuna.com

JOHN L. FORTUNA
LEWIS B. JONES

C-3

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

## STATEMENT REGARDING ORAL ARGUMENT

Sea Island Acquisition, LLC ("Sea Island")[1] does not believe oral argument is necessary in this case. The District Court's decision was correct and carefully applied settled pleading requirements under *Iqbal* and *Twombly* to dismiss Appellants' claims.

If the Court does hold oral argument, then Sea Island states that it would seek to participate in that argument. The correct application of the Clean Water Act ("CWA") is vitally important to Sea Island. Under the Supreme Court's decision in *Sackett v. EPA*, the Subject Property is not now — and never was — subject to CWA regulation. But if this litigation is allowed to proceed, Sea Island will face, in the Supreme Court's words, potentially "crushing" civil penalties, claims for attorney's fees, and demands to "restore" its property, even when there is no set of facts under which the property at issue is subject to CWA jurisdiction.

---

[1] Sea Island Acquisition, LLC is now known as Sea Island Company, LLC.

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

# TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT ...................................i

TABLE OF CONTENTS ..............................................................ii

TABLE OF AUTHORITIES.........................................................v

INTRODUCTION....................................................................1

STATEMENT OF THE ISSUES..................................................3

STATEMENT OF THE CASE .................................................5

I.    Statutory Background ........................................................5

    A.  The Clean Water Act ................................................5

    B.  The Corps' Exercise of Jurisdiction over Wetlands
        that Do Not "Actually Abut" "Traditional Navigable
        Waters" ...........................................................6

    C.  The Supreme Court's Decision in *Sackett v. EPA*....................12

    D.  Jurisdictional Determinations and the Nationwide
        Permit System .........................................................13

II.   Factual Background .........................................................16

III.  Procedural History .........................................................19

STANDARD OF REVIEW.......................................................21

SUMMARY OF ARGUMENT .................................................22

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

ARGUMENT ........................................................................... 26

I.    The District Court Correctly Determined the Complaint Fails

      to Allege Jurisdictional Facts Under *Sackett* .................................. 26

      A.  The Complaint Alleges No Facts that Plausibly

          Support a Claim that the Wetlands are Jurisdictional ........... 26

      B.  Materials Appended to the Amended Complaint

          Confirm a Continuous Surface Connection Did Not

          Exist ....................................................................... 33

      C.  The District Court Did Not Improperly Resolve

          Factual Disputes or Draw Inferences Against

          Appellants .................................................................. 36

II.   Sea Island Did Not Waive Jurisdiction and is Not "Estopped"

      from Defending Appellants' Citizen Suit ........................................ 47

      A.  The Corps Did Not "Determine" the Wetland Was

          Jurisdictional and Sea Island Did Not Waive its

          Defense to Jurisdiction ............................................... 47

      B.  Sea Island Never Agreed Not to Contest Jurisdiction

          in Defense of Citizens Suits ....................................... 51

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

C.  Sea Island Did Not Agree to "Waive" Future Decisions

Correcting the Corps' Interpretation of the CWA and

Invalidating the Corps' Over-Broad Regulations ...................52

D.  There Is No Basis for Estoppel.................................................54

III.  *Sackett* Eliminates Jurisdiction and Moots Any Controversy ........56

CONCLUSION ...............................................................................59

CERTIFICATE OF COMPLIANCE........................................................60

CERTIFICATE OF SERVICE...............................................................60

iv

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

# TABLE OF AUTHORITIES

## Supreme Court Opinions                                    Page(s)

\* *Ashcroft v. Iqbal,*

    556 U.S. 662 (2009) .......................................... 2, 21, 22, 23, 27, 38, 39

\* *Bell Atl. Corp. v. Twombly,*

    550 U.S. 544 (2007) ............................................................. 36, 39, 21

*Solid Waste Agency* of Northern Cook County *v. U.S. Army*

*Corps of Engineers,*

    531 U.S. 159 (2001) ........................................................................ 7, 8

*Garza v. Idaho,*

    586 U.S. 232 (2019) ........................................................................... 49

*Gwaltney of Smithfield*, Ltd. *v. Chesapeake Bay Found.*, Inc.,

    484 U.S. 49 (1987) ....................................................................... 4, 56

\* *Rapanos v. United States,*

    547 U.S. 715 (2006) ................................. 1, 7-10, 15, 29, 30-31, 31, 35

*Rivers v. Roadway Express*, Inc.,

    511 U.S. 298 (1994) ........................................................................... 57

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

**\*** *U.S. Army Corps of Eng'rs v. Hawkes Co.*,

578 U.S. 590 (2016) ............................................... 5, 13, 14, 15, 48, 52

*United States v. Riverside Bayview Homes, Inc.*,

474 U.S. 121 (1985) .................................................................... 6

**\*** *Sackett v. EPA*,

598 U.S. 651 (2023) ........... 1, 3, 5-13, 20, 26-27, 35, 37, 42-44, 49, 54

**Eleventh Circuit Opinions**

*United States v. McAllister*,

77 F.3d 387 (11th Cir. 1996) ........................................................ 53

*Johnson v. 3M*,

563 F. Supp. 3d 1253 (N.D. Ga. 2021) ........................................ 41

*Am. Dental Ass'n v. Cigna Corp.*,

605 F.3d 1283 (11th Cir. 2010) ................................................... 44

*Atl. States Legal Found., Inc. v. Tyson Foods, Inc.*,

897 F.2d 1128 (11th Cir. 1990) ................................................... 57

*Black Warrior River.*

505 F.3d 1208 (11th Cir. 2007) ................................................... 40

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

*Bokum v. Comm'r,*

    992 F.2d 1136 (11th Cir. 1993) ........................................................ 55

*Cole v. U.S. Att'y Gen.,*

    712 F.3d 517 (11th Cir. 2013) ........................................................ 50

*Doe v. Samford Univ.,*

    29 F.4th 675 (11th Cir. 2022) ................................................... 21, 27

*Fla. Ass'n of Rehab. Facilities v. Fla. Dep't of Health & Rehab. Servs.,*

    225 F.3d 1208 (11th Cir. 2000) ........................................................ 58

*General American Life Ins. Co. v. AmSouth Bank,*

    100 F.3d 893 (11th Cir. 1996) ........................................................ 55

*Gill v. Judd,*

    941 F.3d 504 (11th Cir. 2019) ........................................................ 35

*Griffin v. Coca-Cola Refreshments USA, Inc.,*

    989 F.3d 923 (11th Cir. 2021) ........................................................ 50

*Interface Kanner, LLC v. JPMorgan Chase Bank, N.A.,*

    704 F.3d 927 (11th Cir. 2013) ........................................................ 52

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

*Jim Gall Auctioneers, Inc. v. City of Coral Gables*,

  210 F.3d 1331 (11th Cir. 2000) ................................................. 36, 37

*Lawson v. Life of the S. Ins. Co.*,

  648 F.3d 1166 (11th Cir. 2011) ...................................................... 51

*McCullough v. Finley*,

  907 F.3d 1324 (11th Cir. 2018) ................................................... 2, 39

*MSP Recovery Claims, Series LLC v. Metro. Gen. Ins. Co.*,

  40 F.4th 1295 (11th Cir. 2022) ...................................................... 46

*Myrick v. Fulton Cnty.*,

  Ga., 69 F.4th 1277 (11th Cir. 2023) .................................................. 21

*Parker v. Scrap Metal Processors, Inc.*,

  386 F.3d 993 (11th Cir. 2004) .................................................. 23, 39

*Sapuppo v. Allstate Floridian Ins. Co.*,

  739 F.3d 678 (11th Cir. 2014) ......................................... 20, 50, 54-55

*Searcy v. R.J. Reynolds Tobacco Co.*,

  902 F.3d 1342 (11th Cir. 2018) ...................................................... 49

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

*Turner v. Williams*,

 65 F.4th 564 (11th Cir. 2023) ................................. 21-22, 22

*United States v. Gama-Hernandez*,

 739 F. App'x 592 (11th Cir. 2018) ................................ 50

**Federal Court Opinions**

*Atchafalaya Basinkeeper v. Chustz*,

 682 F.3d 356 (5th Cir. 2012) ........................................ 51

*Carr v. Saucier*,

 582 F.2d 14 (5th Cir. 1978) ........................................ 58

*Nat'l Ass'n of Home Builders v. EPA*,

 786 F.3d 34 (D.C. Cir. 2015) ....................................... 47

*Phillips v. N.H. Ins. Co.*,

 263 F.3d 1215 (10th Cir. 2020) .................................... 49

*United States v. FMC Corp.*,

 531 F.3d 813 (9th Cir. 2008) ....................................... 52

**United States Code**

33 U.S.C. § 1319 ......................................................... 5

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

33 U.S.C. § 1344  ................................................................ 5, 14

33 U.S.C. § 1311  ........................................................... 5, 14, 48

33 U.S.C. § 1362(7)  ................................................................ 5

## Rules and Regulations

Fed. R. Civ. P. 10  ............................................................. 46

Fed. R. Civ. P. 12  ................................................... 21, 22, 39

Fed. R. Civ. P. 8  .......................................... 39, 23, 38, 40

33 C.F.R. § 328.3  ............................................. 12-13, 26

33 C.F.R. § 331.2  ............................................................ 14

## Other

77 Fed. Reg. 10,184 (Feb. 21, 2012)  ....................... 15, 16, 32

U.S. Army Corps of Engineers, Wetlands Delineation

Manual (1987) ............................................................... 34-35

U.S. Army Corps of Engineers and U.S. EPA, Clean Water Act

Jurisdiction Following the U.S. Supreme Court's Decision in

Rapanos v. United States & Carabell v. United States (2008)...11, 44, 45

U.S. Army Corps of Engineers, Regulatory Guidance Letter No. 08-02,

Jurisdictional Determinations (June 26, 2008) ..................... 48

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

## INTRODUCTION

The Clean Water Act regulates the discharge of dredged and fill material into "waters of the United States." In *Sackett v. EPA*, 598 U.S. 651 (2023), the Supreme Court held the U.S. Army Corps of Engineers incorrectly interpreted the statutory phrase "waters of the United States" to include millions of acres of wetlands like those on Sea Island's property, which are separated and clearly demarcated from jurisdictional waters and lack a "continuous surface connection" to such waters.

After *Sackett*, the CWA only covers wetlands that are "indistinguishable" from "waters of the United States." *Id.* at 678. Thus, a party asserting jurisdiction over wetlands must make two showings:

> "first, that the adjacent body of water constitutes 'waters of the United States,' (*i.e.*, a relatively permanent body of water connected to traditional interstate navigable waters); and second, that the wetland has a continuous surface connection with that water, making it difficult to determine where the 'water' ends and the 'wetland' begins."

*Id.* at 678–79 (quoting *Rapanos v. United States*, 547 U.S. 715, 742 (2006) (plurality opinion)). Where there is a "clear demarcation between 'waters' and 'wetlands,'" in contrast, the wetlands are not subject to CWA regulation. *See id.* at 678.

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

At the pleadings stage, therefore, Appellants had to allege facts plausibly supporting the existence of a "continuous surface connection" between wetlands on Sea Island's property and a navigable body of water. *See id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Appellants failed to do so — and because materials attached to the complaint conclusively show that no such connection existed — the District Court correctly dismissed the Amended Complaint.

In the absence of basic factual allegations in the Amended Complaint that a continuous surface connection existed, Appellants claim the District Court resolved factual disputes against them and that Sea Island is "estopped" from having the law correctly applied to its property. But Appellants are wrong that they can bypass pleading requirements by simply asserting the wetland is a "water of the United States," as this is nothing more than a "formulaic recitation" of an element of their claim that is "not entitled to be assumed true," *Iqbal*, 556 U.S. at 681, and that "carr[ies] no weight," *McCullough v. Finley*, 907 F.3d 1324, 1334 (11th Cir. 2018). The other "facts" Appellants identify are plainly insufficient, establishing at most that the wetlands on Sea Island's property "may be" jurisdictional, and that a permit "could be

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

required," under the very test *Sackett* rejected. Finally, Appellants'
assertion — in a single paragraph with no citation to authority — that
estoppel applies is both waived and baseless. The District Court's
decision should be affirmed.

## STATEMENT OF THE ISSUES

1.    Appellants pled CWA violations based on Sea Island's alleged
failure to comply with CWA requirements in filling wetlands on its
property. Although the U.S. Army Corps of Engineers asserted
jurisdiction over the subject wetland more than a decade ago, the rule
under which it asserted jurisdiction was vacated by the United States
Supreme Court in *Sackett v. EPA*. There, the Supreme Court held that
wetlands are only subject to CWA jurisdiction if they have a "continuous
surface connection" with a water of the United States — that is a
"relatively permanent body of water connected to traditional interstate
navigable waters" — so it is "difficult to determine where the 'water' ends
and the 'wetland' begins" and there is "no clear demarcation between
'waters' and 'wetlands.'" *Sackett*, 598 U.S. at 678–79.

While conclusorily asserting that the subject wetlands were "waters
of the United States," Appellants' Amended Complaint did not allege any

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

facts from which this inference could plausibly be drawn. The first question presented is whether the District Court correctly dismissed the Amended Complaint based on Appellants' failure to allege plausible facts sufficient to state a claim and establish federal jurisdiction.

2.    Appellants assert Sea Island waived its right to have the District Court apply current law by receiving a "preliminary jurisdictional determination" in 2013, stating jurisdictional wetlands "may be present" on Sea Island's land and accepting a permit allowing any such wetlands to be filled. The second question presented, therefore, is whether Sea Island's acquiescence to the Corps' jurisdictional overreach prior to *Sackett* precludes application of the corrected rule, which clarifies no permit was required.

3.    The CWA grants subject matter jurisdiction over citizen suits only when they can plausibly allege a "continuing violation." *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 56 (1987). *Sackett* clarified that the Subject Property is not now and never was a "water of the United States." The third question presented, therefore, is whether subject matter jurisdiction existed when the case was filed or, alternatively, whether the case is moot, because there is no possible

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

violation to be corrected nor any "water of the United States" to be restored.

## STATEMENT OF THE CASE

### I.    Statutory Background

### A.    The Clean Water Act

The CWA regulates the discharge of pollutants into "navigable waters," which it defines as "waters of the United States." 33 U.S.C. §§ 1311(a), 1362(7). As relevant here, discharges to "navigable waters" require a permit from either the EPA or, if the discharge involves "dredged or fill material," from the U.S. Army Corps of Engineers (commonly called a Section 404 permit). *See id.* § 1344(a).

The CWA carries "crushing" consequences for even "inadvertent violations," *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 602 (2016) (Kennedy, J., concurring), imposing significant civil and even criminal penalties for mere negligent discharges into covered waters, *Sackett*, 598 U.S. at 660; 33 U.S.C. § 1319(c). "On the civil side," penalties can exceed $60,000 per day for each violation. *Sackett*, 598 U.S. at 660. As the Supreme Court has observed, "due to the Act's 5-year statute of limitations and expansive interpretations of the term 'violation,' these

5

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

civil penalties can be nearly as crushing as their criminal counterparts

…." *Id.* (citations omitted).

## B.    The Corps' Exercise of Jurisdiction over Wetlands that Do Not "Actually Abut" "Traditional Navigable Waters"

Due to the CWA's "low *mens rea*" requirement and "its severe penalties," the geographic scope of the Act — that is, the Corps' power to regulate waters and wetlands beyond the traditional navigable waters that were the Act's central focus — has been profoundly important to the regulated community. *Sackett*, 598 U.S. at 661.

In *United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121 (1985), the Supreme Court considered the Corps' assertion of authority over wetlands that were physically "adjacent" to a traditional navigable water. "Noting that 'the transition from water to solid ground is not necessarily or even typically an abrupt one,' and that 'the Corps must necessarily choose some point at which water ends and land begins,'" the Court "upheld the Corps' interpretation of 'the waters of the United States' to include wetlands that 'actually abut[ted] on' traditional navigable waters." *Rapanos*, 547 U.S. at 724–25 (plurality opinion) (quoting *Riverside Bayview*, 474 U.S. at 132, 135) (alteration by the Supreme Court).

6

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

In response to the Supreme Court's decision, "the Corps adopted increasingly broad interpretations" of its own jurisdiction "without any change in the governing statute." *Id.* at 722, 725; *see also Sackett*, 598 U.S. at 665 (explaining that the Corps "responded to *Riverside Bayview* by expanding their interpretations even further"). And, within a few years, the Corps "interpreted [its] jurisdiction over 'the waters of the United States' to cover 270-to-300 million acres of swampy lands in the United States — including half of Alaska and an area the size of California in the lower 48 States." *Rapanos*, 547 U.S. at 722 (plurality opinion); *see also id.* at 725 (noting that the Corps' "interpretation extended 'the waters of the United States' to virtually any land feature over which rainwater or drainage passes and leaves a visible mark — even if only 'the presence of litter and debris'") (quoting 33 C.F.R. § 328.3(e)).

Following *Riverside Bayview,* the Supreme Court issued three decisions checking the Corps' expansive interpretation of its regulatory jurisdiction. First, in *Solid Waste Agency of Northern Cook County v. U.S. Army Corps of Engineers* ("*SWANCC*"), 531 U.S. 159 (2001), the Court overturned one such interpretation — known as the Migratory Bird Rule

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

— that asserted jurisdiction over isolated, non-navigable, intrastate wetlands used as habitat for migratory waterfowl. The Court began its analysis by repeating that *Riverside Bayview* upheld the agencies' extension of the Act only to "wetlands that actually abutted on a navigable waterway." *Id*. at 167. The Court then explained that "'nonnavigable, isolated, intrastate waters' — which, unlike the wetlands at issue in *Riverside Bayview*, did not 'actually abut on a navigable waterway' — were not included as 'waters of the United States.'" *Rapanos*, 547 U.S. at 726 (plurality opinion) (quoting *SWANCC*, 531 U.S. at 167, 171) (cleaned up).

While the Court's decision raised substantial questions about the Corps' CWA authority, the agency sought to "minimize *SWANCC*'s impact." *Sackett*, 598 U.S. at 666. It took the view that *SWANCC*'s holding was "strictly limited to waters that are nonnavigable, isolated, and intrastate," and it directed its field staff to "continue to exercise CWA jurisdiction to the full extent of their authority" for "any waters that fall outside of that category." *Id.* (quotations omitted). "What emerged was a system of 'vague' rules that depended on 'locally developed practices,'" under which the Corps asserted jurisdiction over "'virtually any parcel of

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

land containing a channel or conduit … through which rainwater or drainage may occasionally or intermittently flow.'" *Id.* (quoting *Rapanos*, 547 U. S. at 722 (plurality opinion)).

In this context, the Supreme Court granted review in *Rapanos v. United States* in 2006. There, the Court considered whether "wetlands, which lie near ditches or man-made drains that eventually empty into traditional navigable waters, constitute 'waters of the United States' within the meaning of the Act." 547 U.S. at 729 (plurality opinion). Led by Justice Scalia, four Justices concluded they were not. Looking both to Congress's historical focus on navigable rivers and streams, and the plain meaning of the word "waters," the plurality explained that the term "waters of the United States" includes only "relatively permanent, standing or continuously flowing bodies of water 'forming geographic features' that are described in ordinary parlance as 'streams, oceans, rivers, and lakes.'" *Id.* at 739 (cleaned up).

As to wetlands "adjacent" to navigable waters, the plurality explained, "*only* those wetlands with a continuous surface connection" to navigable waters — such that "there is no clear demarcation between 'waters' and wetlands" — are covered by the Act. *Id.* at 742 (emphasis in

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

original). Thus, in the plurality's view, wetlands adjacent to other waterbodies are subject to CWA jurisdiction only when two conditions are met:

> first, that the adjacent channel contains a "water of the United States," (*i.e.,* a relatively permanent body of water connected to traditional interstate navigable waters); and second, that the wetland has a continuous surface connection with that water, making it difficult to determine where the "water" ends and the "wetland" begins.

*Id.*

Writing alone, Justice Kennedy explained his view that CWA jurisdiction extends further to cover any wetlands that have a "significant nexus" with navigable waters. He further explained that, in his view, "such a nexus exists where 'the wetlands, either alone or in combination with similarly situated lands in the region, significantly affect the chemical, physical, and biological integrity' of those waters." *Sackett*, 598 U.S. at 667 (quoting *Rapanos*, 547 U.S. at 779–80 (Kennedy, J., concurring)).

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

This was the state of the law from 2006 until 2023.[2] Throughout that period, the Corps asserted "jurisdiction over wetlands" under either the plurality's "continuous surface connection" test or Justice Kennedy's test requiring "a significant nexus" with traditional navigable waters. *Sackett*, 598 U.S. at 667–69; *see generally* Memorandum, Clean Water Act Jurisdiction Following the U.S. Supreme Court's Decision in Rapanos v. United States & Carabell v. United States, *available at* https://bit.ly/Rapanos-Guidance (last visited July 8, 2024) ("*Rapanos* Guidance"). As for the latter, the Corps told staff to make "significant nexus" determinations "by considering a lengthy list of hydrological and ecological factors" outlined in its own guidance, under which, the Corps later conceded, "'almost all waters and wetlands across the country theoretically could be subject to a case-specific jurisdictional determination.'" *Sackett*, 598 U.S. at 667 (quoting 80 Fed. Reg. 37,056 (June 29, 2015)).

---

[2] Beginning in 2015, the Corps engaged in a series of back-and-forth rulemakings to define "waters of the United States." Each of these rules was either repealed and replaced by rules promulgated by a subsequent Administration or enjoined by various courts. *See generally Sackett*, 598 U.S. at 668–69 (discussing the various agency rules and court decisions). Thus, as a practical matter, the Corps' *Rapanos* Guidance effectively determined the Act's jurisdictional reach throughout the relevant period.

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

## C.    The Supreme Court's Decision in *Sackett v. EPA*

In 2023, the Supreme Court decided *Sackett v. EPA*. There, the Court interpreted the statutory language Congress enacted in 1972 and concluded "the *Rapanos* plurality was correct," holding that Congress's "use of 'waters' encompasses only those relatively permanent, standing or continuously flowing bodies of water forming geographical features that are described in ordinary parlance as 'streams, oceans, rivers, and lakes." *Sackett*, 598 U.S. at 671 (quotations omitted). Further, regarding adjacent wetlands, the Court held "that the CWA extends to only those wetlands that are 'as a practical matter indistinguishable from waters of the United States.'" *Id.* at 678 (quoting *Rapanos*, 547 U.S. at 755 (plurality opinion)).

Thus, after *Sackett*, a party asserting jurisdiction over wetlands must make two showings: "first, that the adjacent body of water constitutes waters of the United States, (*i.e.*, a relatively permanent body of water connected to traditional interstate navigable waters); and second, that the wetland has a continuous surface connection with that water, making it difficult to determine where the 'water' ends and the 'wetland' begins." *Id.* (quotations omitted); *see also* 33 C.F.R. § 328.3(c)(2)

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

(defining "adjacent" wetlands as those "having a continuous surface connection" following *Sackett*). Where there is a "clear demarcation between 'waters' and 'wetlands,'" in contrast, the wetlands cannot be considered "adjacent" to navigable waters and are not subject to regulation under the CWA. *Sackett*, 598 U.S. at 678–79.

## D.    Jurisdictional Determinations and the Nationwide Permit System

As the Supreme Court observed in *Sackett*, the Corps' historical assertion of broad regulatory authority based on a vague "significant nexus" standard put "property owners in a precarious position." *Id.* at 669. "And because the CWA can sweep broadly enough to criminalize mundane activities like moving dirt, this unchecked definition of 'the waters of the United States' mean[t] that a staggering array of landowners [were] at risk of criminal prosecution or onerous civil penalties." *Id.* at 669–70.

So, "[w]hat are landowners to do if they want to build on their property?" *Id.* at 670. One option is to secure a "Jurisdictional Determination" (JD) from the Corps to identify waters and wetlands the Corps claims are jurisdictional. "JD's come in two varieties: 'preliminary' and 'approved.'" *Hawkes*, 578 U.S. at 595. Preliminary JDs are just that

13

— preliminary — and "merely advise a property owner 'that there *may* be waters of the United States on a parcel.'" *Id.* (quoting 33 C.F.R. § 331.2) (emphasis by the Supreme Court). Approved JD's are formal determinations identifying the "presence or absence" of waters the Corps claims are jurisdictional. *Id.* These determinations are binding on the Corps, but not on third parties that might disagree with the Corps' jurisdictional determination. *Id.* at 598–99 (noting that even when armed with an approved JD from the Corps, a "property owner may still face a citizen suit under the Act").

If the Corps determines jurisdictional waters and wetlands are present, the property owner requires a Section 404 permit from the Corps to discharge fill material into them. 33 U.S.C. §§ 1311(a), 1344(a). Like JDs, Section 404 permits also come in two basic forms. "Individual permits" are issued case-by-case to authorize particular discharges. The process for securing a "specialized 'individual' permit" is both long and expensive. *Hawkes,* 578 U.S. at 594. According to the Supreme Court, the "average applicant" for an individual permit "'spends 788 days and $271,596 in completing the process ....'" *Id.* (quoting *Rapanos*, 547 U.S. at 721 (plurality opinion)).

14

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

"Nationwide permits," in contrast, have been issued to cover categories of activities that the Corps has determined "'cause only minimal individual and cumulative environmental impacts.'" *Id.* at 595 (quoting 33 C.F.R. § 323.2(h)). Nationwide permits are valid for five years and cover a broad range of activities, from the installation of navigational aids to surface coal mining. *See generally* Reissuance of Nationwide Permits, 77 Fed. Reg. 10,184, 10,184, 10,269–71 (Feb. 21, 2012). While the process of securing coverage under a nationwide permit is shorter and costs less than getting an individual permit, it is neither short nor inexpensive. As the Supreme Court observed, "the average applicant for a nationwide permit spends 313 days and $28,915 — not counting costs of mitigation or design changes." *Rapanos*, 547 U.S. at 721 (plurality opinion).

One such nationwide permit is "NWP 39," which authorizes landowners to fill up to half an acre of non-tidal wetlands in connection with the construction or expansion of commercial and institutional buildings. *See* 77 Fed. Reg. at 10,279.[3] It authorizes discharges associated

---

[3] The 2012 version of NWP 39 covered: "Discharges of dredged or fill material into non-tidal waters of the United States for the construction

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

with both the construction of building foundations and pads themselves, as well as the construction of "attendant features" like roads, parking lots, yards, utility lines, and recreation facilities such as playgrounds and playing fields. *Id*. Permittees seeking coverage under NWP 39 must submit a "preconstruction notice" or "PCN" to the Corps before commencing work to confirm their eligibility to use the permit. *See id*.

## II.    Factual Background

Sea Island owns property on St. Simons Island, Georgia, which includes a hotel and associated amenities. Doc. 24-1 at 4–5. In 2013, Sea Island desired to further develop its commercial site. At that time, the Corps asserted jurisdiction over any wetlands that had a "significant nexus" with covered waters. Doc. 24 ¶ 78. Thus, as part of its development plans, Sea Island sought a "preliminary Jurisdictional Determination" (JD) from the Corps in January 2013 to identify wetlands

---

or expansion of commercial and institutional building foundations and building pads and attendant features that are necessary for the use and maintenance of the structures. Attendant features may include, but are not limited to, roads, parking lots, garages, yards, utility lines, storm water management facilities, and recreation facilities such as playgrounds and playing fields. Examples of commercial developments include retail stores, industrial facilities, restaurants, business parks, and shopping centers." 77 Fed. Reg. at 10,279.

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

on Sea Island's property that the Corps believed could be subject to regulation, along with a "pre-construction notification (PCN) checklist" and "pre-construction notification (PCN) form" seeking coverage under NWP 39. Doc. 24-1 at 7–17; Doc. 24-8.

The Corps issued a Preliminary JD in February 2013. Doc. 24-1 at 1, 7. Applying its then-existing procedures — and its then-existing (and now confirmed-to-be overbroad) interpretation of its jurisdiction under the CWA — the Corps determined there "may be waters of the US within Clean Water Act (CWA) jurisdiction present" on the site. Doc. 24-1 at 8. It further advised Sea Island that this preliminary determination was "a 'non-binding' written indication that there may be waters of the US" present on Sea Island's land, and that it was "advisory in nature and may not be appealed." *Id.* And, based on this determination, it verified Sea Island's use of NWP 39 was appropriate and authorized it to proceed with its project. Doc. 24-1 at 18–21.

The Corps' determination left Sea Island three options. First, it could seek an "approved Jurisdictional Determination" to identify formally the areas of its property over which the Corps would assert jurisdiction. Doc. 24-1 at 16. Because the Corps would apply the very

17

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

same regulatory standard and Justice Kennedy's significant nexus test in conducting this evaluation, however, this option was unlikely to yield a different result and (prior to *Sackett*) any appeal of that determination would have taken many years and been futile. Second, Sea Island could accept the permit from the Corps authorizing it to fill the land at issue. *Id.* Third, Sea Island could ignore the Corps' determination and commence construction without a permit, recognizing the Corps would almost certainly consider any fill of wetlands identified in its determination to be a knowing (and potentially criminal) violation of the CWA.

Given these choices, Sea Island reasonably chose the middle option. It accepted the permit proffered by the Corps and, as a condition of the authorization, purchased expensive "mitigation credits" from a Corps-approved mitigation bank as "compensation" for impacting 0.49 acres of its land. Doc. 24-1 at 2.

As often happens with construction projects, things did not go as planned, "construction [was] delayed due to funding," and "other projects [took] precedence." Doc. 24-5 at 1. In response, the Glynn Environmental Coalition submitted multiple letters to the Corps demanding it take

18

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

enforcement action against Sea Island for failing to complete the construction project. Docs. 24-4; 24-2. Each time the Corps investigated and declined, ultimately explaining that: (1) the authorized fill was completed in the time provided by the permit; and (2) in any event, there was nothing to be gained by such an action, because "the wetland fill completed was authorized by the Corps, and compensatory mitigation for the fill [was] purchased"; the fill had no impact on "navigation, cultural resources, Essential Fish Habitat, or endangered species"; there was "no risk to any other public interest factors if the fill remain[ed] in place"; and, given the very small area at issue, any investment of resources in a restoration plan "cannot be supported" or justified. Doc. 24-2 at 1–2.

### III. Procedural History

Dissatisfied with the Corps' decisions and the exercise of its enforcement discretion, Appellants filed suit on April 17, 2019 in the Southern District of Georgia, alleging Sea Island violated the CWA by filling 0.49 acres of its property without completing construction of the project in the time provided by NWP 39 and/or by making misrepresentations to the Corps when it sought coverage under NWP 39. Doc. 1. Appellants then amended their complaint on March 23, 2020. *See*

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

*generally* Doc. 24. Sea Island moved to dismiss on multiple grounds and, on January 29, 2021, the District Court dismissed for lack of standing, Doc. 34, a decision which this Court reversed on April 1, 2022, Doc. 42.

After this Court issued its decision, the Supreme Court decided *Sackett v. EPA*, 598 U.S. 651 (2023). The parties thus submitted supplemental briefs to the District Court addressing *Sackett*'s effect on this litigation. Docs. 61, 62, 63. Sea Island argued that Appellants' Amended Complaint failed to plausibly allege that the 0.49 acres of wetlands Sea Island filled were jurisdictional under *Sackett*, and their failure to allege these critical jurisdictional facts required dismissal. Doc. 62.

Lacking factual allegations in their Amended Complaint plausibly supporting jurisdiction under *Sackett,* Appellants argued the Court's decision did not "apply retroactively."[4] *E.g.*, Doc. 63 at 2. They did not argue they had pled facts supporting liability under *Sackett*. *See* Doc. 63. Nor did they attempt to amend their complaint, though they continue to complain about the District Court's application of *Sackett*'s (binding)

---

[4] Appellants did not raise this argument on appeal and thus abandoned it. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014).

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

holding. *See*, *e.g.*, ECF 19 at 20. The District Court ultimately agreed with Sea Island and dismissed Appellants' Amended Complaint because Appellants "failed to allege facts indicating the" property is covered by the CWA. Doc. 64 at 13. Appellants now appeal.

## STANDARD OF REVIEW

This Court reviews a district court's "grant of a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) *de novo*." *Myrick v. Fulton Cnty., Ga.*, 69 F.4th 1277, 1294 (11th Cir. 2023). While the Court accepts factual allegations in the complaint as true and construes them in the light most favorable to the nonmoving party, it "may disregard labels and conclusions couched as factual allegations." *Doe v. Samford Univ.*, 29 F.4th 675, 685 (11th Cir. 2022) (cleaned up).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. *See also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do ...."); *Turner v. Williams*, 65

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

F.4th 564, 572 (11th Cir. 2023) ("We … exclud[e] the pleadings not entitled to the assumption of truth due to their conclusory nature."). "The alleged facts, *having been stripped of all legal conclusions*, must make a claim for relief not merely possible, but plausible." *Turner*, 65 F.4th at 577 (emphasis added); *see also Iqbal*, 556 U.S. at 678. Thus, the absence of factual allegations supporting a plausible legal claim is fatal in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

## SUMMARY OF ARGUMENT

The District Court's decision was correct and should be affirmed.

1.    The District Court correctly held Appellants did not plead facts showing that the wetland on Sea Island's property is a "water of the United States." Wetlands are jurisdictional under *Sackett* only when they have a "continuous surface connection" with a "relatively permanent body of water connected to traditional interstate navigable waters," such that it is "difficult to determine where the 'water' ends and the 'wetland' begins." Because Appellants failed to plead a "continuous surface connection" existed in this case, the Amended Complaint does not state a claim that is plausible on its face.

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

To the contrary, Appellants' factual assertions and documents attached to their Amended Complaint show a "continuous surface connection" did not exist; there was a "clear demarcation" between the "waters" and "wetlands" in question; and the wetlands at issue were "separate from traditional navigable waters," such that they "cannot be considered part of those waters." The District Court's conclusion that the Amended Complaint failed to plausibly allege the wetland is jurisdictional under *Sackett* is correct.

Contrary to Appellants' arguments, they cannot satisfy Rule 8's pleading requirements by the mere expedient of alleging the wetland is a "water of the United States," as this allegation "amount[s] to nothing more than a 'formulaic recitation of [an] element[]'" of their CWA claim and is "not entitled to be assumed true." *Iqbal*, 556 U.S. at 681 (quoting *Twombly*, 550 U.S. at 554–55); *see also Parker v. Scrap Metal Processors, Inc.*, 386 F.3d 993, 1008 (11th Cir. 2004) ("To establish a CWA violation, the plaintiffs must prove … there has been a discharge … *into waters of the United States*") (emphasis added). And the few other *factual* allegations in the Amended Complaint do not plausibly establish a surface connection existed.

23

Nor did the District Court apply the wrong standard or draw improper inferences against them at the pleadings stage. To the contrary, the District Court faithfully applied this Court's precedents; disregarded Appellants' legal conclusions couched as factual allegations; and concluded that what remained did not plausibly allege the wetlands were jurisdictional under *Sackett*. The District Court also properly considered the materials Appellants attached to their Amended Complaint, which, as discussed above, conclusively show there is no plausible claim that the wetland meets *Sackett*'s requirements.

2.     Appellants' assertions that Sea Island waived its right to have this Court consider the correct application of the CWA here, and that it is estopped from defending itself, are baseless. Neither requesting a Preliminary JD nor accepting a permit based on one waives a party's right to defend itself from a citizen's suit. Preliminary JDs are "non-binding" and "advisory." And, as the Corps has explained, "[w]hen the Corps provides a preliminary JD, or authorizes an activity based on a preliminary JD, the Corps is making no legally binding determination of any type regarding whether … jurisdiction exists over the particular water body or wetland in question."

*Sackett* clarified the meaning of the statutory phrase "waters of the United States." A landowner's choice to "acquiesce and seek a permit" after receiving a Preliminary JD, years before the ruling in *Sackett*, is not a knowing and voluntary relinquishment of the right to contest jurisdiction under a corrected interpretation of the statute. Nor does that choice waive any defense of any kind to a third-party citizen suit. Furthermore, Appellants have no right to enforce any aspect of Sea Island's decision to acquiesce to a pre-*Sackett* jurisdictional determination. It would be wrong to allow such determinations to be weaponized by citizen-plaintiffs, who the Supreme Court has said are not themselves bound by their terms. Finally, Appellants' argument that Sea Island is "estopped" from asserting a jurisdictional defense based on *Sackett* is both waived and wrong. Appellants do not meet the basic requirements for estoppel and applying it here would undermine equity and justice by perpetuating the Corps' overreach in asserting broad CWA jurisdiction under a test the Supreme Court has rejected.

3.    *Sackett* eliminates subject matter jurisdiction and moots any controversy. After *Sackett*, it is no longer possible to allege in good faith that a continuing violation existed when the Amended Complaint was

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

filed. The controversy is also moot, because there is no longer any continuing violation to be corrected or any "water of the United States" to be restored.

## ARGUMENT

## I.    The District Court Correctly Determined the Complaint Fails to Allege Jurisdictional Facts Under *Sackett*

After *Sackett*, wetlands are subject to CWA jurisdiction if — *but only if* — they have a "continuous surface connection" with waterbodies "that are 'waters of the United States' in their own right, so that there is no clear demarcation between 'waters' and wetlands." 598 U.S. at 678 (quoting *Rapanos*, 547 U.S. at 742 (plurality opinion)); *see also* 33 C.F.R. § 328.3(c)(2). Appellants' Amended Complaint alleges no facts to support this finding, and the District Court was right to dismiss it.

### A.    The Complaint Alleges No Facts that Plausibly Support a Claim that the Wetlands are Jurisdictional

Appellants' Amended Complaint is devoid of factual allegations necessary to establish the existence of the "continuous surface connection" *Sackett* requires. *See generally* Doc. 24. In the Amended Complaint itself, the only allegations describing the wetland and its relationship with navigable waters consist of just four lines in two paragraphs describing the Plaintiffs' interests. There, Appellants allege

26

the "Subject Wetland and its basin that includes Dunbar Creek … are waters of the state of Georgia and waters of the United States," and "Dunbar Creek is within the same basin as the Subject Wetland and is downstream of the Subject Wetland." Doc. 24 ¶¶ 40–41. That is all there is.

These allegations are inadequate. The naked assertion that the "wetland and its basin" are "waters of the United States" is simply a legal "conclusion couched as a factual allegation," which is properly disregarded. *See Iqbal*, 556 U.S. at 678; *Doe v. Samford Univ.*, 29 F.4th at 685; *see also infra* at 37–40. Likewise, the fact that the wetland "is within the same basin" as Dunbar Creek says nothing about whether the wetland has a continuous surface connection with Dunbar Creek as *Sackett* requires.[5] As such, this allegation does not plausibly allege the wetland was jurisdictional under *Sackett*, either.

---

[5] A wetland in the mountains of North Georgia can be "in the same basin" as the Chattahoochee River hundreds of miles away. While the Corps might have asserted jurisdiction over such a wetland before *Sackett* on grounds that it, along with other similar wetlands, had a "significant nexus" with the Chattahoochee River, there can be no claim that it is jurisdictional on that basis today. *See Sackett*, 598 U.S. at 706 (Thomas, J., concurring) (rejecting significant nexus test for jurisdiction, explaining, "'the entire land area of the United States lies in some

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

Recognizing as much, Appellants point to the voluminous materials attached to their Amended Complaint, but these materials fare no better. For example, Appellants cite the "extensive administrative record" associated with the Corps' 2013 permit to argue that the Corps "reach[ed] the opposite conclusion." ECF 19 at 26. As discussed below, the suggestion the Corps reached such a conclusion is false. *See infra* at 47–49. But even if it had, any conclusion that the wetland on Sea Island's property was jurisdictional "in 2013, more than ten years before the decision below," *id.* at 27, does not plausibly support a finding that Sea Island's property is jurisdictional today. This is especially true when it is undisputed the Corps' Preliminary JD was based on the theory that *Sackett* rejected, and Appellants cite nothing from that file to suggest the wetland met *Sackett's* criteria.

The same is true for the affidavit from Appellants' expert, Matthew Schweisberg, which is attached to the Amended Complaint. While Appellants rely on the Schweisberg affidavit to suggest there was a direct and "continuous surface connection" between the wetland on Sea Island's

drainage basin'" and "'any plot of land … may potentially be regulated'") (quoting *Rapanos*, 547 U.S. at 722 (plurality opinion)).

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

property and Dunbar Creek, *e.g.*, ECF 19 at 30, that is not what the affidavit says. The word "continuous" does not appear in Mr. Schwiesberg's affidavit. *See generally* Doc. 24-13. And to the extent he said anything about a "direct connection," he asserted "[t]here is a direct connection between the Subject Wetland" and the *salt marsh* adjacent to Dunbar Creek "via culverts and pipes." Doc. 24-13 ¶ 6(g).

But allegations regarding an underground connection via "culverts and pipes" and "storm drains" do not establish a surface connection exists, much less a continuous one. *See Rapanos*, 547 U.S. at 733–34 (plurality opinion) (rejecting exercise of jurisdiction over "channels containing merely intermittent or ephemeral flow," explaining that consideration of "storm sewers and culverts … [and] man-made drainage ditches … stretched the term 'waters of the United States' beyond parody"). Quite the opposite.

Far from asserting a continuous surface connection existed, Mr. Schweisberg's assertions make clear that any connection between the wetland on Sea Island's property and Dunbar Creek was at most intermittent and occurred only indirectly when it rained. For example, Appellants cite ¶ 6(f) of the Schweisberg affidavit to suggest the wetland

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

"was adjacent to a salt marsh directly connected by surface and ground water to Dunbar Creek." ECF 19 at 28. But a "ground water" connection is irrelevant. And, as for a surface connection, the relevant text of Mr. Schweisberg's paragraph states:

> Grassing in the Subject Wetland sets in motion the need for long-term periodic fertilizing and application of pesticides and herbicides to maintain the grass and prevent insect and fungus damage. These chemicals are intended to enter the soil, but some quantities of these chemicals are unavoidably carried in solution by rainwater runoff. As with any application of pesticides and herbicides, a substantial portion of the chemicals are not likely absorbed by the plants and soils. Each time it rains, the excess unabsorbed amount of chemicals is incorporated into both surface runoff and ground water, and eventually enter the adjacent wetlands (salt marsh) to the west of the Subject Wetland. The salt marsh is adjacent to and directly connected by surface and ground water to Dunbar Creek.

Doc. 24-13 ¶ 6(f). Even if true, such an intermittent, indirect discharge via runoff from rain events is not a "continuous surface connection" under *Sackett*. *See, e.g.*, *Rapanos*, 547 U.S. at 728, 733 (plurality opinion) (rejecting assertion that "wetlands are adjacent to covered waters if they are hydrologically connected through directional sheet flow during storm events," explaining that the "plain language of the statute simply does

not authorize this 'Land is Water' approach to federal jurisdiction" (quotations omitted)).

Finally, to the extent Appellants' brief cites the Schweisberg affidavit to argue there was "[p]rior tidal exchange between Dunbar Creek and the Subject Wetland," or that there was a "connection between the Subject Wetland and the salt marsh through storm drains running under the road," ECF 19 at 15, 22, 30, those allegations appear nowhere in the Amended Complaint. *See generally* Doc. 24. Nor does the Amended Complaint cite the Schweisberg affidavit for any similar proposition. *See id.* Instead, the Amended Complaint cites the Schweisberg affidavit only to support allegations that the wetland was "in the same basin" as Dunbar Creek, *id.* ¶¶ 40–41; that it provided "habitat" for various bird and animal species and "contained vegetation," *id.* ¶ 44; that loss of the wetland caused "aesthetic" harm by removing habitat and vegetation "that support the local ecosystem," *id.* ¶ 45; and "destroyed a natural filter to the entire basin and Dunbar Creek," *id.* ¶ 47. Thus, to the extent the Amended Complaint refers to the Schweisberg affidavit, it does not do so to allege the facts Appellants now suggest.

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

Even taken at face value, the Schweisberg affidavit does not allege a continuous surface connection. While Mr. Schweisberg makes reference to "tidal exchange between Dunbar Creek and the Subject Wetland," context provided by surrounding paragraphs makes clear that this refers to exchanges between Dunbar Creek and the adjacent salt marsh, which received "rainwater runoff" from the Subject Wetland through storm drains in response to storm events. *See* Doc. 24-13 ¶¶ 6(f)–(i). The movement of "rainwater runoff" from the Subject Wetland through underground storm drains does not establish a continuous surface connection under *Sackett*.

Further, materials attached to the Amended Complaint confirm the Subject Wetland was not itself tidal. As the Amended Complaint acknowledges, Doc. 24 ¶ 93, NWP 39 does not apply to "tidal waters." 77 Fed. Reg. at 10,279. Nor does it "authorize discharges into non-tidal wetlands adjacent to tidal waters." *Id.* Here, the Corps specifically verified the use of NWP 39 on Sea Island's property. Doc. 24-1. Appellants rely on the Corps' "extensive administrative record" in an attempt to establish the wetlands were jurisdictional. *E.g.*, ECF 19 at 26. And the Corps' permit files attached to the Amended Complaint confirm

32

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

the wetlands were neither tidal nor adjacent to tidal waters — findings Appellants have never contested. *See, e.g.*, Doc. 24-1 at 1–2 (Corps "verification for use of Nationwide Permit (NWP) No. 39 for impacts to 0.49 acres of wetland," stating [a]s a result of our evaluation …, we have determined that the proposed activity is authorized"); *id.* at 30 (project would affect "0.49 acre of freshwater wetlands" with zero "tidal wetland" impacts). In this context, a passing contrary statement in a 189-page complaint is not plausible and cannot save Appellants' claim.

In sum, Appellants did not allege that a "continuous surface connection" existed. Nor did they allege facts from which a continuous surface connection could be inferred. That being so, their Amended Complaint fails to state a claim under the CWA.

## B. Materials Appended to the Amended Complaint Confirm a Continuous Surface Connection Did Not Exist

Appellants' failure to plead facts establishing a continuous surface connection is no accident. As the District Court correctly observed, materials attached to the Amended Complaint conclusively establish the wetlands in question were clearly separate, demarcated from, and had no surface connection with Dunbar Creek. Doc. 64 at 12–13. As the District

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

Court explained, "Dunbar Creek is hundreds of feet away from the Subject Property." *Id.* at 12 (citing Doc. 24-8 at 10). Furthermore, the attachments to the Amended Complaint show that Dunbar Creek has adjacent tidal wetlands that, continuing east, include leafy vegetation visible in aerial views, then upland, then an ingress road, a vegetated median, followed by an egress road, more upland, and finally, the Subject Wetland. *See id.* (citing Doc. 24-1 at 24; Doc. 24-8 at 54, 58; Doc. 24-9 at 1; and Doc. 24-11 at 1). Thus, Appellants' own Amended Complaint establishes the existence of multiple demarcations between the isolated wetland and the waters of the United States.

What is more, the field sampling data recorded on the "WETLAND DETERMINATION DATA FORMS" prepared for the Preliminary JD, which are attached to the Amended Complaint, show no "Surface Water Present" in the wetland that was filled. Doc. 24-8 at 48, 51. These forms confirm "Normal Circumstances" were present when the sampling was performed, *id.*, meaning that the absence of surface water in the wetland reflects "the hydrologic conditions that are normally present" at the site, *see* U.S. Army Corps of Engineers, Wetlands Delineation Manual at 4

34

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

(Jan. 1987), *available at* https://bit.ly/Delineation-Manual (last visited July 16, 2024).

"[W]hen exhibits attached to a complaint 'contradict the general and conclusory allegations of the pleading, the exhibits govern.'" *Gill v. Judd*, 941 F.3d 504, 514 (11th Cir. 2019) (quoting *Griffin Indus. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007)). Given this, Appellants cannot claim the Subject Wetland had a continuous surface connection with covered waters. They cannot claim the wetland was "indistinguishable" from covered waters, such that is "difficult to determine where the 'water' ends and the 'wetland' begins." *See Sackett*, 598 U.S. at 678–79; *Rapanos*, 547 U.S. at 742 (plurality opinion). And they cannot claim there was "no clear demarcation between [the] 'waters' and 'wetlands'" at issue. *See Sackett*, 598 U.S. at 678; *Rapanos*, 547 U.S. at 742 (plurality opinion). The wetland thus cannot be considered "adjacent" to jurisdictional waters.

As *Sackett* emphasizes, "[w]etlands that are separate from traditional navigable waters cannot be considered part of those waters, even if they are located nearby." *Sackett*, 598 U.S. at 676. The District Court's conclusions that the Amended Complaint fails to allege a

35

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

"continuous surface connection," and thus "fail[s] to meet the *Sackett* test," were correct.[6] *See* Doc. 64 at 13.

## C.   The District Court Did Not Improperly Resolve Factual Disputes or Draw Inferences Against Appellants

Rather than directly address their failure to plausibly allege a direct surface connection under *Sackett*, Appellants criticize the District Court's decision and argue it applied the wrong standard. *See* ECF 19 at 24–27, 27–30. These arguments are a distraction given this Court's de novo review, but they are without merit regardless.

---

[6] Appellants speculate that the upland, road, and culverts might not be deemed to sever any surface connection under *Sackett*, because it is possible the road was illegally constructed by a preceding landowner. ECF 19 at 29–30. But such speculation, particularly in a brief, cannot save their claim. *See Twombly*, 550 U.S. at 555 (even "[f]actual allegations [contained in a complaint] must be enough to raise a right to relief above the speculative level"). Here, the roads were constructed decades ago and permitting files are publicly available to Appellants, as the "extensive" attachments to the Amended Complaint show. Yet there is no hint in the record — much less a factual allegation in the Amended Complaint — that the upland on which the road was built was constructed at all, much less that the upland, road, and infrastructure were constructed illegally. Appellants' "sheer speculation" in their brief is insufficient. *See Jim Gall Auctioneers, Inc. v. City of Coral Gables*, 210 F.3d 1331, 1333 (11th Cir. 2000).

### 1. Merely reciting the elements of a Clean Water Act claim does not create a jury issue

To begin, Appellants are wrong to suggest that whether a wetland is a "water of the United States" is a "question of fact" that cannot be resolved on a motion to dismiss. *See* ECF 19 at 24–27. And there is no merit to their contention that they may bypass the requirement to plead facts supporting their claim through the simple expedient of alleging the "Subject Wetland and its basin that includes Dunbar Creek are … waters of the United States." *See id.*

As *Sackett* makes clear, CWA jurisdiction "extends to only those wetlands that are 'as a practical matter indistinguishable from waters of the United States.'" *See* 598 U.S. at 678 (quoting *Rapanos*, 547 U.S. at 742, 755 (plurality opinion)). "This requires the party asserting jurisdiction over adjacent wetlands to establish 'first, that the adjacent body of water constitutes 'waters of the United States,' (*i.e.*, a relatively permanent body of water connected to traditional interstate navigable waters); and second, that the wetland has a continuous surface connection with that water, making it difficult to determine where the 'water' ends and the 'wetland' begins." *Id.* at 678–79 (quoting *Rapanos*, 547 U.S. at 742 (plurality opinion)) (cleaned up).

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

Rule 8 requires Appellants to allege actual facts that, if proven, would plausibly support a finding that the wetland at issue meets this test. *See Iqbal*, 556 U.S. at 678–79. And it is perfectly appropriate for the Court, on a motion to dismiss, to parse the Amended Complaint's allegations to determine which assertions are factual and assumed to be true, and which assertions are "conclusory" in nature or merely a "recitation of the elements" of a claim that are "disentitle[d] … to the presumption of truth." *See, e.g.*, *Iqbal*, 556 U.S. at 680–81, 687 (explaining the Court begins "by identifying the allegations in the complaint that are not entitled to the assumption of truth"; finding allegations that plaintiff was subjected "to harsh conditions of confinement as a matter of policy on account of his religion, race, and/or national origin and for no legitimate penological interest" "amount to nothing more than a formulaic recitation of the elements of a constitutional discrimination claim," which are "conclusory" and "not entitled to be assumed true"; and holding that complaint "fails to plead

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

sufficient facts to state a claim for purposeful and unlawful discrimination") (quotations omitted).[7]

Here, Appellants' allegation that the wetland is a "water of the United States" is nothing more than a recitation of an element of a CWA claim. *See, e.g.*, *Parker*, 386 F.3d at 1008 ("To establish a CWA violation, the plaintiffs must prove that (1) there has been a discharge; (2) of a pollutant; (3) *into waters of the United States*; (4) from a point source; (5) without a … permit.") (emphasis added). That being so, it is "conclusory and not entitled to be assumed true." *See Iqbal*, 556 U.S. at 681. *See also, e.g.*, Moore's Federal Practice - Civil § 8.04 ("A bald statement of the elements of a claim is the same as an assertion of a legal conclusion …; it

---

[7] *See also, e.g.*, *Twombly*, 550 U.S. at 555, 564–70 (holding a complaint failed to meet Rule 8's requirements and "must be dismissed" under Rule 12(b)(6), explaining that "labels and conclusions, and a formulaic recitation of the elements … will not do," and parsing allegations in complaint to find that conspiracy allegations were insufficient as a matter of law); *McCullough*, 907 F.3d at 1334 (district court erred by failing to disregard conclusory allegations and dismiss complaint alleging defendants were "the 'principal architect' … and … 'instrument[]' behind an unlawful policy"; and "'adopted' and … 'administered' an unlawful scheme," explaining that, "without more," these allegations "are conclusory," "carry no weight," and are "not entitled to be assumed true" (quotations omitted).

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

does nothing to establish whether the pleading states a plausible claim
….").

The cases Appellants cite are not to the contrary. In *United States
v. Robison*, for example, the defendants were convicted of knowingly
discharging contaminated water into a creek next to its manufacturing
plant, which flowed into another creek, then 28 miles later into a lake,
then another creek, and finally after another 20 miles into the Black
Warrior River. 505 F.3d 1208, 1211 (11th Cir. 2007). After their
conviction, the Supreme Court issued its decision in *Rapanos*, which
made clear that the "'expansive definition'" of waters of the United States
used in the jury charge was "no longer good law." *Id.* at 1216 (quoting
*Rapanos*, 547 U.S. at 725). Thus, after concluding that the error in the
district court's jury instruction was not harmless, the 11th Circuit
remanded the case for a new trial on the CWA violations using the more
circumscribed *Rapanos* standard, noting it was up to the jury in the first
instance to decide whether that standard was met based on the facts
proven at trial. *See id.* at 1222–24 & n.21, 1229. The decision says nothing
about Rule 8's pleading requirements.

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

Appellants' reliance on a footnote in the district court's opinion in *Johnson v. 3M* is equally misplaced. There, the district court considered whether the plaintiff had sufficiently alleged the existence of "waters of United States" under the "significant nexus" test. 563 F. Supp. 3d 1253, 1293–95 (N.D. Ga. 2021). In contrast to the Amended Complaint here, the complaint and incorporated notice letters in that case identified literally dozens of allegedly illegal discharges occurring on specific dates to specific waterways, including "the Conausauga River and tributaries thereto," and they included detailed sampling results showing elevated pollution levels attributable to the discharges downstream in the Coosa River, which is undoubtedly a "traditional navigable water" under the CWA. *See, e.g.*, *id.* at 1294–95; *id.*, Civil Action No. 4:20-cv-8, Doc. 418-3 at 3–4 (notice letter incorporated into complaint showing elevated pollution levels at the "Coosa River at Lock and Dam"). The court simply noted, in light of those well-pleaded facts, that whether the upstream waters where the discharges occurred "satisfie[d] the significant nexus test" is a question of fact "that cannot be determined on a motion to dismiss." *Id.* at 1295 n.10.

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

The detailed allegations in *Johnson* are a far cry from the naked and formulaic assertion of jurisdiction here. But in any event, nothing in the district court's opinion in that case alters *Iqbal*'s rule that conclusory statements of the elements of a claim should be disregarded and are insufficient to survive a motion to dismiss. Nor does it suggest plaintiffs are relieved from their obligation to plead plausible facts showing the existence of a surface connection after *Sackett*.

To the contrary, requiring plaintiffs seeking to enforce the CWA to allege facts to establish jurisdiction *is even more appropriate* after *Sackett*. As the Supreme Court explained, the Corps' prior interpretation of the Act "g[ave] rise to serious vagueness concerns in light of the CWA's criminal penalties," was "hopelessly indeterminant," provided insufficient "notice to landowners of their obligations," and left property owners "[f]acing severe criminal sanctions for even negligent violations" to "feel their way on a case-by-case basis." *See Sackett*, 598 U.S. at 680–81 (quotations omitted). Given the *Sackett* Court's effort to establish bright lines to readily identify waters and wetlands that are subject to jurisdiction, ensuring that complaints in enforcement actions include

42

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

basic factual allegations showing jurisdiction exists is not too much to ask.

### 2.    The District Court did not require Appellants to prove their claims at the motion to dismiss stage

Appellants are also wrong to argue that the District Court improperly drew inferences against them and required them to affirmatively prove their case at the pleadings stage. *See* ECF 19 at 27–30. Appellants seize on the District Court's use of the word "establish" to argue it failed to assume the facts they pled were true, and instead made its own factual findings. *See id.* at 28–30. But all the factual allegations Appellants cite — the legal conclusion that the wetland was a "water of the United States," that the wetland was "in the same basin" as Dunbar Creek, that the wetland was "adjacent" to the salt marsh, despite being separated from it by uplands, roads, and culverts, that the Corps considered the wetland to be jurisdictional in 2013 under the significant nexus test, and that the wetland had a "high water table," "surface saturation," and "hydric soils" — do not plausibly allege a surface connection with a jurisdictional water under *Sackett*, for the reasons explained above.

The District Court's statements, when read in context, merely reflect this reality and represent nothing more than a conclusion that Appellants failed to *allege* facts that "establish" their entitlement to relief — a phrasing that is neither controlling nor controversial. *See Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (holding plaintiff failed to satisfy the pleading standard because it "did not *plausibly* establish" the relevant elements) (emphasis added).

Appellants' assertion that they were "not required to 'anticipate' Sea Island Acquisitions' newly minted defense" is equally flawed. *See* ECF 19 at 29. When the Amended Complaint was filed, the Corps would assert jurisdiction over wetlands if they satisfied *either* the *Rapanos* plurality's "continuous surface connection" standard or Justice Kennedy's "significant nexus" test. *See* Doc. 24 ¶ 78 ("'Navigable waters' includes wetlands that are adjacent to traditional navigable waters or have a significant nexus with traditional navigable waters"); *Rapanos* Guidance at 1, 3. Thus, the "continuous surface connection" requirement in *Sackett* was not new, *see, e.g.*, *Sackett*, 598 U.S. at 684, and Appellants could have pled facts supporting jurisdiction under that standard if they existed. Appellants likewise could have sought leave to amend their

44

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

complaint to add jurisdictional allegations after *Sackett*.[8] But Appellants did neither. Instead, they proceeded under an Amended Complaint alleging only facts to support a jurisdictional finding under the significant nexus standard *Sackett* rejected,[9] because that is all the facts would support.

_____

[8] While such an amendment would have been unduly delayed and objectionable, because the same facts could and should have been alleged in the Amended Complaint for the reasons above, Appellants' failure to make such a motion is telling.

[9] That Appellants sought to establish jurisdiction under the significant nexus test is clear. *Compare, e.g.*, Doc. 24 ¶¶ 46–48 (alleging that "[w]etlands affect downstream waters by altering material fluxes through the river network, thereby affecting river structure and function; i.e. connectivity"; that "wetlands act as natural filters and protective barriers to downstream bodies of water, including creeks"; that "filling of the Subject Wetland destroyed a natural filter to the entire basin and Dunbar Creek"; and that filling the wetland "is a contributing factor" to "diminished water quality" in Dunbar Creek); Doc. 24-13 ¶¶ 6(a)–(f), (i) (asserting the wetland "contained habitat" for various species; provided "a natural filter to the entire basin and Dunbar Creek"; that removing the wetland caused chemicals to carried by runoff from storm events to "eventually enter the adjacent wetlands (salt marsh) to the west of the Subject wetland," thus "degrad[ing] the quality of the water, soil, and aquatic life in the salt marsh, which in turn harms the fish and other aquatic life in Dunbar Creek"; and that the wetland "supplied nutrients to the salt marsh and Dunbar Creek," which "would have contributed to the base of the food chain in both the salt marsh and especially Dunbar Creek, supporting fish and shellfish and all aquatic life, as well as birds and mammals that use the marsh and creek as asource of food (fish, shellfish, aquatic insects)"), *with Rapanos* Guidance at 8 (explaining a "significant nexus analysis will assess … the functions performed by any

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

Finally, Appellants' suggestion that the District Court acted improperly by considering the materials attached to the Amended Complaint is baseless. *See* ECF 19 at 29–30. The materials Appellants chose to attach to their Amended Complaint are a part of their "pleading for all purposes." *See* Fed. R. Civ. P. 10(c). Not only was it proper for the District Court to review them — the court would have likely erred to do otherwise. *See MSP Recovery Claims, Series LLC v. Metro. Gen. Ins. Co.*, 40 F.4th 1295, 1303 (11th Cir. 2022) (reversing dismissal because district court refused to consider documents attached to the complaint). And where, as discussed above, those materials unambiguously confirm *Sackett*'s test is not met and render any contrary allegation implausible, considering them in dismissing Appellants' claims was entirely proper.

In sum, Appellants failed to plausibly allege a claim under the CWA. The District Court did not err in dismissing their Amended Complaint.

---

wetlands," considering "ecologic features" such as the "potential of tributaries to carry pollutants and flood waters to traditional navigable waters," "provision of aquatic habitat that supports a traditional navigable water," "potential of wetlands to trap and filter pollutants or store flood waters," and "maintenance of water quality in traditional navigable waters").

## II. Sea Island Did Not Waive Jurisdiction and is Not "Estopped" from Defending Appellants' Citizen Suit

Appellants assert, in a single paragraph devoid of authority,[10] that Sea Island "acquiesced to the [Corps'] determination" and "waived any ability to subsequently challenge it" by declining to request an Approved JD and then pursuing a futile appeal. ECF 19 at 30–31. Appellants are wrong that Sea Island either waived jurisdiction or should be "estopped" from "reopening the jurisdictional determination" to be decided under current law. *See id.*

### A. The Corps Did Not "Determine" the Wetland Was Jurisdictional and Sea Island Did Not Waive its Defense to Jurisdiction

To begin, Appellants' claim that the Corps made a "factual conclusion in 2013" that wetlands on Sea Islands' property were "waters of the United States" is false. ECF 19 at 27. All the Corps "determined"

---

[10] Appellants' only citation is to a decision observing that "Preliminary JDs are usually issued at the request of landowners wishing 'to voluntarily waive or set aside questions regarding CWA[] jurisdiction' over their property, such as where jurisdiction is clear or is not worth contesting." *Nat'l Ass'n of Home Builders v. EPA*, 786 F.3d 34, 37 (D.C. Cir. 2015). While accurately describing the circumstances in which Preliminary JDs are used, this observation says nothing about the efficacy or scope of any waiver associated with these instruments, issues that court had no reason to address.

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

was jurisdictional waters "*may be* present" on the site. Doc. 24-1 at 1 (advising that "wetlands/other waters on the subject property *may be* waters of the United States within the jurisdiction of Section 404 of the Clean Water Act" and the "placement of dredged or fill material into … those wetlands *could require* prior Department of the Army authorization pursuant to Section 404") (emphasis added); *id.* at 8 ("USACE has determined … [t]here *may be* waters of the US within Clean water Act (CWA) jurisdiction present" on the site) (emphasis added); *see also Hawkes*, 578 U.S. at 595 (explaining "preliminary JDs merely advise a property owner 'that there *may be* waters of the United States on a parcel'") (quoting 33 C.F.R. § 331.2) (emphasis added). As defined by the Corps, Preliminary JDs are "non-binding" and "advisory." Doc. 24-1 at 8. And "[w]hen the Corps provides a preliminary JD, or authorizes an activity based on a preliminary JD, the Corps is making no legally binding determination of any type regarding whether … jurisdiction exists over the particular water body or wetland in question." U.S. Army Corps of Engineers, Regulatory Guidance Letter No. 08-02, Jurisdictional Determinations, at 3 (June 26, 2008), *available at* https://bit.ly/RGL-08-02 (last visited July 12, 2024).

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

By agreeing that jurisdictional features "may be" present, Sea Island did not "assent[] to" or concede that jurisdictional features *are* present, as Appellants claim. ECF 19 at 27. Instead, it agreed to disagree with the Corps on the jurisdictional issue by accepting a permit. *See Sackett*, 598 U.S. at 670 (explaining it would be "foolish to go ahead and build" after the Corps issues a jurisdictional determination since it "might form evidence of culpability in a prosecution or civil action," so landowners might "simply … acquiesce and seek a permit"). While it is true that Sea Island chose to forego futile appeals by making this "choice," it did not waive any rights relevant to its defense of Appellants' citizen-suit by doing so.

"Waiver is the voluntary, intentional relinquishment of a known right …." *Searcy v. R.J. Reynolds Tobacco Co.*, 902 F.3d 1342, 1359 (11th Cir. 2018) (quotations omitted) "The doctrine is essentially a matter of intention, focusing on the intent of the party against whom waiver is asserted." *Phillips v. N.H. Ins. Co.*, 263 F.3d 1215, 1220 (10th Cir. 2001) (quotations omitted). Even plea bargains are "'essentially contracts.'" *Garza v. Idaho*, 586 U.S. 232, 238 (2019) (quoting *Puckett v. United States*, 556 U. S. 129, 137 (2009)). "Where a party alleges an implied

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

waiver,[11] 'the acts, conduct, or circumstances relied upon to show waiver must make out a clear case' of intentional relinquishment." *Griffin v. Coca-Cola Refreshments USA, Inc.*, 989 F.3d 923, 935 (11th Cir. 2021) (quotations omitted). There is simply no colorable argument that, by taking the only choice available to it, Sea Island intended to concede jurisdiction even under a corrected interpretation of the Act's text and

---

[11] In the background section of their brief, Appellants discuss fine print in "Appendix D" to the "preliminary jurisdictional determination form," which purports to "ma[ke]" applicants "aware" they will be precluded from contesting jurisdiction in future enforcement proceedings. ECF 19 at 16–17; Doc. 24-8 at 36–37. Appellants pointedly do not argue, however, that this constitutes a valid and express waiver of Sea Island's rights vis-à-vis their claims, *see* ECF 19 at 30–31, they cite no authority to support such a claim, and they have abandoned any argument it is. *See Sapuppo*, 739 F.3d at 681–82; *Cole v. U.S. Att'y Gen.*, 712 F.3d 517, 530 (11th Cir. 2013) (holding that a party abandons an issue when he "mentions [it] only in his Statement of the Case but does not elaborate further in the Argument section").

There are good reasons they do not press this argument. Applicants are not required to "assent to" (or even sign) form language, which is obscurely buried under the misleading heading, "REVIEW PERFORMED FOR SITE EVALUATION." Doc. 24-8 at 36–37. Especially in the context of a statute like the Clean Water Act that imposes criminal sanctions and effectively leaves landowners no choice but to engage with the Corps in this process, this is far from the express and knowing waiver required to abandon important rights. *Compare United States v. Gama-Hernandez*, 739 F. App'x 592, 593 (11th Cir. 2018) (upholding waiver in plea agreement stating: "Defendant voluntarily and expressly waives the right to appeal his conviction and sentence....").

50

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

after the regulatory definition that applied in 2013 was struck down, or to waive any defense of any kind to a third-party citizen suit.

## B. Sea Island Never Agreed Not to Contest Jurisdiction in Defense of Citizens Suits

Landowners accepting a nationwide permit do so with the understanding they will not be subject to potential "enforcement" by citizen plaintiffs. This expectation is based on the fact that the CWA "does not provide citizens the right to sue to enforce the conditions of [Section 404] permits." *Atchafalaya Basinkeeper v. Chustz*, 682 F.3d 356, 360 (5th Cir. 2012). Thus, only the EPA and the Corps can enforce the terms of a Section 404 permit.

Given this statutory context, there is no basis to assume that Sea Island intended to "voluntarily relinquish" any right relevant to its defense of third-party citizen suits by agreeing to accept a nationwide permit from the Corps. And, as strangers to the agreement, Appellants have no right to "enforce" any aspect of Sea Island's decision to acquiesce to the terms of the nationwide permit. *See Lawson v. Life of the S. Ins. Co.*, 648 F.3d 1166, 1167 (11th Cir. 2011) ("[O]ne who is not a party to an agreement cannot enforce its terms against one who is a party."); *Interface Kanner, LLC v. JPMorgan Chase Bank, N.A.*, 704 F.3d 927,

932–33 (11th Cir. 2013) (same); *c.f. United States v. FMC Corp.*, 531 F.3d 813, 820 (9th Cir. 2008) (incidental third-party beneficiaries cannot enforce consent decrees).

That Appellants cannot leverage the Preliminary JD into a waiver opening the door to citizen suits otherwise precluded is especially clear when one considers the law regarding Approved JDs, the legally binding form of a jurisdictional determination. In *Hawkes*, the Supreme Court explained that Approved JDs do not bind third parties, and, thus, landowners receiving an Approved JD "may still face a citizen suit" for impacting wetlands the Corps determined to be outside the Act's reach. 578 U.S. at 598–99. It would be wrong to allow jurisdictional determinations to be weaponized by citizen-plaintiffs who are not themselves bound by their terms.

## C.  Sea Island Did Not Agree to "Waive" Future Decisions Correcting the Corps' Interpretation of the CWA and Invalidating the Corps' Over-Broad Regulations

As mentioned above, the Corps never made any determination that "waters of the United States" were present on Sea Island's property. Because this jurisdictional element has never been proved or conceded — and because Sea Island never promised Appellants it would forego any

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

defense — jurisdiction is an open question Appellants must prove. Nothing in Sea Island's course of conduct relating to the Preliminary JD shows that Sea Island "intentionally relinquished" its right to contest jurisdiction in this context.

But even if Sea Island *had* conceded jurisdiction, the Eleventh Circuit has held that it would be "manifestly unjust" to enforce implied waivers based on vacated laws. *United States v. McAllister*, 77 F.3d 387, 389 (11th Cir. 1996). For example, in *United States v. McAllister*, this Court agreed to hear a constitutional challenge the defendant-appellant failed to raise at trial. *Id.* In deciding to address the issue, this Court noted that the defendants' challenge would have been futile under controlling precedent as it existed at the time of trial, which was subsequently changed by a Supreme Court decision. Under those circumstances, this Court held it would be "manifestly unjust to refuse to allow [the defendant-appellants'] claim because he failed to raise it in the district court when doing so would have served no purpose." *Id.* at 389.

The same is true here. Sea Island could have wasted time and money — its own and the government's — by filing futile appeals, but the outcome was predetermined based on controlling precedent. No rational

actor would pursue such a course.[12] Sea Island should not be punished for acting rationally, and this Court should be loathe to encourage frivolous appeals by accepting Appellants arguments.

## D.    There Is No Basis for Estoppel

Appellants also suggest without authority that Sea Island should be "estopped" from asserting a jurisdictional defense based on *Sackett*. To the extent estoppel is distinct from implied waiver, addressed above, Appellants waived it by failing to raise it before the district court. Nor is their use of the word, standing alone and without any citation to authority, sufficient to raise it here. *See, e.g.*, *Sapuppo*, 739 F.3d at 681 ("We have long held that an appellant abandons a claim when he either

---

[12] Appellants point to the fact that the Sacketts "challenge[d] the wetland determination" to imply it would have been reasonable for Sea Island to do so too. ECF 19 at 19, 30–31. But *Sackett* itself gives the lie to any such claim. As the Supreme Court explained, the Sacketts found themselves in exactly the nightmare Sea Island sought to avoid — one in which they proceeded without a permit and were subjected to aggressive enforcement by the agency, which "demanded [they] immediately undertake activities to restore [their property] pursuant to a 'Restoration Work Plan' that it provided" and "threatened [them] with penalties of over $40,000 per day if they did not comply." *Sackett*, 598 U.S. at 662 (quotations omitted). They then "spent well over a decade navigating the CWA," and did not receive a decision from the Supreme Court holding their property was not jurisdictional for almost 20 years. *Id.* at 661. This is not a reasonable course to require landowners to follow.

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority.") (collecting cases).

But, in any event, no grounds for estoppel exist. The traditional elements of estoppel are: "(1) words, acts, conduct or acquiescence causing another to believe in the existence of a certain state of things; (2) willfulness or negligence with regard to the acts, conduct or acquiescence; and (3) detrimental reliance by the other party upon the state of things so indicated." *See, e.g.*, *Bokum v. Comm'r*, 992 F.2d 1136, 1141 (11th Cir. 1993) (quotations omitted). Whatever the argument regarding Sea Island's conduct, Appellants have not and cannot allege Sea Island was negligent in its interpretation of controlling precedent as it existed when it accepted the nationwide permit. They cannot claim detrimental reliance. And there is nothing inconsistent with Sea Island's accepting a Preliminary JD, stating jurisdictional wetlands "may be present" on its property, and later contesting that such wetlands were actually present after *Sackett* in a suit by third parties.

Furthermore, "[t]he purpose of estoppel is to promote equity and justice …." *Gen. Am. Life Ins. Co. v. AmSouth Bank*, 100 F.3d 893, 899 (11th Cir. 1996). Rather than promoting justice, applying estoppel here

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

would undermine it by perpetuating the government's overreach and forever enshrining an obviously incorrect interpretation of the CWA.

Simply put, Sea Island did not waive its right to contest jurisdiction in this citizen-suit by accepting a Preliminary JD from the Corps that applied then-existing law. And there is no world in which it is equitable for Sea Island to be subjected to ongoing litigation, potentially "crushing" civil penalties, and exorbitant claims for attorneys' fees — all for filling a small, isolated wetland on its own property that could only be jurisdictional under a "boundless" test the Supreme Court has now rejected.

## III.  *Sackett* **Eliminates Jurisdiction and Moots Any Controversy**

Finally, although the District Court did not address this point, *Sackett* also eliminates federal subject matter jurisdiction over the specific claims alleged in Appellants' Amended Complaint. CWA jurisdiction for citizen-suits exists only for "continuing" violations. *Gwaltney of Smithfield, Ltd.*, 484 U.S. at 64. The allegedly illegal fill occurred a decade ago. While some courts have held that jurisdiction can be established by alleging that unlawful fill continues to be present in "waters of the United States," jurisdiction under that theory evaporated

56

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

when *Sackett* clarified that "waters of the United States" excludes Sea Island's property.

The Supreme Court's "construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction." *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 312–13 (1994). In other words, when the Court "construes a statute, it is explaining its understanding of what the statute has meant continuously since the date when it became law." *Id.* at 313 n.12.

Because the text of the CWA has not changed, *Sackett* establishes the wetland on Sea Island's land is not now and never was jurisdictional under it. Thus, it is no longer possible to allege in good faith that fill is present in "waters of the United States" or that subject matter jurisdiction existed when the case was filed. *See Atl. States Legal Found., Inc. v. Tyson Foods, Inc.*, 897 F.2d 1128, 1131 n.6 (11th Cir. 1990) ("*Gwaltney* held that in order to invoke jurisdiction under § 505 of the Clean Water Act [33 U.S.C. § 1365]" a citizen-plaintiff must "'allege a state of either continuous or intermittent violation'" (quoting *Gwaltney*, 484 U.S. at 57)). Because subject matter jurisdiction cannot be

57

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

established by waiver, and the wetlands are not now and never were jurisdictional under current law, the Court lacks jurisdiction over Appellants' claims.

The case is also moot. "'A case is moot when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *Fla. Ass'n of Rehab. Facilities v. Fla. Dep't of Health & Rehab. Servs.*, 225 F.3d 1208, 1216–17 (11th Cir. 2000) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)). This occurs when a case "'no longer presents a live controversy with respect to which the court can give meaningful relief.'" *Id.* at 1217 (quoting *Ethredge v. Hail*, 996 F.2d 1173, 1175 (11th Cir. 1993)). Further, because mootness is jurisdictional and "[a]ny decision on the merits of a moot case or issue would be an impermissible advisory opinion," *id.*, "the court involved must dismiss [a] suit for want of jurisdiction" if it "becomes moot at any time during the trial or appellate process," *Carr v. Saucier*, 582 F.2d 14, 15 (5th Cir. 1978).

Here, after *Sackett*, there is no longer any continuing violation to be corrected, any "effluent standard or limitation" to be enforced, or any "waters of the United States" to be restored. There is accordingly neither

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

a live controversy nor meaningful relief that can be granted. The case must be dismissed.

## CONCLUSION

This Court should affirm the District Court's dismissal of Appellants' complaint.

Respectfully submitted on July 17, 2024.

*/s/James B. Durham*
James B. Durham
Matthew B. Balcer
HALL BOOTH SMITH, P.C.
3528 Darien Highway
Suite 300
Brunswick, GA 31525
912-554-0093
jdurham@hallboothsmith.com
mbalcer@hallboothsmith.com

*/s/John L. Fortuna*
John L. Fortuna
*/s/Lewis B. Jones*
Lewis B. Jones
JONES FORTUNA LP
111-A New Street
Decatur, GA 30030
(404) 282-4725
ljones@jonesfortuna.com
jfortuna@jonesfortuna.com

Austin Atkinson
HALL BOOTH SMITH, P.C.
191 Peachtree Street NE
Suite 2900
Atlanta, GA 30303
404-954-5000
aatkinson@hallboothsmith.com

*Counsel for Appellee Sea Island Acquisition, LLC*

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

## CERTIFICATE OF COMPLIANCE

In accordance with Federal Rule of Appellate Procedure 32(g), counsel certifies that this brief complies with Federal Rule of Appellate Procedure 32(a)(5) because it is written in 14-point Century Schoolbook and Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 12,028 words.

## CERTIFICATE OF SERVICE

I certify that on July 17, 2024, I filed the foregoing Brief of Appellee Sea Island Acquisition, LLC with the Clerk of Court using the Court's CM/ECF system. All registered CM/ECF users will be served by the Court's CM/ECF system.

*/s/ James B. Durham*

*Counsel for Appellee Sea Island Acquisition, LLC*