_____

No. 24-10710
_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT
_____

THE GLYNN ENVIRONMENTAL COALITION, INC., ET AL.

Plaintiffs - Appellants,

v.

SEA ISLAND AQUISITION, LLC,

Defendant - Appellee.
_____

On Appeal from the United States District Court
for the Southern District of Georgia, Brunswick Division
No. 2:19-cv-00050-JRH-BWC
_____

**BRIEF AMICUS CURIAE OF
PACIFIC LEGAL FOUNDATION IN SUPPORT OF
DEFENDANT-APPELLEE URGING AFFIRMANCE**
_____

SEAN J. RADOMSKI
Pacific Legal Foundation
3100 Clarendon Blvd., Suite 1000
Arlington, Virginia 22201
Telephone: (202) 888-6881
SRadomski@pacificlegal.org

*Counsel for Amicus Curiae Pacific Legal Foundation*

No. 24-10710

*The Glynn Env't Coal., Inc., et al. v. Sea Island Acquisition, LLC*

<u>CERTIFICATE OF INTERESTED PERSONS
AND CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 26.1, Amicus Curiae Pacific Legal Foundation certifies that it has no parent corporation and there is no publicly held corporation that owns 10% or more of its stock. Pursuant to Eleventh Circuit Rule 26.1-1, Amicus Curiae Pacific Legal Foundation certifies that Pacific Legal Foundation and its attorney Sean Radomski have an interest in the outcome of this case or appeal. Otherwise, to the best of its knowledge, the certificates of interested persons filed by Appellants and Appellee, *see* Doc. 8, Doc. 17, and contained in the Appellants' and Appellee's briefs are complete. *See* Doc. 19 at 2–5, Doc. 26 at 3–5.

/s/ Sean J. Radomski
SEAN J. RADOMSKI
*Counsel for Amicus Curiae*
*Pacific Legal Foundation*

# TABLE OF CONTENTS

**Page(s)**

CERTIFICATE OF INTERESTED PERSONS
AND CORPORATE DISCLOSURE STATEMENT ................................... C-1 of 1

TABLE OF AUTHORITIES ................................................................. ii

STATEMENT OF THE ISSUE .................................................................. 1

IDENTITY AND INTEREST OF AMICUS CURIAE ............................................ 1

SUMMARY OF THE ARGUMENT .......................................................... 3

ARGUMENT ................................................................................... 5

I. This Court Should Affirm Because the Amended Complaint
   Does Not Plausibly Allege That the Subject Wetland Is
   Among the "Waters of the United States" Under the
   Clean Water Act and *Sackett* .................................................... 5

   A. Legal Background Regarding the Jurisdictional Scope
      of the CWA ........................................................................ 5

   B. This Court Can Grant a Motion to Dismiss in a CWA Case ............................ 9

   C. The Amended Complaint Failed to Plausibly Allege That
      the Subject Wetland Is "Indistinguishable" from Dunbar Creek ................... 12

II. Affirming Will Ensure Litigants and Federal Agencies
    Do Not Undermine *Sackett*, Which Is What Occurred Following
    Previous Supreme Court CWA Decisions ........................................... 20

CONCLUSION .................................................................................. 22

CERTIFICATE OF COMPLIANCE ........................................................... 23

CERTIFICATE OF SERVICE ................................................................. 24

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...............................................................11–13, 18

*Avoyelles Sportsmen's League, Inc. v. Marsh*,
  715 F.2d 897 (5th Cir. 1983) .................................................9

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...............................................................11

*Flint Riverkeeper, Inc. v. Southern Mills, Inc.*,
  261 F. Supp. 3d 1345 (M.D. Ga. 2017) ............................10

*Grossman v. Nationsbank, N.A.*,
  225 F.3d 1228 (11th Cir. 2000) .........................................17

*Gundy v. United States*,
  588 U.S. 128 (2019)...............................................................2

*Johnson v. 3M*,
  563 F. Supp. 3d 1253 (N.D. Ga. 2021)..........................9–10

*Johnson v. 3M Co.*,
  55 F.4th 1304 (11th Cir. 2022) .........................................10

*Kisor v. Wilkie*,
  588 U.S. 558 (2019)...............................................................2

*Lewis v. United States*,
  88 F.4th 1073 (5th Cir. 2023) .............................................8

*Lucia v. SEC*,
  585 U.S. 237 (2018)...............................................................2

*Nat'l Pork Prods. Council v. Ross*,
  598 U.S. 356 (2023)...............................................................11

*Parker v. Scrap Metal Processors, Inc.*,
   386 F.3d 993 (11th Cir. 2004) ...............................................................12

*Rapanos v. United States*,
   547 U.S. 715 (2006)................................................................2, 5–8, 21

*Sackett v. EPA*,
   566 U.S. 120 (2012)...........................................................................2

*Sackett v. EPA*,
   598 U.S. 651 (2023)..............................................2–5, 7–11, 13–21

*Seila Law LLC v. CFPB*,
   591 U.S. 197 (2020)...........................................................................2

*Solid Waste Agency of N. Cook Cnty. v. U.S. Army Corps of Eng'rs*,
   531 U.S. 159 (2001)..........................................................................20

*Turner v. Williams*,
   65 F.4th 564 (11th Cir. 2023) .......................................................16–17

*U.S. Army Corps of Eng'rs v. Hawkes Co.*,
   578 U.S. 590 (2016)............................................................................2

*United States v. Riverside Bayview Homes, Inc.*,
   474 U.S. 121 (1985)..........................................................................20

*United States v. Robison*,
   505 F.3d 1208 (11th Cir. 2007) .......................................................7–9

*Woods Knoll, LLC v. City of Lincoln*,
   548 F. App'x 577 (11th Cir. 2013) ...................................................12

## Statutes

5 U.S.C. §§ 551–559...........................................................................2, 9

33 U.S.C. §§ 1251–1388...................................... 1–6, 8–10, 12, 18–20

33 U.S.C. § 1311(a) .............................................................................5

33 U.S.C. § 1362(7) .............................................................................5

33 U.S.C. § 1362(8) .............................................................................5

33 U.S.C. § 1362(12) ....................................................................................5

## Rules

Fed. R. App. P. 29(a) ...................................................................................1

Fed. R. Civ. P. 8(a)(2) ............................................................................9, 11

Fed. R. Civ. P. 12(b)(6)..........................................................................9, 17

## Other Authorities

*Definition of "Waters of the United States": Rule Status and Litigation Update*, United States Environmental Protection Agency, https://www.epa.gov/wotus/definition-waters-united-states-rule-status-and-litigation-update (last visited July 23, 2024)...................21

Webster's Second International Dictionary 2882 (2d ed. 1954) .............................6

## STATEMENT OF THE ISSUE

Whether the U.S. District Court for the Southern District of Georgia (the "District Court") correctly held that the Amended Complaint of Appellants The Glynn Environmental Coalition, Inc., Center for a Sustainable Coast, Inc., and Jane Fraser ("Appellants") failed to state a plausible claim for relief because it lacked allegations that, accepted as true, would show that the 0.49 acres of wetland allegedly filled by Appellee Sea Island Acquisition, LLC ("Sea Island") is one of the "waters of the United States" under the Clean Water Act ("CWA").

## IDENTITY AND INTEREST OF AMICUS CURIAE

Pursuant to Federal Rule of Appellate Procedure 29(a) and with the parties' consent, Pacific Legal Foundation ("PLF")[1] submits this amicus brief in support of Sea Island urging this Court to affirm the District Court's grant of Sea Island's Motion to Dismiss Appellants' Amended Complaint. Founded in 1973, PLF is a nonprofit, tax-exempt corporation organized under the laws of the state of California for the purpose of engaging in litigation in matters affecting the public interest. PLF is the most experienced public-interest legal organization advocating for private property rights and defending the constitutional principle of separation of powers in

---

[1] PLF affirms that no counsel for any party authored this brief in whole or in part, and no counsel or party made a monetary contribution intended to fund the preparation or submission of this brief. No person other than PLF, its members, or its counsel made a monetary contribution to its preparation or submission.

1

the arena of administrative law. Most relevant to this case, PLF attorneys have served as counsel for some of the Supreme Court's most recent CWA cases. *See, e.g.*, *Sackett v. EPA*, 598 U.S. 651 (2023) (application of CWA's "waters of the United States" provision to wetlands); *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590 (2016) (Army Corps' CWA-approved jurisdictional determination is final agency action under Administrative Procedure Act ("APA")); *Sackett v. EPA*, 566 U.S. 120 (2012) (plaintiffs may sue under APA to challenge EPA's CWA administrative compliance order); *Rapanos v. United States*, 547 U.S. 715 (2006) (application of CWA's "waters of the United States" provision to wetlands).

Also, its attorneys have participated as counsel for amici in several cases involving the role of the Judiciary as an independent check on the Executive and Legislative Branches under the Constitution's separation of powers. *See, e.g.*, *Seila Law LLC v. CFPB*, 591 U.S. 197 (2020) (restriction on President's ability to remove CFPB Director); *Kisor v. Wilkie*, 588 U.S. 558 (2019) (*Auer* deference); *Gundy v. United States*, 588 U.S. 128 (2019) (nondelegation doctrine); *Lucia v. SEC*, 585 U.S. 237 (2018) (SEC administrative law judge is "officer of the United States" under the Appointments Clause). PLF's advocacy for constitutional principles and broad CWA litigation experience offer the Court an important perspective that will assist it in deciding whether Appellants' Amended Complaint plausibly alleges that the wetland allegedly filled by Sea Island in this case (the "Subject Wetland") is one of

the "waters of the United States" under the CWA. This brief also provides important legal background on the Supreme Court's interpretation of the term "waters of the United States."

## SUMMARY OF THE ARGUMENT

In *Sackett v. EPA*, the Supreme Court provided clear guidance regarding which wetlands constitute "waters of the United States," holding that for wetlands to be jurisdictional, "they must be indistinguishably part of a body of water that itself constitutes 'waters' under the CWA." 598 U.S. 651, 676 (2023) (citation omitted). The wetland must have "a continuous surface connection with that water, making it difficult to determine where the 'water' ends and the 'wetland' begins." *Id.* at 678–79 (citation omitted). In so holding, the Court resolved decades of dispute regarding the CWA's jurisdictional scope and significantly narrowed the universe of covered wetlands. As the District Court correctly held, based on Appellants' allegations, *Sackett* forecloses their ability to pursue this case. Appellants, however, significantly downplay *Sackett*'s significance, largely relegating discussion of it to a footnote, *see* Doc. 19 at 19 n.2, and misapplying its holding in their limited application of the opinion. *See id.* at 29–30; *infra* pp. 18–19. Compounding their error, Appellants incorrectly identify *Sackett*'s standard, omitting any discussion on its "indistinguishability" requirement. For the following reasons, this Court should

3

affirm the District Court's holding that Appellants failed to plausibly allege that the Subject Wetland is one of the "waters of the United States."

First, Appellants are incorrect that the question of whether a water is among the "waters of the United States" must always go to the jury. Nothing in the Federal Rules of Civil Procedure, the pre-*Sackett* cases cited by Appellants, or *Sackett* prevents courts from granting motions to dismiss on this question. Indeed, Appellants ignore that *Sackett* developed a new standard that was expressly intended to give more notice to landowners regarding what waters are jurisdictional. Unlike the previously prevailing "significant nexus" test, the *Sackett* test allows for bright line determinations which are more ripe for resolution on motions to dismiss.

Second, neither the Amended Complaint nor the exhibits attached thereto (which can be considered on a motion to dismiss) allege facts that plausibly suggest that the Subject Wetland is "indistinguishable" from Dunbar Creek. The alleged facts do not plausibly establish that the Subject Wetland shares a "continuous surface connection" with Dunbar Creek. Instead, as the District Court correctly held, the Amended Complaint and photos attached thereto indicate that there is a "clear demarcation" between the two, which renders the Subject Wetland nonjurisdictional.

Third, this Court should affirm to ensure that litigants do not undermine *Sackett*. Following each of the Supreme Court's previous CWA cases interpreting the "waters of the United States" provision, the U.S. Environmental Protection

4

Agency and U.S. Army Corps of Engineers attempted to water down the Court's holdings through rulemakings and guidance. Appellants seek to pick up where the government left off. This Court should apply *Sackett* as the Supreme Court intended it to be applied and affirm the District Court's grant of Sea Island's Motion to Dismiss Appellants' Amended Complaint.

## ARGUMENT

## I. This Court Should Affirm Because the Amended Complaint Does Not Plausibly Allege That the Subject Wetland Is Among the "Waters of the United States" Under the Clean Water Act and *Sackett*

### A. Legal Background Regarding the Jurisdictional Scope of the CWA

Prior to May 2023, there was confusion regarding the jurisdictional scope of the CWA, which regulates discharges of "pollutant[s]" from "point source[s]" to "navigable waters." *See* 33 U.S.C. §§ 1311(a), 1362(12). Although the CWA defines "navigable waters" as "the waters of the United States, including the territorial seas," 33 U.S.C. § 1362(7), and defines "territorial seas," *id.* § 1362(8), it does not define "waters of the United States." Thus, courts have struggled to clarify this phrase.[2] The Supreme Court attempted to bring clarity in *Rapanos v. United States*, where it considered "whether four Michigan wetlands, which lie near ditches

---

[2] Although Appellants state that *Sackett* "clarified the definition of 'navigable waters' for petitioners challenging the CWA's jurisdiction," *see* Doc. 19 at 19, this is not technically correct. *Sackett* clarified the meaning of "waters of the United States," which is part of the CWA's definition of "navigable waters."

or man-made drains that eventually empty into traditional navigable waters, constitute 'waters of the United States.'" 547 U.S. 715, 729 (2006) (plurality). However, no opinion garnered a majority. Instead, the Court ruled for the petitioners through a four-Justice plurality, with Justice Kennedy providing the fifth vote through a concurrence in the judgment.

The plurality interpreted "waters of the United States" to "include[] only those relatively permanent, standing or continuously flowing bodies of water 'forming geographic features' that are described in ordinary parlance as 'streams, oceans, rivers, and lakes.'" *Id.* at 739 (plurality) (quoting Webster's Second International Dictionary 2882 (2d ed. 1954)) (cleaned up). This interpretation excluded "channels through which water flows intermittently or ephemerally, or channels that periodically provide drainage for rainfall." *Id.* As to wetlands, the plurality held that the CWA provides jurisdiction over "*only* those wetlands with a continuous surface connection to bodies that are 'waters of the United States' in their own right, so that there is no clear demarcation between 'waters' and wetlands . . . ." *Id.* at 742 (stating that "[w]etlands with only an intermittent, physically remote hydrologic connection to 'waters of the United States'" are not covered).

Although Justice Kennedy provided the fifth vote, he did not agree with the plurality's reasoning. Instead, he would have found jurisdiction under the CWA where "a water or wetland . . . possess[es] a 'significant nexus' to waters that are or

were navigable in fact or that could reasonably be so made." *Id.* at 759 (Kennedy, J., concurring in the judgment) (citation omitted). His "significant nexus" test was to be considered by examining multiple factors. *Id.* Following *Rapanos*, there was uncertainty regarding whether the plurality's or Justice Kennedy's opinion controlled, with the government maintaining that the significant nexus test was "sufficient to establish jurisdiction over 'adjacent' wetlands." *Sackett*, 598 U.S. at 669. And the circuits split, with some holding that jurisdiction could be shown through only the significant nexus test, and others holding that jurisdiction could be shown through either the plurality or significant nexus test. *See United States v. Robison*, 505 F.3d 1208, 1219 (11th Cir. 2007) (citations omitted) (discussing split among First, Seventh, and Ninth Circuits). In *Robison*, this Court "adopt[ed] Justice Kennedy's 'significant nexus' test as the governing definition of 'navigable waters' under *Rapanos*." *Id.* at 1222 (citations omitted). In *Sackett*, however, all nine Justices rejected Justice Kennedy's significant nexus test, producing a majority opinion that now controls and clarifies the CWA's jurisdictional scope.

The *Sackett* majority "conclude[d] that the *Rapanos* plurality was correct," and thus held that "the CWA's use of 'waters' encompasses 'only those relatively permanent, standing or continuously flowing bodies of water forming geographical features that are described in ordinary parlance as streams, oceans, rivers, and lakes.'" 598 U.S. at 671 (quoting *Rapanos*, 547 U.S. at 739 (plurality)) (cleaned up).

Regarding wetlands, *Sackett* held that "the CWA extends to only those wetlands that are 'as a practical matter indistinguishable from waters of the United States.'" *Id.* at 678 (quoting *Rapanos*, 547 U.S. at 755 (plurality)). *Sackett*'s test "requires the party asserting jurisdiction over adjacent wetlands to establish 'first, that the adjacent body of water constitutes waters of the United States, (*i.e.*, a relatively permanent body of water connected to traditional interstate navigable waters); and second, that the wetland has a continuous surface connection with that water, making it difficult to determine where the water ends and the wetland begins.'" *Id.* at 678–79 (quoting *Rapanos*, 547 U.S. at 742 (plurality)) (cleaned up). This "continuous surface connection" exists when "'there is no clear demarcation between waters and wetlands,'" "such that it is 'difficult to determine where the water ends and the wetland begins.'" *Id.* at 678 (quoting *Rapanos*, 547 U.S. at 742 (plurality)). Although only one court of appeals has applied *Sackett*'s test, it has confirmed that, "[f]rom a legal standpoint, this test significantly tightens the definition of federally regulable wetlands, as compared with the 'significant nexus' test and interim administrative regulations." *Lewis v. United States*, 88 F.4th 1073, 1078 (5th Cir. 2023); *see also Robison*, 505 F.3d at 1221 ("Notably, Justice Kennedy's test, at least in wetlands cases such as *Rapanos*, will classify a water as 'navigable' more frequently than Justice Scalia's test." (citations omitted)).

## B. This Court Can Grant a Motion to Dismiss in a CWA Case

Before explaining why the Amended Complaint fails under Rule 12(b)(6), PLF clarifies the pleading standard. Appellants essentially argue that motions to dismiss CWA claims can never succeed because the question of "whether [a wetland] qualifies as part of the waters of the United States" must always go to the jury. *See* Doc. 19 at 24. But this is incorrect, as nothing in Appellants' cited cases, *Sackett*, or the Federal Rules of Civil Procedure exempts CWA claims from the requirements of Rules 8(a)(2) and 12(b)(6). Appellants rely on this Court's *Robison* opinion to argue otherwise, but that case involved defendants' appeal of a *criminal* conviction and, thus, is wholly irrelevant to whether a complaint can be dismissed under the *civil* pleading standard. *Robison*, 505 F.3d at 1211. Nor does Appellants' citation to Fourth, Fifth, and Ninth Circuit decisions aid their argument, as all three were also criminal cases. *See* Doc. 19 at 25–26 (citations omitted). Appellants misunderstand the holding in *Avoyelles Sportsmen's League, Inc. v. Marsh*, 715 F.2d 897 (5th Cir. 1983), as that case did not involve when "wetlands" can qualify as "waters of the United States." Instead, it concerned something not at issue here: the standard for reviewing a "wetlands determination" under the APA. *Id.* at 904–07.

Further, Appellants' two pre-*Sackett* district court cases do not stand for the proposition that post-*Sackett* motions to dismiss are inappropriate on the "waters of the United States" issue. Appellants misquote *Johnson v. 3M*, as that case did not

9

state that "'[w]hether a waterbody' qualifies as 'navigable waters' under the CWA 'cannot be determined on a motion to dismiss.'" *See* Doc. 19 at 25 (alternation in original) (quoting *Johnson v. 3M*, 563 F. Supp. 3d 1253, 1295 n.10 (N.D. Ga. 2021)). Rather it stated: "Whether a waterbody satisfies *the significant nexus test* cannot be determined on a motion to dismiss." *Johnson*, 563 F. Supp. 3d at 1295 n.10 (emphasis added).[3] If courts interpreted the significant nexus test as not allowing for motions to dismiss, this is not surprising, as it was applied "based on fact-specific determinations," because "the boundary between a 'significant' and an insignificant nexus is far from clear." *Sackett*, 598 U.S. at 667, 681. One of *Sackett*'s rationales for rejecting the significant nexus test was because it "gives rise to serious vagueness concerns" and potentially violated "[d]ue process." *Id.* at 680. The Court's new test allows more "notice to landowners," *id.* at 681, and allows district courts to easily determine whether facts were pled that, accepted as true, plausibly suggest that a wetland is indistinguishable from a water.

---

[3] Although Appellants correctly note that this Court affirmed the *Johnson* district court, *see* Doc. 19 at 25, that affirmance did not concern the CWA claim and addressed only the nuisance abatement claim. *Johnson v. 3M Co.*, 55 F.4th 1304, 1312 (11th Cir. 2022). *Flint Riverkeeper, Inc. v. Southern Mills, Inc.*, 261 F. Supp. 3d 1345 (M.D. Ga. 2017), concerned a motion to certify for interlocutory appeal and was also decided in the pre-*Sackett* significant nexus era. It does not support Appellants' position, as the "Court merely held that accepting the facts alleged in the Complaint as true, Plaintiff has stated a claim under the CWA." *Id.* at 1347.

Appellants' arguments concerning the Federal Rules of Civil Procedure's application also are incorrect. Although they fault the District Court for finding that "'[n]either [the Citizens'] allegations nor [their] expert's affidavit *establish* the Subject [Wetland]' is a navigable water under *Sackett*," *see* Doc. 19 at 28 (alteration in original) (citation omitted), their arguments misconstrue the pleading standard. "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim *showing* that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (emphasis added) (quoting Fed. R. Civ. P. 8(a)(2)). Because "establish" is a synonym of "show," it was not improper for the District Court to use "establish." A complaint "shows" that a plaintiff is entitled to relief where it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also id.* at 679 ("the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief" (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))). A complaint must contain "factual allegation[s] sufficient to plausibly suggest" a claim's elements. *Id.* at 683; *see also Nat'l Pork Prods. Council v. Ross*, 598 U.S. 356, 385 (2023) (plurality) ("Petitioners must plead facts 'plausibly' suggesting a substantial harm to interstate commerce; facts that render that outcome a 'speculative' possibility are not enough." (citing *Twombly*, 550 U.S. at 555, 557)).

11

### C. The Amended Complaint Failed to Plausibly Allege That the Subject Wetland Is "Indistinguishable" from Dunbar Creek

This Court should affirm because, even accepting as true the facts alleged in the Amended Complaint and the exhibits thereto, Appellants have failed to plausibly allege that the Subject Wetland is "indistinguishable" from Dunbar Creek. The District Court properly began its analysis by separating the Amended Complaint's "legal conclusions" from factual allegations, correctly holding that Appellants' allegation that the Subject Wetland is a "'water[] of the United States' is a legal conclusion, not a factual allegation, and must be disregarded." *See* Doc. 21-3 at 242 (citation omitted). Although Appellants contend that the allegation that wetlands are "waters of the United States" is a factual allegation that must be accepted as true, *see* Doc. 19 at 27, they are incorrect. It is axiomatic that "[t]hreadbare recitals of the elements of a cause of action . . . do not suffice." *Iqbal*, 556 U.S. at 678. And that is exactly what the "waters of the United States" is: it is one of the five elements of a CWA claim. *Woods Knoll, LLC v. City of Lincoln*, 548 F. App'x 577, 580 (11th Cir. 2013) (listing elements "'that (1) there has been a discharge; (2) of a pollutant; (3) into waters of the United States; (4) from a point source; (5) without a NPDES permit'" (quoting *Parker v. Scrap Metal Processors, Inc.*, 386 F.3d 993, 1008 (11th Cir. 2004))). Appellants could not just allege in a conclusory fashion that the Subject Wetland was one of the "waters of the United States." They needed to plead facts that "plausibly suggest" the Subject Wetland is "'as a practical matter

indistinguishable from waters of the United States.'" *Sackett*, 598 U.S. at 678 (citations omitted); *Iqbal*, 556 U.S. at 683. Further, they needed to allege the Subject Wetland has "'a continuous surface connection to bodies that are waters of the United States in their own right.'" *Sackett*, 598 U.S. at 678 (citations omitted); *Iqbal*, 556 U.S. at 683. Nothing in the Amended Complaint or the "expert" affidavit attached to it indicates Appellants met this burden.[4]

Appellants are wrong that they met the plausibility standard by alleging that "Dunbar Creek is within the same basin as the Subject Wetland." *See* Doc. 21-2 at 17 ¶ 41; *see also* Doc. 19 at 28. This allegation does not satisfy *Sackett* because, at best, it indicates the Subject Wetland is near Dunbar Creek. *Sackett*, 598 U.S. at 676 (discussing how wetlands "near" covered waters do not suffice, as only those that are "contiguous" are sufficient); *see also id.* at 718 (Kavanaugh, J., concurring in judgment) (discussing how under the majority's standard wetlands must be "contiguous" or "adjoining" and not just "lying near" covered waters). Thus, the District Court correctly found this allegation to be insufficient. *See* Doc. 21-3 at 242.

---

[4] At times, the District Court framed the question as whether the Subject Wetland was a wetland under *Sackett*. *See, e.g.*, Doc. 21-3 at 237–40. To be clear, the question under *Sackett* is not whether an alleged wetland is a wetland. Rather, it is whether a wetland is one of the "waters of the United States." *Sackett*, 598 U.S. at 676 (To be jurisdictional, "wetlands must qualify as 'waters of the United States' in their own right."). Although the District Court, at times, mis-framed this question, it otherwise properly applied *Sackett* to hold the Subject Wetland was nonjurisdictional because "the amended complaint does not sufficiently allege the Subject [Wetland] is" one of the "'waters of the United States.'" *See* Doc. 21-3 at 245 (citations omitted).

Nor do any of the averments in the Affidavit of Matthew Schweisberg plausibly suggest indistinguishability. He asserts that "[e]ach time it rains," this creates "surface runoff and ground water," which "eventually enter[s] the adjacent wetlands (salt marsh) to the west of the Subject Wetland." *See* Doc. 21-2 at 203 ¶ 6(f). This allegation is insufficient for three reasons. First, because this allegation indicates that "surface runoff" travels from the Subject Wetland to the salt marsh *only* when there is rain, it cannot be said that any "surface connection" is "continuous." Second, any groundwater connection is irrelevant, as only a connection of water on the surface constitutes a "continuous surface connection." *See* Doc. 21-3 at 243 (emphasizing that the alleged connection must be a surface connection). Third, any connection between the Subject Wetland and the salt marsh is irrelevant. For wetlands to be jurisdictional, they must have a "continuous surface connection" with a "relatively permanent body of water connected to traditional interstate navigable waters." *Sackett*, 598 U.S. at 678. *Sackett* does not allow for jurisdiction when a wetland is connected to another wetland or salt marsh.

Also irrelevant is the allegation that, "[b]ecause the salt marsh is tidal, each time tidal flooding occurs" in Dunbar Creek, these flood waters enter the salt marsh and then "flow[] back into Dunbar Creek." *See* Doc. 21-2 at 203 ¶ 6(f). At best, this allegation plausibly suggests there is some connection between the salt marsh and

14

Dunbar Creek. It does not plausibly suggest that there is a continuous surface connection between the Subject Wetland and Dunbar Creek. *See* Doc. 21-3 at 244.

Equally insufficient is the allegation that "[t]here is a direct connection between the Subject Wetland and the adjacent salt marsh via culverts and pipes." *See* Doc. 21-2 at 204 ¶ 6(g). As already discussed, *see supra* p. 14, the only connection that could create jurisdiction is a connection between the Subject Wetland and Dunbar Creek, not the wetland and salt marsh. Further, any connection "via culverts and pipes" defeats jurisdiction because these culverts and pipes represent a "clear demarcation between" the Subject Wetland and salt marsh. *Sackett*, 598 U.S. at 678. Thus, it cannot be said "that it is 'difficult to determine where the water ends and the wetland begins.'" *Id.* (citation omitted); *see also* Doc. 21-3 at 243.

Nor does the allegation suffice that "[p]rior tidal exchange between Dunbar Creek and the Subject Wetland, before it was filled, would have supplied nutrients to the salt marsh and Dunbar Creek." *See* Doc. 21-2 at 204 ¶ 6(i). This vague allegation merely shows that, at some unidentified point, there was "tidal exchange" between Dunbar Creek and the Subject Wetland. But again, even accepting it as true, this allegation does not show that there was a "continuous surface connection." It bears noting that this and other allegations appear aimed at satisfying the now-rejected "significant nexus" test. For instance, Appellants argue they "pleaded—and

included extensive documentation—facts showing the Subject Wetland had a 'High Water Table' and surface 'Saturation' along with hydric soil and hydrophytic vegetation." *See* Doc. 19 at 28 (citing Doc. 21-2 at 132, 172). But such "open-ended factors" "based on ecological importance" are inapplicable to the "waters of the United States" analysis. *Sackett*, 598 U.S. at 681, 683.

Further, Appellants rely on this "extensive documentation" at their own peril. The documentation they reference is a Wetlands Determination Data Form, which they correctly note indicates that the Subject Wetland has a high water table and saturation. *See* Doc. 19 at 28 (citing Doc. 21-2 at 172). What they fail to bring to the Court's attention, however, is that this document indicates that the Subject Wetland *lacks surface water*. *See* Doc. 21-2 at 172. Because they attached this to their Amended Complaint, the Court can consider it. *Turner v. Williams*, 65 F.4th 564, 583 n.27 (11th Cir. 2023). Most critically, "[i]f an exhibit attached to a complaint contradicts the allegations about the exhibit set forth in the complaint itself, the exhibit controls." *Id.* (citation omitted). Thus, this exhibit's indication that the Subject Wetland lacks surface water all but disposes of this case. If a wetland lacks surface water, this precludes the presence of a continuous surface connection between a wetland and covered water.

Nor is there anything improper about the District Court considering images Appellants attached to their Amended Complaint. *See* Doc. 19 at 26, 29. Relying on

Circuit precedent, the District Court correctly noted that it could "consider these images because Plaintiffs have attached them to the amended complaint." *See* Doc. 21-3 at 243 n.2 (citing *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000)); *see also Turner*, 65 F.4th at 583 n.27. Thus, the District Court's consideration of these images did not constitute improper "independent findings of fact." *See* Doc. 19 at 29. Rather, it was another proper application of the Rule 12(b)(6) standard.

As the District Court correctly noted, these images indicate that "Dunbar Creek is hundreds of feet away from the Subject [Wetland]" and "show there is a 'clear demarcation' between the Subject [Wetland] and Dunbar Creek," *see* Doc. 21-3 at 243 (citing Doc. 21-2 at 49, 68, 131, 134, 178, 182, 188, 192), which means the Subject Wetland is nonjurisdictional. *Sackett*, 598 U.S. at 678 (holding there must be "'no clear demarcation between waters and wetlands'" (citation omitted)). This "clear demarcation" consists of "a salt marsh; upland; the road leading from Sea Island Road to Defendant's hotel; a median; the road from Defendant's hotel to Sea Island Road; and, finally, the Subject [Wetland]." Doc. 21-3 at 243 (citations omitted). Tellingly, Appellants don't dispute the District Court's interpretation of what these images show; they just believe that their consideration was improper.[5]

---

[5] Although Appellants allege that Sea Island made misrepresentations to the Corps, these allegations of fraud pertain solely to the representation that Sea Island intended

Nothing required Appellants to attach these images to their Amended Complaint. But, having done so, they cannot now run from what the images reveal, as "common sense," which "the reviewing court [is] to draw on," *Iqbal*, 556 U.S. at 679, indicates that there is a clear demarcation between Dunbar Creek and the Subject Wetland. Thus, dismissal with prejudice was appropriate because no repleading could alter what these images reveal.

In a final attempt to circumvent *Sackett*, Appellants argue that even though a road (Salt Marsh Drive) undisputedly separates the Subject Wetland from Dunbar Creek, this road's existence supports their case. *See* Doc. 19 at 29–30. Their argument relies on a misreading of *Sackett*. In *Sackett*, the Court held that "a barrier separating a wetland from a water of the United States would ordinarily remove that wetland from federal jurisdiction." *Sackett*, 598 U.S. at 678 n.16. The Court clarified, however, that "a landowner cannot carve out wetlands from federal jurisdiction by illegally constructing a barrier on wetlands otherwise covered by the CWA." *Id.* The exception to *Sackett*'s general rule contemplates a scenario where a continuous surface connection of water exists connecting a wetland to a water of the United States and the landowner fills part of the wetland to create a road, thus

_____

to fill the Subject Wetland to construct a commercial structure as opposed to landscaping the Subject Wetland. *See, e.g.*, Doc. 21-2 at 38–39 ¶¶ 174–81. There is no allegation that the images and what they depict, or the contents of other Amended Complaint exhibits relevant to the jurisdictional determination, are fraudulent.

destroying the aquatic connection. If the landowner does this, he cannot then fill the rest of the wetland and argue that it was nonjurisdictional because the aquatic connection was severed. In such a scenario, the landowner would violate the CWA by (1) filling the wetland to create the road, and (2) filling the remainer of the wetland.

Such a scenario, however, is not what Appellants allege occurred. They do not allege Sea Island filled the Subject Wetland to create the road. Instead, Appellants allege that "Sea Island landscaped the Subject Wetland with permanent sodding." *See* Doc. 21-2 at 31 ¶ 121. Therefore, Appellants have not alleged facts satisfying the narrow *Sackett* exception for the "illegal[] constructi[on of] a barrier on wetlands otherwise covered by the CWA." *Sackett*, 598 U.S. at 678 n.16. The road here defeats jurisdiction, as it did for the Sacketts. *Sackett*, 598 U.S. at 662 (holding wetlands on the Sacketts' property were nonjurisdictional because they were "on the other side of a 30-foot road" from the alleged "'unnamed tributary'"). Moreover, even if the road's existence somehow favored them, Appellants still ignore that an upland, among other things, separates the Subject Wetland from Dunbar Creek, which defeats jurisdiction. *See* Doc. 21-3 at 243 (citations omitted).

For this additional reason, the District Court did not err in granting the motion to dismiss.

## II. Affirming Will Ensure Litigants and Federal Agencies Do Not Undermine *Sackett*, Which Is What Occurred Following Previous Supreme Court CWA Decisions

Appellants' pursuit of this appeal represents a frustrating but (unfortunately) unsurprising development regarding application of the CWA's jurisdictional scope. In *Sackett*, the Court recounted how, following each CWA Supreme Court opinion, the Corps and EPA attempted to flout the Court's limiting construction of the term "waters of the United States." *See Sackett*, 598 U.S. at 665–69. This first occurred following *United States v. Riverside Bayview Homes, Inc.*, where the Court deferred to the Corps and found jurisdiction over wetlands that were "inseparably bound up with the 'waters' of the United States." 474 U.S. 121, 134 (1985); *see also id.* at 135 (stating the wetland "actually abuts on a navigable waterway"). The next year, "[t]he agencies responded to *Riverside Bayview* by expanding their interpretations" and "issued the 'migratory bird rule,'" *Sackett*, 598 U.S. at 665, which "interpret[ed] the CWA to cover nonnavigable, isolated, intrastate waters." *Solid Waste Agency of N. Cook Cnty. v. U.S. Army Corps of Eng'rs*, 531 U.S. 159, 165–66 (2001) ("*SWANCC*"). In *SWANCC*, the Court invalidated this rule because Congress's use of the term "navigable" in "navigable waters" indicated Congress intended the CWA to cover Congress's "traditional jurisdiction over waters that were or had been navigable in fact or which could reasonably be so made." *Id.* at 172 (citation omitted).

"Days after [this] decision, the agencies issued guidance that sought to minimize *SWANCC*'s impact," leading to "a system of 'vague' rules that depended on 'locally developed practices.'" *Sackett*, 598 U.S. at 666 (citation omitted). "[A]gainst this backdrop" the Court "granted review in *Rapanos v. United States*," *id.*, where the plurality first held that wetlands are regulable only where they are "as a practical matter *indistinguishable* from waters of the United States." *Rapanos*, 547 U.S. at 755. Not taking the hint, "the agencies . . . engaged in a flurry of rulemaking," and "offered a muscular approach that would subject 'the vast majority of the nation's water features,' to a case-by-case jurisdictional analysis." *Sackett*, 598 U.S. at 668 (citation omitted). Although *Sackett* rejected this approach, *id.* at 679–83, the agencies have since responded with another rule, which is currently enjoined in twenty-seven States, including those comprising the Eleventh Circuit. *See Definition of "Waters of the United States": Rule Status and Litigation Update*, United States Environmental Protection Agency, https://www.epa.gov/wotus/definition-waters-united-states-rule-status-and-litigation-update (last visited July 23, 2024).

This Court should not let private citizens aid and abet administrative overreach. It is time for litigants and lower courts to respect *Sackett*, and the District Court's opinion is a step in this direction. This Court should make the District Court's sound reasoning the law of this Circuit and affirm.

## CONCLUSION

For these reasons, this Court should affirm the District Court's grant of Appellee Sea Island Acquisition, LLC's Motion to Dismiss Appellants' Amended Complaint.

DATED: July 24, 2024

Respectfully submitted,

/s/ Sean J. Radomski
SEAN J. RADOMSKI
Pacific Legal Foundation
1000 Clarendon Blvd., Suite 1000
Arlington, VA 22201
Telephone: (202) 807-4929
SRadomski@pacificlegal.org

*Counsel for Amicus Curiae Pacific Legal Foundation*

## CERTIFICATE OF COMPLIANCE

Certificate of Compliance With Type-Volume Limit,
Typeface Requirements, and Type-Style Requirements

1.  This document complies with the word limit of Fed. R. App. P. 29(5) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

    **X**    this document contains 5,257 words, or

    this brief uses a monospaced typeface and contains [state the number of] lines of text.

2.  This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because:

    **X**    this document has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in 14 pt. Times New Roman.

DATED: July 24, 2024.

By /s/ Sean J. Radomski
SEAN J. RADOMSKI
*Counsel for Amicus Curiae*
*Pacific Legal Foundation*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 24, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ Sean J. Radomski
Sean J. Radomski
*Counsel for Amicus Curiae*
*Pacific Legal Foundation*