No. 24-10710-G

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

---

THE GLYNN ENVIRONMENTAL COALITION, INC., et al.,

*Plaintiff-Appellants*,

v.

SEA ISLAND ACQUISITION, LLC

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA, BRUNSWICK DIVISION
Civil Action No: 2:19-CV-00050-JRH-BWC

---

## SUPPLEMENTAL BRIEF FOR THE APPELLANT CITIZENS

---

John A. Brunini
Laura D. Heusel
BUTLER SNOW LLP
1020 Highland Colony Pkwy., Suite 1400
Ridgeland, MS 39157
Telephone: (601) 985-4447
john.brunini@butlersnow.com
Telephone: (601) 985-4520
laura.heusel@butlersnow.com

E. Righton J. Lewis
BUTLER SNOW LLP
1170 Peachtree St. NE, Suite 1900
Atlanta, Georgia 30309
Telephone: (678) 515-5064
righton.lewis@butlersnow.com

Adam M. Langley
BUTLER SNOW LLP
6075 Poplar Ave., Suite 500
Memphis, TN 38119
Telephone: (901) 680-7200
adam.langley@butlersnow.com

*Counsel for Appellants The Glynn Environmental Coalition, Inc., Center for a Sustainable Coast, Inc., and Jane Fraser*

## <u>CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT</u>

Under Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1 and 28-1(b), counsel for The Glynn Environmental Coalition, Inc., Center for a Sustainable Coast, Inc., and Jane Fraser, individually and in her capacity as a member of The Glynn Environmental Coalition, Inc., Center for a Sustainable Coast, Inc., states that the following individuals have an interest in the outcome of this case or appeal:

1.    Anderson, J. Yates - Vice President, Development and Services, Sea Island Acquisition, LLC

2.    Bailey, Alan – President, Center for a Sustainable Coast

3.    Balcer, Matthew B. – Counsel for Defendant/Appellee

4.    Brison-Kitts, Bonyetta – Vice President, The Glynn Environmental Coalition, Inc.

5.    Brunini, John - Counsel for Plaintiffs/Appellants

6.    Butler Snow LLP - Counsel for Plaintiffs/Appellees

7.    Carpenter, Scott - Vice President, Sea Island Acquisition, LLC

8.    Center for a Sustainable Coast, Inc. - Plaintiff/Appellant

9.    Cheesbro, Benjamin W. - United States Magistrate Judge

10.    DiStanislao, Phillip Thomas – Former Counsel for Appellants

11.    Durham, James B. - Counsel for Defendant/Appellee

12.    Fraser, Jane - Plaintiff/Appellant

13.    Frazier, Sam – Board Member, The Glynn Environmental Coalition, Inc.

14.    Furnish, David J. - Vice President, Sales and Marketing, Sea Island Acquisition, LLC

15.    Glenn, J. Lewis - Vice President, Real Estate, Sea Island Acquisition, LLC

16.    Goering, Kent - Secretary, The Glynn Environmental Coalition, Inc.

17.    Hall, J. Randal - Chief Judge, United States District Court for the Southern District of Georgia

18.    Heusel, Laura - Counsel for Plaintiffs/Appellants

19.    Hickey, Clifford - Vice President and Assistant Secretary, Sea Island Acquisition, LLC

20.    Hurley, Dorset - Vice President, Center for a Sustainable Coast, Inc.

21.    Kyler, David - Executive Director, Center for a Sustainable Coast, Inc.

22.    Langley, Adam - Counsel for Plaintiffs/Appellants

23.    Lewis, Righton - Counsel for Plaintiffs/Appellants

24.    McHugh, William - Vice President and General Counsel, Sea Island Acquisition, LLC

25. Pierson, Gary - Chairman, Sea Island Acquisition, LLC

26. Pitts, J. Dillon – Counsel for Appellants

27. Roberts, Ron - Chief Financial Officer and Secretary, Sea Island Acquisition, LLC

28. Robinson, Tony - President, The Glynn Environmental Coalition, Inc.

29. Schweisberg, Matt - Expert for Plaintiffs/Appellants

30. Sea Island Acquisition, LLC - Defendant/Appellee

31. Sea Island Resort Holdings, LLC - Managing Member

32. Singh, Vijay P. - Vice President, Operations, Sea Island Acquisition, LLC

33. Steilen, Scott - President and Chief Executive Officer, Sea Island Acquisition, LLC

34. Strother, Frankie W. - Vice President, Membership and Activities, Sea Island Acquisition, LLC

35. The Glynn Environmental Coalition, Inc. - Plaintiff/Appellant

36. Thompson, Rachael - Executive Director, The Glynn Environmental Coalition, Inc.

37. Vaughan, Parra E. - Vice President, Chief Marketing Officer, Sea Island Acquisition, LLC

38.     Wainwright, Helen A. - Vice President, Human Resources, Sea Island

Acquisition, LLC

39.     Willis, Steve – Board Member, Center for a Sustainable Coast, Inc.

No publicly traded company or corporation has an interest in the outcome of

the case or appeal.

## **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT ...................................................................1

TABLE OF AUTHORITIES .................................................................... ii

    A.   Citizens may file suit to enforce Section 404 of the Clean Water Act. .........1

    B.   *Atchafalaya* is inapposite because it addressed technical challenges to a
       permit – not the categorical challenge here....................................................5

    C.   The supplemental question is not dispositive of the case. ............................7

CONCLUSION ........................................................................................9

CERTIFICATE OF COMPLIANCE .......................................................11

CERTIFICATE OF SERVICE ...............................................................12

i

# <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*Atchafalaya Basinkeeper v. Chustz*,
  682 F.3d 356 (5th Cir. 2012) .......................................................... passim

*Black Warrior Riverkeeper, Inc. v. Black Warrior Minerals, Inc.*,
  734 F.3d 1297 (11th Cir. 2013) .................................................... 2, 3, 4

*Coeur Alaska, Inc. v. Se. Alaska Conservation Council*,
  557 U.S. 261 (2009) ...................................................................... 1, 2, 3

*Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*,
  484 U.S. 49 (1987) ....................................................................... 4

*Nat. Res. Def. Council, Inc. v. Train*,
  396 F. Supp. 1393 (D.D.C. 1975) ................................................. 3

*Nat'l Ass'n of Home Builders v. U.S. Army Corps of Engineers*,
  453 F. Supp. 2d 116 (D.D.C. 2006) .............................................. 6

*United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*,
  484 U.S. 365 (1988) ..................................................................... 2

**Statutes**

33 U.S.C. § 1344 ...............................................................................1

33 U.S.C. § 1344(p) ..........................................................................1

33 U.S.C. § 1365 ...............................................................................1

33 U.S.C § 1342(k) ...........................................................................2

**Regulations**

33 C.F.R. § 330.4 ..............................................................................6

**Other Authorities**

H.R. Rep. No. 92-911, 92d Cong., 2d Sess. 100 (1972) ............................3

S. Conf. Rep. No. 92-1236, p. 142 (1972 ) *reprinted at* 1972 U.S.C.C.A.N. 3776,
  3819 ...............................................................................................3, 4

The Glynn Environmental Coalition, Inc, Center for a Sustainable Coast, Inc., and Jane Fraser (the "Citizens") file this supplemental brief to address the supplemental question identified by the Order of the Court, dated April 1, 2025 (Document No. 45). Citizens would show as follows:

A.    **Citizens may file suit to enforce Section 404 of the Clean Water Act.**

By the above-referenced Order of the Court, the Court identified a supplemental question to be addressed at oral argument:

> Whether the citizen-suit provision of the Clean Water Act allows citizens to sue to enforce Section 404 permits issued to allow "the discharge of dredged or fill material." 33 U.S.C. § 1344; *see also id.* § 1365(a), (f)(1) & (7); *Atchafalaya Basinkeeper v. Chustz*, 682 F.3d 356 (5th Cir. 2012).

The answer is yes. *Atchafalaya Basinkeeper v. Chustz*, 682 F.3d 356 (5th Cir. 2012), was wrongly decided, and courts in this circuit and every other circuit other than the Fifth Circuit have routinely allowed citizen suits for discharging pollutants to waters of the United States without Section 404 permits and for violations of Section 404 permits.

Indeed, the Supreme Court has already recognized that Section 404(p) of the Clean Water Act (33 U.S.C. § 1344(p)) will "protect" persons in compliance with a Section 404 permit from "enforcement actions by the EPA *or private citizens*." *Coeur Alaska, Inc. v. Se. Alaska Conservation Council*, 557 U.S. 261, 280 (2009) (emphasis added). By implication, citizens suits under Section 505 (33 U.S.C. §

1365), which is cross-referenced by Section 404(p), may enforce violations of Section 404 permits. Section 404(p) makes compliance with the permit a defense to citizen suits that allege violations of effluent standards and limitations under Section 301 (*Id.* § 1311). Also, noncompliance with a Section 404 permit is not a defense under Section 404(p) and, therefore, a violation of the Section 301 effluent standards and limitations, which is actionable under Section 505. The Fifth Circuit in *Atchafalaya* did not address either *Coeur Alaska* or Section 404(p)'s cross-reference to both Sections 301 and 505.

As this Court acknowledged in *Black Warrior Riverkeeper, Inc. v. Black Warrior Minerals, Inc.*, 734 F.3d 1297, 1302 (11th Cir. 2013), "statutory construction is a 'holistic endeavor'" that requires the citizen suit provision to be interpreted in the context of the entire Act. (quoting *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988)). Therein, this Court addressed Section 402(k) of the Clean Water Act (33 U.S.C § 1342(k)), which is substantially like Section 404(p), when determining the manner for bringing a citizen suit under Section 505. This Court reasoned that discharges "not contemplated by the permit . . . would not come within the absolute defense provided by section [402(k)]," and this would result in either a Sections 301 or 306 violation. *Id*. at 1304. This reasoning applies equally to Section 404(p) and Section 404 permits.

Moreover, this reasoning is consistent with clear Congressional intent. The Senate Conference Report on the Clean Water Act ("CWA") states: "Failure to obtain a permit under [Section 404], or failure to comply with the requirements of such a permit, would be a violation of section 301(a)[.]" S. Conf. Rep. No. 92-1236, p. 142 (1972), *reprinted* at 1972 U.S.C.C.A.N. 3776, 3819. The House Report similarly states: "Any discharge of a pollutant without a permit issued . . . by the Secretary of the Army under section 404 is unlawful. Any discharge of a pollutant not in compliance with the conditions or limitations of such a permit is also unlawful." *Nat. Res. Def. Council, Inc. v. Train*, 396 F. Supp. 1393 (D.D.C. 1975), *aff'd sub nom. Nat. Res. Def. Council, Inc. v. Costle*, 568 F.2d 1369 (D.C. Cir. 1977) (quoting H.R. Rep. No. 92-911, 92d Cong., 2d Sess. 100 (1972)).[1] Thus, the reasoning from *Black Warrior Riverkeeper* when applied to Section 404 accomplishes the result Congress intended and is consistent with the Supreme Court's own interpretation in *Coeur Alaska*.

While a court may be reluctant to look to congressional history to interpret the plain meaning of a statute, such inquiry is appropriate related to the citizen suit provision because both this Court and the Supreme Court have already held there is

---

[1] Accessible on  PDF page #819 at:
https://babel.hathitrust.org/cgi/pt?id=mdp.39015077957630&seq=819&q1=subsection+(a)+of+section+301+establishes+that+any+discharge+of+a+pollutant+not+in+compliance+with+sections

ambiguity in the statute. "Standing alone, the citizen suit provision, [Section 505], 'is not a provision of which Congress' limpid prose puts an end to all dispute,'" *Black Warrior Riverkeeper, Inc.*, 734 F.3d at 1303 (quoting *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 57 (1987) ("acknowledging ambiguity" in the citizen suit provision). Congress plainly intended that violations of Section 404 permits would be violations of the effluent standards and limitations under Section 301, and Section 301 is expressly identified in Section 505(f)(1). The cross-references in Section 404(p) further bolster this interpretation.

The Fifth Circuit refused to perform the "holistic endeavor" required under *Black Warrior Riverkeeper*, declining to consider what it called "a tri-level maze of statutory cross-references." *Atchafalaya*, 682 F.3d at 359. The Fifth Circuit did not get past that Section 505(f)(7) expressly provides that citizen suits can be brought to enforce violations of Section 402 permits but not Section 404 permits. This has simplistic appeal. But, again, this limited view renders Section 404(p) and its cross-references to Sections 301 and 505 meaningless.

Section 505 is not "limpid prose" because the making of legislation involves numerous voices and a bicameral process. Indeed, this sausage making plainly explains why Section 505 reads so poorly. At the time the CWA was being debated before Congress, the Senate bill combined what is now Sections 404 and 402 into a singular permitting scheme under Section 402. 1972 U.S.C.C.A.N. 3776, 3818. The

Senate bill also contained the effluent standard or limitation definition in Section 505(f), which expressly identifies Section 402. *Id*. at 3823. But, the House amendment bill contained Section 404 as a separate provision from Section 402, and it did not contain the effluent standard definition at Section 505(f). *Id*. The House amendment bill contained Section 404(p), which referenced Section 301(a) and 505 and made citizens suits applicable to Section 404. *Id*. When reconciling the Senate bill and the House amendment bill, the Conference Substitute adopted the Senate's version of Section 505(f) and the House's version of Section 404. *Id*. Thus, Congress enacted the Clean Water Act with the tri-level maze of statutory cross-references that the *Atchafalaya* court ignored.

A lack of or violation of a Section 404 permit is a violation of an effluent standard and limitation under Section 301 and actionable under Section 505(f)(1). Furthermore, Citizens incorporate and reassert the arguments that they made before the District Court in full at Docket No. 29 at pages 15-25, and Docket No. 57 at pages 1-13.

**B.    *Atchafalaya* is inapposite because it addressed technical challenges to a permit – not the categorical challenge here.**

There is a difference between a technical violation of a Section 404 permit and a categorical challenge to whether the activity was covered by the Section 404 permit. The first challenges the technical performance of the permit and the manner of discharge of dredged and fill material – not whether the activity qualified for the

5

permit in the first place. The second challenges whether the activity qualified for the permit and is agnostic to whether there are technical violations. As applied here it seeks to prevent a bait and switch where the applicant applies for the permit of one category of permitted activity and performs a wholly different category of unpermitted activity.[2]

*Atchafalaya* involved a technical violation of a 404 permit. At issue in *Atchafalaya* was whether a permittee violated its Section 404 permit conditions by "failing to maintain appropriate gaps in its spoil banks to allow the natural water flow and flooding necessary to sustain certain wetland plant life." *Atchafalaya*, 682 F.3d at 357.

This case involves a categorial challenge, which alleges Sea Island lacked a Section 404 permit for the category of activity it performed despite having a Section 404 permit for an activity it did not perform. Sea Island Company applied to construct a commercial building, a permitted activity under Nationwide Permit 39, and switched to "PERMANENT SODDING," an unpermitted activity under

---

[2] Nationwide permits do not allow for the destruction of wetlands for any purpose that might someday qualify for coverage. Rather, "[a] prospective permittee must satisfy *all* terms and conditions of an NWP for a valid authorization to occur." 33 C.F.R. § 330.4 (emphasis added). "If a party discharges pollutants into navigable waters without meeting the conditions of a general permit or otherwise acquiring an individual permit, then the party can be subject to enforcement actions." *Nat'l Ass'n of Home Builders v. U.S. Army Corps of Engineers*, 453 F. Supp. 2d 116, 120 (D.D.C. 2006).

Nationwide Permit 39. Yes, Sea Island Company obtained a permit, but it had nothing to do with the activity that was performed. Citizens do not challenge gaps in spoil banks or other minutia and trifles. They cry fraud and allege Sea Island Company intentionally mislead the Corps and performed a bait and switch. Permanently sodding a wetland without a permit is a violation of Section 301's effluent standards and limitations and is actionable under Section 505(f)(1). Permanent sodding was never allowable under the Section 404 permit that Sea Island Company obtained.

By way of analogy, a permit to camp in Great Smoky Mountains National Park neither permits you to camp in Rocky Mountains National Park nor fish the streams of Great Smoky Mountains National Park. Those are categorically noncompliant activities with the permit to camp in Great Smoky Mountains National Park. Similarly, the authorization to act under Nationwide Permit 39 allowed Sea Island to fill a specific wetland to construct a commercial building. It was categorically noncompliant to either fill a different wetland or fill the specific wetland for a purpose other than commercial building construction.

## C.    The supplemental question is not dispositive of the case.

Citizens alleged six causes of action that are effectively four claims.

> **First Cause of Action**: Sea Island's categorical noncompliance with the section 404 permit, Nationwide Permit 39, which renders the discharge a violation of subsection 301(a). (Doc. 24, ¶¶ 154-158.

**Second Cause of Action**: Sea Island's noncompliance with the section 401 water quality certification (the "401 WQC"). *Id*. ¶¶ 159-164.

**Third and Fourth Causes of Action**: A declaration that Sea Island's authorization to act under Nationwide Permit 39 expired without compliance, and therefore, the continuing fill is a violation of subsection 301(a). *Id*. ¶¶ 165-168 and 169-172.

**Fifth and Sixth Causes of Action**: A declaration that Sea Island's authorization to act under Nationwide Permit 39 was void *ab initio* due to Sea Island's fraudulent misrepresentation because the truthful category of activity intended and conducted was "PERMANENT SODDING,"[2] which is not a permitted category of activity under Nationwide Permit 39, and, therefore, the PERMANENT SODDING is an unlawful fill that violates subsection 301(a). *Id*. ¶¶ 173-181 and 182-185.

Even if this Court adopted the reasoning in *Atchafalaya* and held that Citizens cannot bring a citizen suit to enforce technical violations of Section 404 permits, that would only require dismissal of the first cause of action and would not be dispositive of the five other causes of action.

The second cause of action for a violation of Section 401 is plainly allowable as a citizen suit under Section 505(f)(6). The third and fourth causes of action involve a time element that alleges that the Section 404 permit expired on its own terms without compliance; therefore, the unpermitted fill is a violation of Section 301. Again, Section 301 violations are plainly allowable as citizen suits under Section 505(f)(1). And, important here, the fifth and sixth causes of action allege fraud in obtaining the Section 404 permit and that the permit is void *ab initio* as a matter of

law. Again, if there was no Section 404 permit, the fill of a wetland plainly violates Section 301 and is actionable as a citizen suit under Section 505(f)(1).

*Atchafalaya* is inapposite to these other causes of actions, and at the Rule 12(b)(6) stage of the litigation the allegations must be accepted as true. Thus, even if this Court resolves *Atchafalaya* contrary to the interpretation of the Supreme Court, which Citizens adopt, and to the intent of Congress, this Court must remand to allow for the other causes of action to be tried.

## <u>CONCLUSION</u>

For the reasons discussed above, *Atchafalaya* is inapposite and wrongly decided even then. Citizens are authorized by Section 505(f)(1) to bring a citizen suit to enforce the unlawful fill and permanent sodding of a jurisdictional wetland, where the permanent sodding was not a permitted activity under the Section 404 permit. The unlawful fill and unpermitted permanent sodding is an ongoing violation of Section 301's effluent standards and limitations.

Respectfully submitted this 8th day of April 2025.

BUTLER SNOW LLP

*/s/ Adam M. Langley*
Adam M. Langley
6075 Poplar Ave., Suite 500
Memphis, Tennessee 38119
Telephone: (901) 680-7200
adam.langley@butlersnow.com

E. Righton J. Lewis
1170 Peachtree Street NE, Suite 1900
Atlanta, Georgia 30309
Telephone: (678) 515-5064
righton.lewis@butlersnow.com

John A. Brunini (*Admitted Pro Hac Vice*)
Laura D. Heusel (*Admitted Pro Hac Vice*)
1020 Highland Colony Parkway, Suite 1400
Ridgeland, Mississippi 39158
Telephone: (601) 985-4447
john.brunini@butlersnow.com
laura.heusel@butlersnow.com

*Counsel for Plaintiff-Appellants The Glynn Environmental Coalition, Inc., Center for a Sustainable Coast, Inc., and Jane Fraser*

## **CERTIFICATE OF COMPLIANCE**

Under Fed. R. App. P. 32(g), this document complies with the type-volume requirements of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by 11ᵗʰ Cir. R. 32-5, this brief contains 2032 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Times New Roman font size 14, which includes serifs.

*/s/ Adam M. Langley*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 8, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the CM/ECF system.  I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ Adam M. Langley*