No. 24-10710-G

---

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰
# 𝔣𝔬𝔯 𝔱𝔥𝔢 𝔈𝔩𝔢𝔳𝔢𝔫𝔱𝔥 𝔆𝔦𝔯𝔠𝔲𝔦𝔱

---

THE GLYNN ENVIRONMENTAL COALITION, INC. *et al.*,

*Plaintiffs-Appellants,*

*v.*

SEA ISLAND ACQUISITION, LLC,

*Defendant-Appellee.*

---

On Appeal from the United States District Court
for the Southern District of Georgia
No. 2:19-CV-0050-JRH

---

## SUPPLEMENTAL BRIEF OF APPELLEE

---

James B. Durham
Matthew B Balcer
HALL BOOTH SMITH, P.C.
3528 Darien Highway
Suite 300
Brunswick, GA 31525
(912) 554-0093
jdurham@hallboothsmith.com
mbalcer@hallboothsmith.com

John L. Fortuna
Lewis B. Jones
Mathieu M. Erramuzpe
JONES FORTUNA LP
111 New Street, Suite A
Decatur, GA 30030
(404) 282-4725
ljones@jonesfortuna.com
jfortuna@jonesfortuna.com
merramuzpe@jonesfortuna.com

*(Counsel continued on next page)*

*Counsel for Appellee Sea Island Acquisition, LLC*

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

Austin Atkinson
HALL BOOTH SMITH, P.C.
191 Peachtree Street NE
Suite 2900
Atlanta, GA 30303
404-954-5000
aatkinson@hallboothsmith.com

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

## CERTIFICATE OF INTERESTED PERSONS AND DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1(a)(3), Appellee Sea Island Acquisition, LLC hereby provides notice that Appellants' Certificate of Interested Persons is correct and complete, except for the following changes and omissions of names. Appellee certifies that the following individuals and entities may have an interest in the outcome of this case or appeal.

1. Anderson, J. Yates, Vice President, Development and Services of Sea Island Company, LLC, f/k/a Sea Island Acquisition, LLC

2. Atkinson, Austin A. – Counsel for Defendant/Appellee

3. Balcer, Mathew B. – Counsel for Defendant/Appellee

4. Carpenter, Scott T., Vice President of Sea Island Company, LLC, f/k/a Sea Island Acquisition, LLC

5. Fortuna, John L. – Counsel for Defendant/Appellee

6. Furnish, David J., Vice President, Sales and Marketing of Sea Island Company, LLC, f/k/a Sea Island Acquisition, LLC

7. Glenn, J. Lewis, Vice President, Real Estate of Sea Island Company, LLC, f/k/a Sea Island Acquisition, LLC

8. Hall Booth Smith, P.C. – Counsel for Defendant/Appellee

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

9.  Hall, J. Randal – Judge, United States District Court for the Southern District of Georgia

10. Hickey, Clifford, Vice President and Assistant Secretary of Sea Island Company, LLC, f/k/a Sea Island Acquisition, LLC

11. Jones, Lewis B. – Counsel for Defendant/Appellee

12. Jones Fortuna LP – Counsel for Defendant/Appellee

13. Lanier, Louise, Vice President, Human Resources of Sea Island Company, LLC, f/k/a Sea Island Acquisition, LLC

14. McHugh, William, Vice President and General Counsel of Sea Island Company, LLC, f/k/a Sea Island Acquisition, LLC

15. Roberts, Ron, Chief Financial Officer and Secretary of Sea Island Company, LLC, f/k/a Sea Island Acquisition, LLC

16. Sea Island Company, LLC. Sea Island Acquisition, LLC has changed its name to Sea Island Company, LLC

17. Singh, Vijay P., Vice President, Operations of Sea Island Company, LLC, f/k/a Sea Island Acquisition, LLC

18. Steilen, Scott, President and Chief Executive Officer of Sea Island Company, LLC, f/k/a Sea Island Acquisition, LLC

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

19.   Vaughan, Parra E., Vice President, Marketing and Sales and Chief

Marketing Officer of Sea Island Company, LLC, f/k/a Sea Island

Acquisition, LLC

20.   Pierson, Gary; Strother, Frankie W.; and Wainwright, Helen A. are

no longer with Sea Island Company, LLC, f/k/a Sea Island

Acquisition, LLC

The undersigned further certifies that Sea Island Resort Holdings,

LLC is the 100% equity holder of Appellee Sea Island Company, LLC f/k/a

as Sea Island Acquisition, LLC and that no publicly held corporation

owns 10% or more of its stock.

Respectfully submitted, this 14th day of April, 2025.

**HALL BOOTH SMITH, P.C.**

|  |  |
|---|---|
| 3528 Darien Highway, Suite 300 | */s/ James B. Durham* |
| Brunswick, Georgia 31525 | JAMES B. DURHAM |
| (912) 554-0093 | AUSTIN A. ATKINSON |
| (912) 554-1973 facsimile | MATTHEW B. BALCER |
| jdurham@hallboothsmith.com | |
| mbalcer@hallboothsmith.com | |
| aatkinson@hallboothsmith.com | |

**JONES FORTUNA LP**

|  |  |
|---|---|
| 111 New Street, Suite A | JOHN L. FORTUNA |
| Decatur, GA 30030 | LEWIS B. JONES |
| (404) 282-4725 | MATHIEU M. ERRAMUZPE |
| jfortuna@jonesfortuna.com | |

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

ljones@jonesfortuna.com

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

## TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................... i

TABLE OF AUTHORITIES .................................................................. ii

INTRODUCTION ...................................................................................... 1

   I.   *Atchafalaya* Was Correctly Decided Based on the Text of § 1365(f) ........4

   II.  The Holding in *Atchafalaya* Reflects a Broad and Growing

      Consensus ....................................................................................13

   III. This Court's Decision in *Black Warrior* is Consistent with

      *Atchafalaya* ..............................................................................17

   IV. The Permit Shield under § 1344(p) Does Not Support Appellants'

      Interpretation "by Implication" ...............................................20

   V.  Legislative History Does Not Support Appellants' Interpretation .........24

   VI. *Atchafalaya* Compels Dismissal of Appellants' Entire Complaint .........26

CONCLUSION ......................................................................................... 29

CERTIFICATE OF COMPLIANCE ................................................... 31

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

## TABLE OF AUTHORITIES

**Supreme Court Opinions**                                                **Page(s)**

*Bragdon v. Abbott,*

  524 U.S. 624 (1998) ..................................................................... 3, 25

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.,*

  528 U.S. 167 (2000) ........................................................................12

*Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n,*

  453 U.S. 1 (1981) ....................................................................... 2, 20

*Nat'l Ass'n of Mfrs. v. Dep't of Def.,*

  583 U.S. 109 (2018) ................................................................... 6, 16

*E.I. DuPont de Nemours & Co. v. Train,*

  430 U.S. 112 (1977) ........................................................................24

*Russello v. United States,*

  464 U.S. 16 (1983) ..........................................................................11

*Stone v. Immigration & Naturalization Serv.,*

  514 U.S. 386 (1995) .......................................................................2, 5

*United States ex rel. Polansky v. Exec. Health Res., Inc.,*

  599 U.S. 419 (2023) ........................................................................12

**Eleventh Circuit Opinions**

* *Black Warrior Riverkeeper, Inc. v. Black Warrior Minerals, Inc.*,

   734 F.3d 1297 (11th Cir. 2013) ....................................2, 4, 7, 16, 17, 18, 19, 29

*Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs*,

   781 F.3d 1271 (11th Cir. 2015) ..........................................................................23

*In re Bowles*,

   935 F.3d 1210 (11th Cir. 2019) .................................................................. 3, 11

*Landcastle Acquisition Corp. v. Renasant Bank*,

   57 F.4th 1203 (11th Cir. 2023) ..........................................................................28

*Nesbitt v. Candler Cnty.*,

   945 F.3d 1355 (11th Cir. 2020) ..........................................................................24

*S. River Watershed All., Inc. v. DeKalb Cnty.*,

   69 F.4th 809 (11th Cir. 2023) ..........................................................................5, 6

*SE Prop. Holdings, LLC v. Welch*,

   65 F.4th 1335 (11th Cir. 2023) .................................................................. 9, 10

*Sierra Club v. Flowers*,

   526 F.3d 1353 (11th Cir. 2008) ..........................................................................23

*Stone v. Comm'r*,

   86 F.4th 1320 (11th Cir. 2023) ..........................................................................28

**Federal Court Opinions**

\* *Atchafalaya Basinkeeper v. Chustz,*

    682 F.3d 356 (5th Cir. 2012) ............................................................ 1, 2, 6, 8, 9

*Atl. States Legal Found. v. Eastman Kodak Co.,*

    12 F.3d 353 (2d Cir. 1993) ...............................................................24

*Aylward v. City of Charlotte,*

    2024 WL 4048874, 2024 U.S. Dist. LEXIS 160042 (W.D.N.C. Sept. 4, 2024)

............................................................................................................15

*Borough of Carlstadt v. United States Army Corps of Eng'rs,*

    2006 WL 305314, 2006 U.S. Dist. LEXIS 4789 (D.N.J. Feb. 7, 2006) ..........14

*Davis v. Cate,*

    729 F. Supp. 3d 1339 (S.D. Ga. 2024)..................................................15

*Ga. River Network v. U.S. Army Corps of Eng'rs,*

    2012 WL 930325, 2012 U.S. Dist. LEXIS 37012 (S.D. Ga. Mar. 19, 2012) ..23

*Harmon Cove Condo. Ass'n v. Marsh,*

    815 F.2d 949 (3d Cir. 1987) ...............................................................14, 19, 20

*Jones v. Rose,*

    2005 WL 2218134, 2005 U.S. Dist. LEXIS 41025 (D. Or. Sept. 9, 2005) .....14

*Kelly v. City of Poway,*

  2022 WL 1524737, 2022 U.S. Dist. LEXIS 87302 (S.D. Cal. May 13, 2022)

  ................................................................................................................14

*Mingo Logan Coal Co. v. EPA,*

  829 F.3d 710 (D.C. Cir. 2016) ..........................................................27

*Naturaland Trust v. Dakota Fin., LLC,*

  531 F. Supp. 3d 953 (D.S.C. 2021) ...................................................15

*Nw. Envtl. Def. Ctr. v. U.S. Army Corps of Eng'rs,*

  118 F. Supp. 2d 1115 (D. Or. 2000) ......................................... 14, 16

*Pub. Emps. for Envtl. Responsibility v. Schroer,*

  2019 WL 11274596, 2019 U.S. Dist. LEXIS 234826 (E.D. Tenn. June 21,

  2019) .................................................................................... 15, 16

*S.C. Coastal Conservation League v. U.S. Army Corps of Eng'rs,*

  660 F. Supp. 3d 469 (D.S.C. 2023) ...................................................23

*S.C. Coastal Conservation League v. U.S. Army Corps of Eng'rs,*

  2021 WL 3931908, 2021 U.S. Dist. LEXIS 166994 (D.S.C. Sept. 2, 2021) ...23

*Stillwater of Crown Point Homeowner's Ass'n v. Kovich,*

  820 F. Supp. 2d 859 (N.D. Ind. 2011) ....................................... 13, 14

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

*Stillwater of Crown Point Homeowner's Ass'n v. Stiglich*,

   999 F. Supp. 2d 1111–25 (N.D. Ind. 2014) ......................................................13

*United States ex rel. Zafirov v. Fla. Med. Assocs., LLC*,

   751 F. Supp. 3d 1293 (M.D. Fla. 2024) ............................................................12

*Watkins v. Lawrence Cnty.*,

   2018 WL 6265107, 2018 U.S. Dist. LEXIS 61318 (E.D. Ark. Apr. 11, 2018)

.............................................................................................................................15

**United States Code**

33 U.S.C. § 1311 ........................................................... 3, 7, 10, 11, 12, 16

33 U.S.C. § 1316 ............................................................................. 7, 18

33 U.S.C. § 1317 ....................................................................................7

33 U.S.C. § 1319 ........................................................................ 10, 12, 22

33 U.S.C. § 1322 ....................................................................................7

33 U.S.C. § 1323 ....................................................................................7

33 U.S.C. § 1342 ..................................................................... 2, 7, 8, 10, 14

33 U.S.C. § 1341 ....................................................................................7

33 U.S.C. § 1344 ........................................................... 1, 2, 3, 10, 11, 20, 22, 27

33 U.S.C. § 1365 ........................................................ 1, 4–9, 11, 12, 14, 23, 26, 29

33 U.S.C. § 1345 ....................................................................................7

**Code of Federal Regulations**

33 C.F.R. § 325.1 ..................................................................................22

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

## Other

Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* (2012). ............................................................................... 3–4, 9, 25

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

By Order entered April 1, 2025, the Court asked the parties to address the following question:

> Whether the citizen-suit provision of the Clean Water Act allows citizens to sue to enforce Section 404 permits issued to allow "the discharge of dredged or fill material." 33 U.S.C. § 1344; *see also id.* § 1365(a), (f)(1) & (7); *Atchafalaya Basinkeeper v. Chustz*, 682 F.3d 356 (5th Cir. 2012).

(ECF 45). Appellants sought leave to file a supplemental brief addressing the issue (ECF 46), which this Court granted on April 8, 2025 (ECF 47). Appellee Sea Island Acquisition, LLC ("Sea Island") has requested leave to file a supplemental response brief addressing the Court's question, which Appellants do not oppose. If granted leave, Sea Island would state as follows:

## INTRODUCTION

Contrary to Appellants' claim, the citizen suit provision of the Clean Water Act does not provide a private right to sue for alleged violations of permits issued under 33 U.S.C. § 1344 ("Section 404 permits").[1] This

---

[1] Clean Water Act cases are not consistent in the convention used to cite individual statutory provisions. Many refer to sections in the public law (*e.g.*, "Section 505"), as practitioners generally do, but many others cite the United States Code (*e.g.*, "§ 1365" or 33 U.S.C. § 1365). Unless referring to specific types of permits — such as a "Section 404 permit" or a "Section 402 permit" — the United States Code is used in this brief.

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

conclusion follows from a straightforward, common-sense reading of § 1365(f). And it has been endorsed not only by the Fifth Circuit in *Atchafalaya Basinkeeper v. Chustz*, 682 F.3d 356 (5th Cir. 2012), but also by *every single court* that has squarely addressed the question.

Appellants' contrary claim ignores the plain text of § 1365(f), which expressly grants jurisdiction for citizen enforcement of permits issued under § 1342 ("Section 402 permits") but conspicuously omits any authority for citizens to enforce permits issued under § 1344. It runs afoul of multiple canons of statutory construction, including that statutes should not be interpreted "in a way that would render other provisions of the statute superfluous," *Black Warrior Riverkeeper, Inc. v. Black Warrior Minerals, Inc.*, 734 F.3d 1297, 1303 (11th Cir. 2013); that jurisdictional statutes should be construed strictly "with precision and with fidelity to the terms by which Congress has expressed its wishes," *Stone v. Immigration & Naturalization Serv.*, 514 U.S. 386, 405 (1995) (citation omitted); and that courts should not read remedies into statutes beyond those Congress elected to provide, because "Congress provided precisely the remedies it considered appropriate," *Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 14 (1981). It also

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

ignores Congress's clear distinction in other sections of the Clean Water Act between violations of § 1311 on the one hand, and violations of Section 404 permits on the other, and it is "well settled that where Congress includes particular language in one section of a statute but omits it in another section of the same Act," it is "presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *In re Bowles*, 935 F.3d 1210, 1218 (11th Cir. 2019) (citation omitted). In short, Appellants' reading of § 1365 has nothing to commend it.

Appellants' suggestion that a cross-reference to § 1365 in the "permit shield" provision of § 1344(p) supports their reading "[b]y implication," and their resort to legislative history, fare no better. (ECF 49 at 8, 10–12.) As to the former, Appellants misunderstand § 1344(p) and its role in the overall statutory scheme. As to the latter, Appellants ignore subsequent amendments to § 1365(f) by Congress, which incorporate the settled "meaning of an existing statutory provision" articulated in *Atchafalaya, see Bragdon v. Abbott*, 524 U.S. 624, 645 (1998), and are "presumed to carry forward that interpretation," Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal*

*Texts* 322 (2012). Thus, to the extent it is at all relevant, the legislative history supports Sea Island's position.

Finally, Appellants' other claims do not save their case, the entirety of which must be dismissed for lack of jurisdiction. Simply put, Appellants' artful pleading is little more than an attempt to disguise duplicative claims — all challenging the very same activity authorized by Sea Island's Section 404 permit — and to circumvent the text of § 1365(f). As this Court explained in *Black Warrior*, however, "citizen suits against permit holders must proceed," if at all, under the specific provision of § 1365(f) authorizing suits for permit violations "when the discharges are covered by the permit." 734 F.3d at 1304. And because that provision authorizes suits for violations of Section 402 permits — but not Section 404 permits — Appellants' claims must be dismissed.

## I.    *Atchafalaya* Was Correctly Decided Based on the Text of § 1365(f)

Appellants admit *Atchafalaya* forecloses citizen suits for Section 404 permit violations but contend *Atchafalaya* was "wrongly decided." (ECF 49 at 8.) They fail to explain how that decision is wrong, however. Their position seems to be this Court should not bother to parse the jurisdiction-granting provisions of § 1365, as the Fifth Circuit did,

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

because a more "holistic" interpretation would produce the desired result. (*See* ECF 49 at 9.)

Appellants have it exactly backwards. When interpreting statutory text, "we must begin, and often should end as well, with the language of the statute itself." *S. River Watershed All., Inc. v. DeKalb Cnty.*, 69 F.4th 809, 821 (11th Cir. 2023). This is especially true in the context of jurisdictional provisions like § 1365(a) and (f), which must be construed strictly "with precision and with fidelity to the terms by which Congress has expressed its wishes." *Stone*, 514 U.S. at 405 (citation omitted); *see also* 33 U.S.C. § 1365(a)(1) ("The district courts shall have jurisdiction … to enforce such an effluent standard or limitation"); *S. River Watershed All.*, 69 F.4th at 822 (recognizing § 1365(a) is the "jurisdiction-granting" portion of the citizen suit provision).[2] In this context, the Supreme Court has also warned against inferring private rights of action from oblique statutory interpretations:

> Where a statute has "elaborate enforcement provisions," as does the [Clean Water Act], the Supreme Court has warned that: "It cannot be assumed that Congress intended to authorize by implication additional judicial remedies for

---

[2] Because the jurisdiction-granting provision in § 1365(a) is limited to suits alleging violations of an "effluent standard or limitation" as defined in § 1365(f), the definition is also jurisdictional.

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

private citizens. It is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it."

*Atchafalaya*, 682 F.3d at 359 (cleaned up) (quoting *Middlesex Cnty.*, 453 U.S. at 14–15).

Accordingly, the correct approach to the question presented is to "look to the plain meaning of the statute, and presume that a legislature says in a statute what it means and means in a statute what it says there." *S. River Watershed All.*, 69 F.4th at 821 (quotation marks and citation omitted); *see also Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 583 U.S. 109, 124 (2018) (construing the phrase "any effluent limitation or other limitation" for jurisdictional purposes strictly in accordance with statutory text, explaining: "Our constitutional structure does not permit this Court to rewrite the statute that Congress has enacted" (cleaned up) (quoting *Puerto Rico v. Franklin Cal. Tax-Free Trust*, 579 U. S. 115, 130 (2016))).

Beginning, then, with the statutory text, § 1365 authorizes citizen enforcement of "certain specific and limited types of violations" of the Clean Water Act. *Atchafalaya*, 682 F.3d at 358. Specifically, § 1365(a)(1) authorizes citizen suits against persons who are "alleged to be in violation

6

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

of … an effluent standard or limitation under this chapter." 33 U.S.C. §

1365(a)(1). The phrase "effluent standard or limitation," in turn, is

defined in detail in eight paragraphs in § 1365(f).[3] *See Black Warrior*, 734

F.3d at 1301. Thus, to determine if a citizen suit is authorized, it is not

enough to allege that a statutory violation of some type occurred, as

Appellants seem to suggest. (*See* ECF 49 at 10.) It is also necessary to

examine § 1365(f) to determine if the alleged violation is covered by any

of its eight paragraphs. This is exactly what the Fifth Circuit did in

*Atchafalaya* before concluding that an alleged violation of a Section 404

---

[3] 33 U.S.C. § 1365(f) provides:

> For purposes of this section, the term "effluent standard or limitation under this chapter" means (1) effective July 1, 1973, an unlawful act under subsection (a) of section 1311 of this title; (2) an effluent limitation or other limitation under section 1311 or 1312 of this title; (3) standard of performance under section 1316 of this title; (4) prohibition, effluent standard or pretreatment standards under section 1317 of this title; (5) a standard of performance or requirement under section 1322(p) of this title; (6) a certification under section 1341 of this title; (7) a permit or condition of a permit issued under section 1342 of this title that is in effect under this chapter (including a requirement applicable by reason of section 1323 of this title); or (8) a regulation under section 1345(d) of this title.

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

permit is not one of the "specific and limited types of violations" for which Congress authorized citizen enforcement. *Atchafalaya*, 682 F.3d at 358.

Like the plaintiffs in *Atchafalaya*, Appellants contend that failing to comply with the terms of a Section 404 permit is an "unlawful act" under § 1311, which prohibits certain discharges without a permit, and that citizen enforcement is provided by § 1365(f)(1). The Fifth Circuit held, however, that § 1365(f)(1) is limited to unpermitted discharges, and that alleged permit violations are covered by a different paragraph, § 1365(f)(7),[4] which authorizes citizen enforcement of "a permit or condition of a permit issued under section 1342," 33 U.S.C. § 1365(f)(7). *See Atchafalaya*, 682 F.3d at 359. If § 1365(f)(1) covered both unpermitted discharges and discharges in violation of a permit, the Fifth Circuit reasoned, § 1365(f)(7) would be completely superfluous and unnecessary. *Id.* The Fifth Circuit correctly rejected this interpretation based on the "established rule of statutory interpretation that no provision should be construed to be entirely redundant." *Id.* at 358–59 (citing *Kungys v. United States*, 485 U.S. 759, 778 (1988)).

---

[4] When *Atchafalaya* was decided, this was § 1365(f)(6). As discussed below, *see infra*, Part V, Congress amended § 1365(f) in 2018. In addition to other changes, § 1365(f)(6) was renumbered to (f)(7).

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

The Fifth Circuit concluded its interpretation is "strongly reinforced by Congress's provision of citizen suits for § 1342 permit condition violations in the unmistakably clear language of § 1365(f)([7])." *Id.* at 359. "If Congress had intended to allow citizen suits for § 1344 permit condition violations … it could have simply added another subsection to § 1365(f), providing the same right to sue for § 1344 permit condition violations that it provided for § 1342 permit condition violations in § 1365(f)([7])." *Id.*

The holding of *Atchafalaya* is also strongly supported by the *expressio unius est exclusio alterius* canon, under which "the mention of one thing implies the exclusion of another." *See SE Prop. Holdings, LLC v. Welch*, 65 F.4th 1335, 1344 (11th Cir. 2023) (citation omitted). Indeed, § 1365(f) is a text-book example of the type of statutory provision to which the canon applies: when "the [thing specified] can reasonably be thought to be an expression of all that shares in the grant or prohibition involved." Scalia & Garner, *supra*, at 107. In § 1365(f), Congress took pains to enumerate the "specific and limited types of violations" subject to citizen enforcement. *Atchafalaya*, 682 F.3d at 358. By enumerating eight specific statutory violations for which citizen suits are authorized, complete with

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

cross-references to specific parts and subparts of applicable statutory provisions, this text leaves no doubt the enumeration is exhaustive. And the fact that Congress included non-compliance with permits issued under § 1342, but not § 1344, suggests Congress did not intend to authorize citizen enforcement for Section 404 permits. *Cf. Welch*, 65 F.4th at 1344 (holding the express inclusion of several specific remedies in a statute represents an implicit exclusion of remedies not listed).

What is more, while Appellants urge the Court to take a "holistic" view of the Clean Water Act, doing so only confirms Sea Island is correct. (ECF 49 at 9.) This is because other sections of the Act expressly distinguish between Section 404 permit violations on the one hand, and violations of § 1311(a) and Section 402 permits on the other. For example, § 1319(c) imposes criminal penalties for any person who negligently or knowingly

> *violates section 1311*, 1312, 1316, 1317, 1318, 1321(b)(3), 1322(p), 1328, or 1345 of this title, *or any permit condition or limitation* … in a permit issued under section 1342 of this title by the Administrator or by a State … or *in a permit issued under section 1344 of this title by the Secretary of the Army*[.]

33 U.S.C. § 1319(c)(1)(A) (emphasis added); *see also id.* § 1319(c)(2)(A), (c)(3)(A). Congress plainly understands the difference between § 1311(a)

violations and violations of Section 404 permits, and it knows how to authorize enforcement of Section 404 permit violations when it wants to do so. *See, e.g.*, *Russello v. United States*, 464 U.S. 16, 23 (1983) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (cleaned up) (citation omitted)); *In re Bowles*, 935 F.3d at 1218 (explaining that "Congress knew how to provide" different remedies but declined to do so, quoting the "well settled" principle in *Russello* above). That Congress chose not to do so in § 1365 should be the end of Appellants' case.

Finally, Congress has given different agencies authority to bring civil actions and impose civil penalties for the different types of violations: the Secretary of the Army has authority to enforce violations of Section 404 permits issued by the Corps, while EPA has authority over § 1311(a) violations and violations of state-issued Section 404 permits. *Compare* 33 U.S.C. § 1344(s) (authorizing the Secretary of the Army to issue compliance orders and commence civil actions against any person who "is in violation of any condition or limitation set forth in a permit

11

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

issued by the Secretary under this section," and imposing civil penalties for violations of "any condition or limitation in a permit issued by the Secretary under this section"), *with* 33 U.S.C. § 1319(a)(1), (a)(3), (b) (granting the EPA Administrator authority to issue compliance orders and initiate civil actions for violations of § 1311 and EPA- or state-issued permits). Construing violations of Section 404 permits as § 1311(a) violations, as Appellants urge, would confuse and upset the balance of authority Congress created.[5]

---

[5] Principles of constitutional avoidance also counsel in favor of reading § 1365 narrowly. Substantial questions exist as to whether citizen suits are permissible under Article II of the Constitution. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 197 (2000) (Kennedy, J., concurring) ("Difficult and fundamental questions are raised when we ask whether exactions of public fines by private litigants, and the delegation of Executive power which might be inferable from the authorization, are permissible in view of the responsibilities committed to the Executive by Article II of the Constitution of the United States."); *cf. United States ex rel. Zafirov v. Fla. Med. Assocs., LLC*, 751 F. Supp. 3d 1293 (M.D. Fla. 2024) (holding that *qui tam* provisions authorizing private citizens to enforce federal law violate Appointments Clause); *United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 449 (2023) (Thomas, J., dissenting) (highlighting "substantial arguments that the *qui tam* device is inconsistent with Article II and that private relators may not represent the interests of the United States in litigation," because "the entire 'executive Power' belongs to the President alone" (cleaned up)). While the Court need not reach this issue because it lacks jurisdiction under the plain text of § 1365, these questions militate in favor of strictly construing the statute and narrowly cabining whatever authority might exist.

12

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

## II.    The Holding in *Atchafalaya* Reflects a Broad and Growing Consensus

Appellants assert (without citation) that "courts in this circuit and every other circuit other than the Fifth Circuit have routinely allowed citizen suits for discharging pollutants to waters of the United States without Section 404 permits and for violations of Section 404 permits." (ECF 49 at 8.) But it is not true that courts routinely allow citizen suits for violations of Section 404 permits, and Appellants do not provide a single example in their Supplemental Brief to this Court.

Indeed, after a nationwide search, the undersigned are aware of only one case allowing a citizen suit based on alleged violations of a Section 404 permit. *See Stillwater of Crown Point Homeowner's Ass'n v. Stiglich*, 999 F. Supp. 2d 1111, 1124–25 (N.D. Ind. 2014) (Rose, Mag. J.) ("[A] term or condition in a permit issued under CWA § 404 … is an 'effluent standard or limitation' that may be enforced by way of a citizen suit under § 1365."); *Stillwater of Crown Point Homeowner's Ass'n v. Kovich*, 820 F. Supp. 2d 859, 873–74 (N.D. Ind. 2011) (Rose, Mag. J.) (same). But the opinion from the Northern District of Indiana does not discuss *Atchafalaya* or the basis for its holding. Further, a review of the briefs confirms the defendants did not challenge the authority of citizens

13

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

to enforce Section 404 permit conditions or raise any argument based on these issues; the line in the opinion was simply copied and pasted out of the plaintiffs' brief. It also appears the magistrate judge may not have appreciated the difference between Section 404 permits and Section 402 permits.[6]

On the other hand, numerous reported opinions either follow or reach the same result as *Atchafalaya*. As early as 1987, the Third Circuit recognized that "the citizens' suit provision of [the Clean Water Act], 33 U.S.C. § 1365 (1982), does not authorize an action against" a defendant that allegedly violated requirements of its Section 404 permit. *Harmon Cove Condo. Ass'n v. Marsh*, 815 F.2d 949, 954 (3d Cir. 1987). Likewise, without citing *Atchafalaya*, various district courts have independently reached the same conclusion — that citizens cannot enforce the conditions of Section 404 permits.[7] And still more courts, across several

---

[6] In support of the statement that conditions of a Section 404 permit constitute an "effluent standard or limitation," *Kovich* cites the portion of § 1365(f) referencing "a permit or condition thereof issued under *section 1342* of this title." 820 F. Supp. 2d at 874 (emphasis added). It thus appears the opinion is conflating Section 404 permits and Section 402 permits.

[7] *See, e.g.*, *Kelly v. City of Poway*, 2022 WL 1524737, 2022 U.S. Dist. LEXIS 87302, *18 (S.D. Cal. May 13, 2022) (agreeing with "well-reasoned

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

circuits, have expressly endorsed and affirmatively cited *Atchafalaya*'s

holding.[8] Contrary to Appellants' suggestion, *Atchafalaya* is not an

---

district court decisions" that "the omission of § 1344 from the specifically enumerated list in § 1365 means that a private citizen cannot sue for purported violations of § 1344"); *Borough of Carlstadt v. United States Army Corps of Eng'rs*, 2006 WL 305314, 2006 U.S. Dist. LEXIS 4789, *32 (D.N.J. Feb. 7, 2006) (recognizing the Act "may not permit a private right of action against a private defendant for alleged violations of the terms or conditions of a permit issued under § 404 of the [Act]," but not deciding the issue); *Jones v. Rose*, 2005 WL 2218134, 2005 U.S. Dist. LEXIS 41025, at *67–68 (D. Or. Sept. 9, 2005) (adopting the "well-reasoned analysis" in an earlier magistrate judge's decision, and holding that "the violation of a § 404 permit condition cannot form the basis for a citizen suit[.]"); *Nw. Envtl. Def. Ctr. v. U.S. Army Corps of Eng'rs*, 118 F. Supp. 2d 1115, 1118–19 (D. Or. 2000) (Hubel, Mag. J.) (concluding based on the text of § 1365(f) that "§ 1365(a)(1) does not permit an action for violation of the terms or conditions of permits issued under 33 U.S.C. § 1344").

[8] *See, e.g.*, *Aylward v. City of Charlotte*, 2024 WL 4048874, 2024 U.S. Dist. LEXIS 160042, at *14–15 (W.D.N.C. Sept. 4, 2024) ("The Clean Water Act's citizen suit provision does not allow for citizen suits to enforce Section 404 permit conditions."); *Naturaland Trust v. Dakota Fin., LLC*, 531 F. Supp. 3d 953, 964–65 (D.S.C. 2021) ("Enforcement of a 404 permit is solely within the discretion of the Army Corp of Engineers. The CWA does not provide for a citizens' suit."), *rev'd on other grounds*, 41 F.4th 342 (4th Cir. 2022); *Pub. Emps. for Envtl. Responsibility v. Schroer*, 2019 WL 11274596, 2019 U.S. Dist. LEXIS 234826, at *20–22 (E.D. Tenn. June 21, 2019) ("Plaintiffs therefore have no cause of action against defendant for violating the conditions of a § 404 permit under 33 U.S.C. § 1365(f)."); *Watkins v. Lawrence Cnty.*, 2018 WL 6265107, 2018 U.S. Dist. LEXIS 61318, at *3–5 (E.D. Ark. Apr. 11, 2018) ("[T]he County's alleged violations of that [Section 404] permit aren't covered by § 1365."); *cf. Davis v. Cate*, 729 F. Supp. 3d 1339, 1350–51 (S.D. Ga. 2024) (applying the logic of *Atchafalaya*, and its "close reading of the plain text of

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

outlier, but rather a reflection of a broad and longstanding consensus based on the straightforward language of § 1365(f).

Many of these courts have considered and rejected the very argument advanced by Appellants that a Section 404 permit violation constitutes an unlawful discharge under §1311(a) and, by extension, is actionable under § 1365(f)(1). (ECF 49 at 8–9, 11.) In other words, Appellants view § 1365(f)(1) as a catchall provision, capturing violations of the Act that are not covered by the more specific subparts of § 1365(f). This interpretation is untenable, however, because it would render many of those more specific subparts redundant.[9] *See Black Warrior*, 734 F.3d at 1303 (11th Cir. 2013) ("[A] court should also avoid interpreting a provision in a way that would render other provisions of the statute superfluous."); *see also Nat'l Ass'n of Mfrs.*, 583 U.S. at 125–26 (rejecting construction of Clean Water Act jurisdictional provision that "renders

---

§§ 1311(a)(1) and 1365(f)," to interpret the scope of enforcement rights under § 1365(f)(6)).

[9] *See, e.g.*, *Schroer*, 2019 U.S. Dist. LEXIS 234826, at *20–21 (declining to allow citizen suits for Section 404 permit violations under § 1365(f)(1) because that reading "would make § 1365(f)(7) redundant"); *Nw. Envtl. Def. Ctr.*, 118 F. Supp. 2d at 1119 (rejecting the interpretation of § 1311 as a "catchall provision" because that "would make other more specific provisions superfluous, and should therefore be avoided").

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

other statutory language superfluous" and reads out other more specific provisions).

## III.    This Court's Decision in *Black Warrior* is Consistent with *Atchafalaya*

Appellants suggest this Court's decision in *Black Warrior Riverkeeper v. Black Warrior Minerals* supports their position, but *Black Warrior* is on all fours with *Atchafalaya*. There, environmental plaintiffs sued a discharger with an NPDES permit issued under § 1342. *Black Warrior*, 734 F.3d at 1300. Rather than alleging violations of the permit actionable under § 1365(f)(7), however, they sought to proceed under a different provision of 1365(f) instead. *Id.* Parsing the text of § 1365(f), this Court rejected the plaintiffs' attempt to side-step requirements applicable to suits under § 1365(f)(7), holding that "citizen suits against [Section 402] permit holders must proceed under section 1365(f)([7])," and not other more general provisions of § 1365(f). *Id.* at 1304.

Both the Court's decision in *Black Warrior* and *Atchafalaya* arise from a basic understanding that § 1365(f)(1) is limited to "non-permitted dischargers" while § 1365(f)(7) "governs violations of permits." *Id.* And because § 1365(f)(7) authorizes a suit for violating permits under § 1342 — but not § 1344 — Appellants' suit is not authorized.

The portion of *Black Warrior* Appellants cite does not even suggest, much less hold, that suits involving *permitted* discharges are actionable under § 1365(f)(1), as Appellants claim. (*See* ECF 49 at 9 (citing *Black Warrior*, 734 F.3d at 1304).) Addressing a redundancy objection by the citizen-appellants in *Black Warrior*, the Court pointed to a different paragraph of § 1365 — § 1365(f)(3) — as potentially authorizing a citizen suit based on a violation of "new source performance standards" issued under § 1316 where a permit does not contemplate the discharge in question. *See Black Warrior*, 734 F.3d at 1304. While standards issued under § 1316 are not relevant to this case, the fact that this Court pointed to § 1365(f)(3) to authorize a suit for that particular violation, rather than interpreting § 1365(f)(1) as a general authorization to pursue any alleged statutory violation, certainly is.

*Black Warrior* also makes quick work of Appellants' argument that their citizen suit is allowed as a "categorical" challenge rather than a "technical" challenge to Sea Island's Section 404 permit. (ECF 49 at 12–14.) As an initial matter, there is no distinction under the Act between categorical challenges and technical challenges, and Appellants cite no authority to suggest otherwise. Further, while Appellants insist "Sea

Island lacked a Section 404 permit for the category of activity it performed," this is pure fiction. (ECF 49 at 13.) Sea Island obtained authorization to fill the exact wetland at issue in this case. (ECF 21-1 at 48–50, 53 (Corps authorization to proceed under NWP 39); ECF 21-2 at 30, ¶¶ 114–19 (Amended Complaint).) Thus, under *Black Warrior*, any enforcement action brought against Sea Island for filling that wetland must be for a violation of its Section 404 permit. *Black Warrior,* 734 F.3d at 1305 ("[A] suit against a permit holder must necessarily be for a violation of its permit."). And because § 1365(f) does not authorize citizen suits for violations of Section 404 permits, the Corps is the only party that may bring the suit and enforcement is committed to the agency's discretion. *See Harmon Cove Condo. Ass'n,* 815 F.2d at 953 (concluding "the Secretary's decision [regarding Section 404 permit enforcement] is committed exclusively to his discretion").

In the end, Appellants' argument reduces down to an assertion that any violation is enforceable under § 1365(f)(1). But if that were the case, Congress would not have wasted time enacting the other seven subsections of § 1365(f); it would have enacted (f)(1) and been done. But that is not what Congress did. Rather, Congress carefully enumerated

specific categories of claims that citizens may bring while excluding others. This Court should give effect to the text of the statute and the choices Congress made.

## IV. The Permit Shield under § 1344(p) Does Not Support Appellants' Interpretation "by Implication"

Appellants assert that — "*by implication*" — § 1344(p)'s cross-reference to § 1365 must mean that Congress has granted jurisdiction over citizen suits for Section 404 permit violations because it would otherwise render the permit shield under § 1344(p) superfluous. This is wrong.

Aside from ignoring the Supreme Court's admonition that courts should not expand by implication the remedies Congress created, *see Middlesex Cnty.*, 453 U.S. at 14–15 (courts should not read remedies into statutes "where a statute expressly provides a particular remedy or remedies" because "Congress provided precisely the remedies it considered appropriate"); *Harmon Cove Condo. Ass'n*, 815 F.2d at 954 (applying the "clear teachings" of *Middlesex County* to find no private cause of action for alleged violations of a Section 404 permit), Appellants' argument incorrectly assumes the shield is limited to claims alleging a violation of the dredged-and-fill requirements under § 1344.

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

As shown by the plain text of § 1344(p), the provision also shields Section 404 permit holders against other types of Clean Water Act claims. Without the shield, citizen plaintiffs might allege that a discharge in full compliance with the terms of a Section 404 permit nonetheless violates *other* requirements embedded in § 1311, including those under § 1312 (water quality related effluent limitations), § 1316 (new source performance standards), and § 1328 (aquaculture requirements). The permit shield also explicitly blocks claims alleging violations of § 1317 (toxic pollutant requirements) and § 1343 (ocean discharge criteria). In other words, § 1344(p) ensures persons complying with the terms of a Section 404 permit will be deemed to have complied, subject to any limitations included in the permit itself, with *all* applicable Clean Water Act requirements.

There is good reason for this shield. "Dredged" or "fill" material contains any number of constituents and potential pollutants beyond simple "rock" or "sand." For this reason, applicants for Section 404 permits seeking to discharge fill material must disclose, among other things, "the source of the material; the purpose of the discharge, a description of the type, composition and quantity of the material; the

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

method of transportation and disposal of the material; and the location of the disposal site." 33 C.F.R. § 325.1(d)(4).[10] Using this information, the Corps then analyzes the potential environmental effects of the discharge, including on water quality; solicits the views of other agencies; puts the information out for public comment; and renders a final decision to authorize the discharge, or not, while imposing any conditions it deems necessary to protect the environment and water quality — a decision that is subject to judicial review under the APA.

In this context, § 1344(p) stands for the unremarkable presumption that any permit issued by the Corps is conclusive.[11] Where a Section 404

---

[10] Similar requirements exist for "dredged material," where applicants must disclose "a description of the type, composition and quantity of the material to be dredged, the method of dredging, and the site and plans for disposal of the dredged material." 33 C.F.R. § 325.1(d)(3).

[11] Section 1344(p)'s cross-reference shielding enforcement under § 1319 serves the same purpose. For EPA, this means the agency must engage with the Corps during the permit process if it disagrees with the Corps' permitting decisions. EPA must engage in the interagency coordination process, *see* 33 U.S.C. § 1344(q); elevate contested permitting decisions for resolution at the highest levels, *see generally* Memorandum of Agreement Between the Environmental Protection Agency and the Department of the Army, at 3 (Aug. 11, 1992) (establishing process to ensure "full consideration of each agencies' views concerning proposed projects" and providing for headquarters review of contested permitting decisions by the Assistant Secretary of the Army), *available at* https://bit.ly/404q-MOA; and, if necessary, exercise its authority to veto

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

permit exists, private parties may not bring a citizen suit under § 1365 to claim the permit is not "sufficiently stringent" or that discharges of other "pollutants" in connection with the fill are not within the ambit of the permitted activity. Rather, the exclusive remedy for parties dissatisfied with a Section 404 permit is to challenge the Corps' decision to issue it, as they so often do.[12] This appropriately focuses disputes about

---

permits if it concludes the project would have unacceptable adverse impacts, *see* 33 U.S.C. § 1344(c). If the Corps' permitting decision stands, however, EPA is stuck with it and, under § 1344(p), activities conducted pursuant to the permit are deemed to comply with the Clean Water Act, notwithstanding any contrary views EPA might have.

[12] *See*, *e.g.*, *Appalachian Voices v. U.S. Army Corps of Eng'rs*, 2025 WL 1009180, 2025 U.S. App. LEXIS 7967, at *1–2, 23–24 (6th Cir. Apr. 4, 2025) (holding the Corps complied with the APA in issuing a Section 404 permit for a natural gas pipeline); *Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs*, 781 F.3d 1271, 1281–83 (11th Cir. 2015) (allowing an environmental group to challenge issuance of a nationwide permit on the grounds the Corps did not adequately consider downstream water quality impacts); *Sierra Club v. Flowers*, 526 F.3d 1353, 1356 (11th Cir. 2008) (challenge to a Section 404 permit authorizing mining); *S.C. Coastal Conservation League v. U.S. Army Corps of Eng'rs*, 660 F. Supp. 3d 469 (D.S.C. 2023) (challenge to a Section 404 permit authorizing construction of a mixed-use development); *S.C. Coastal Conservation League v. U.S. Army Corps of Eng'rs*, 2021 WL 3931908, 2021 U.S. Dist. LEXIS 166994, at *2–3 (D.S.C. Sept. 2, 2021) (challenge to a Section 404 permit authorizing construction of an interstate highway); *Ga. River Network v. U.S. Army Corps of Eng'rs*, 2012 WL 930325, 2012 U.S. Dist. LEXIS 37012, at *25 (S.D. Ga. Mar. 19, 2012) (challenge to a Section 404 permit for the construction of a dam and fishing lake).

the authorized activity on the permitting process where it belongs; provides "finality" to permittees; "insulate[s] permit holders from changes in various regulations during the period of a permit"; and "relieve[s] them of having to litigate in an enforcement action the question of whether their permits are sufficiently strict." *E.I. du Pont de Nemours & Co. v. Train*, 430 U.S. 112, 138 n.28 (1977) (discussing parallel permit shield provision in § 1342(k)); *see also Atl. States Legal Found. v. Eastman Kodak Co.*, 12 F.3d 353, 357 (2d Cir. 1993) (same).

## V. Legislative History Does Not Support Appellants' Interpretation

Appellants' resort to legislative history is also unavailing. Legislative history cannot substitute for the text of § 1365(f). *See Nesbitt v. Candler Cnty.*, 945 F.3d 1355, 1361 (11th Cir. 2020) (explaining "we should not, cannot, and do not use legislative history to get around the plain meaning of a statute's text"). As this Court has stated: "it is better to analyze a statute than it is to psychoanalyze Congress; resorting to legislative history is less interpreting statutory language than recreating it." *Id.* at 1362.

But even if it were relevant, Appellants fail to cite the most important portions of the Clean Water Act's legislative history.

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

Specifically, in 2018, Congress revisited § 1365(f) to amend the text of what is now § 1365(f)(6) while adding a new § 1365(f)(5). *See* Pub. L. 115-282, § 903, 132 Stat. 4322, 4356 (2018). This was done six years after *Atchafalaya*, at a time when its interpretation of § 1365(f) had achieved broad consensus. *See*, *e.g.*, *supra* notes 7–8. That Congress revisited § 1365(f) at that time — but did not take the opportunity to "correct" *Atchafalaya* — shows Congress did not believe any correction was needed.

As the Supreme Court has explained:

> When administrative and judicial interpretations have settled the meaning of an existing statutory provision, repetition of the same language in a new statute indicates, as a general matter, the intent to incorporate its administrative and judicial interpretations as well.

*Bragdon v. Abbott*, 524 U.S. 624, 645 (1998); *see also* Scalia & Garner, *supra*, at 322 ("The clearest application of the prior-construction canon occurs with reenactments: If a word or phrase has been authoritatively interpreted by the highest court in a jurisdiction, or has been given a uniform interpretation by inferior courts or the responsible agency, a later version of that act perpetuating the wording is presumed to carry forward that interpretation."). Because the rule established by

*Atchafalaya* had already been adopted by many courts when Congress made other changes to § 1365(f), Congress's silence evinced its intent to continue this meaning and preclude citizen suits for Section 404 permit violations.

## VI.    *Atchafalaya* Compels Dismissal of Appellants' Entire Complaint

The plain text of §1365(f) interpreted in *Atchafalaya* compels dismissal of each claim in Appellants' complaint, because all six claims hinge on alleged non-compliance with the terms of a Section 404 permit. All six claims would evaporate if Sea Island had completed the commercial facility it originally intended to build: Claim One, which alleges "categorical non-compliance" because the facility was not built (ECF 21-2 at 35–36, ¶¶ 154–58); Claim Two, which alleges non-compliance with the Section 401 Certification based solely on the same alleged non-compliance with the Section 404 permit, the terms of which Plaintiffs assert were incorporated by reference into the Section 401 Certification (*id.* at 36–37, ¶¶ 159–64); Claims Three and Four, which allege the fill was "unpermitted" because the Section 404 permit expired "without compliance," solely because the structure was never built (*id.* at 37–38 ¶¶ 165–72); and Claims Five and Six, which allege that Sea Island

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

never intended to build the structure for which it obtained the permit, and the permit was thus somehow "void *ab initio*" (*id.* at 38–40 ¶¶ 173–85). To allow any of these claims to proceed would allow artful pleading to swallow the rule announced by *Atchafalaya*: that citizen suits are not authorized to enforce the terms of a Section 404 permit, because Congress provided for such terms to be enforced exclusively by the Government.

Regarding the Fifth and Sixth Claims, Appellants' contention that misstatements on a permit application render a permit "void *ab initio*" directly subverts the Corps' enforcement discretion and conflicts with the provision of the Act granting discretion to permitting authorities to determine when, and if, a permit should be terminated for cause. *See Mingo Logan Coal Co. v. EPA*, 829 F.3d 710, 714 (D.C. Cir. 2016) ("Once the Corps has issued a 404 permit, it retains discretion to 'modify, suspend, or revoke'" the permit based on factors including non-compliance with permit conditions and changed circumstances (quoting 33 C.F.R. § 325.7(a))); *see also* 33 U.S.C. § 1344(h)(A)(iii) (allowing delegation of Corps' authority to issue Section 404 "permits which … can be terminated or modified for cause including, but not limited to … obtaining a permit by misrepresentation, or failure to disclose fully all

relevant facts"). Alleged misrepresentations in the permit process do not render a permit void *ab initio*, as Appellants suggest. *Cf. Landcastle Acquisition Corp. v. Renasant Bank*, 57 F.4th 1203, 1223–25, 1239 (11th Cir. 2023*)* (discussing difference between voidable contracts and those that are void *ab initio* and noting that misrepresentation may render a contract voidable but not void *ab initio*).

In fact, Appellants twice petitioned the Corps to bring an enforcement action against Sea Island based on the allegations in the complaint. The Corps declined both times, explaining in a well-reasoned memorandum that Sea Island had purchased compensatory mitigation for its activities; that the wetland fill posed no risk to the environment, navigation, or other public interest factors; and that the restoration of such a small wetland did not warrant an investment of the Corps' limited resources. (ECF 21-2 at 76–77, Ex. B; *see also id.* at 82–83, 85–86.) This did not satisfy Appellants; but nothing in § 1365 gives citizen-plaintiffs the power to terminate, invalidate, or enforce a Section 404 permit when the Corps declines to do so. *Cf. Stone v. Comm'r*, 86 F.4th 1320, 1328 (11th Cir. 2023) (affirming principle that "an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

decision generally committed to an agency's absolute discretion" and, as such, is "presumptively unreviewable").

The issue presented here parallels the one this Court addressed in *Black Warrior*: whether citizen-plaintiffs can evade the bar on citizen enforcement of Section 404 permits — whether by asserting the alleged violations render the permit "void *ab initio*," or other similar means. As the Court in *Black Warrior* explained, the plaintiffs' artful pleading was a thinly veiled attempt to "nullify the statutory preference for governmental enforcement" of Section 402 permits. *Black Warrior*, 734 F.3d at 1304. So too are the claims in Appellants' complaint, which are a thinly veiled attempt to evade the text of § 1365(f), the holding of *Atchafalaya*, and Congress's decision to bar citizen enforcement of Section 404 permits. The complaint should be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should apply the plain text of § 1365 and dismiss Appellants' complaint for lack of jurisdiction.

*    *    *

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

Respectfully submitted on April 14th, 2025.

*/s/James B. Durham*                        */s/ John L. Fortuna*
James B. Durham                              Lewis B. Jones
Matthew B Balcer                             John L. Fortuna
HALL BOOTH SMITH, P.C.                       Mathieu M. Erramuzpe
3528 Darien Highway                          JONES FORTUNA LP
Suite 300                                    111 New Street, Suite A
Brunswick, GA 31525                          Decatur, GA 30030
912-554-0093                                 (404) 282-4725
jdurham@hallboothsmith.com                   ljones@jonesfortuna.com
mbalcer@hallboothsmith.com                   jfortuna@jonesfortuna.com
                                             merramuzpe@jonesfortuna.com
Austin Atkinson
HALL BOOTH SMITH, P.C.
191 Peachtree Street NE
Suite 2900
Atlanta, GA 30303
404-954-5000

*Counsel for Appellee Sea Island Acquisition, LLC*

*Glynn Environmental Coal. v. Sea Island Acquisition*, No. 24-10710-G

## CERTIFICATE OF COMPLIANCE

In accordance with Federal Rule of Appellate Procedure 32(g), counsel certifies that this brief complies with Federal Rule of Appellate Procedure 32(a)(5) because it is written in 14-point Century Schoolbook and Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 6,601 words.

*/s/ John L. Fortuna*
John L. Fortuna

JONES FORTUNA LP
111-A New Street
Decatur, GA 30030
(404) 282-4725
jfortuna@jonesfortuna.com